Counsel of Record:
Mark K. Schonfeld (MS-2798)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022
(212) 336-1045 (Paley)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

-against-

          07 Civ. ____ ( )

RABINOVICH & ASSOCIATES, LP,
ALEX RABINOVICH AND
JOSEPH LOVAGLIO,

                Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS EMERGENCY APPLICATION FOR A
## TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
## ORDER TO SHOW CAUSE, ASSET FREEZE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission submits this memorandum of law in

support of its Emergency Application for a Temporary Restraining Order, Preliminary

Injunction, Order to Show Cause, Asset Freeze and Other Relief in its action against defendants

Rabinovich & Associates, LP ("Rabinovich & Associates"), Alex Rabinovich ("Rabinovich")

and Joseph Lovaglio ("Lovaglio") (collectively, "Defendants"), on the basis of Defendants'

current and continuing violations of the federal securities laws.

## PRELIMINARY STATEMENT

This action arises out of an ongoing, fraudulent securities offering by Rabinovich, Rabinovich & Associates, an unregistered investment company and broker-dealer managed by Rabinovich, and Lovaglio, a salesman and managing director at Rabinovich & Associates. Operating out of a storefront boiler room in Brooklyn, Defendants are selling limited partnership interests in Rabinovich & Associates (sometimes referred to hereafter as the "Fund" or the "firm") and other securities to investors, including senior citizens and retirees.

Defendants 0btain investments in the Fund by cold-calling and have made, and are continuing to make, fraudulent statements to investors and prospective investors in the Fund, including: (1) false claims that the Fund has been extraordinarily profitable whereas the Fund's actual performance has been dismal; and (2) false representations that Rabinovich & Associates is a Wall Street firm and a member of the NASD, the New York Stock Exchange ("NYSE"), and the Securities Investor Protection Corporation ("SIPC"). Defendants have also failed to disclose to investors that Rabinovich has been barred by the NASD from associating with any broker or dealer and that there is a pending action by the Financial Industry Regulatory Authority, Inc. ("FINRA") seeking to bar Lovaglio from associating with any broker or dealer.[1]

Defendants have raised at least $550,000 from at least twenty-three investors, and have lost most of that money, even while providing investors with quarterly account statements that reflect large gains and "dividends" in every period. Defendants are continuing to solicit investments in the Fund and the purchase of other securities and are continuing to lull existing Fund investors with false account statements.

---

[1]    Effective July 30, 2007, the NASD and the NYSE member regulation, enforcement, and arbitration operations have been consolidated, creating FINRA.

In addition to defrauding Fund investors and prospective investors, Defendants are unlawfully operating as unregistered broker-dealers and offering and selling securities in an unregistered offering and Defendant Rabinovich & Associates is unlawfully operating as an unregistered investment company.

Through this conduct, and that detailed below, Defendants have violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78o(a), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; Rabinovich has violated Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8; Lovaglio has aided and abetted violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8; and Rabinovich & Associates has violated Section 7(a) of the Investment Company Act of 1940 ("Investment Company Act"), 15 U.S.C. § 80a-7(a).

Unless restrained and enjoined by the Court, Defendants will continue to engage in the transactions, acts, practices and courses of business alleged herein, and in transactions, acts, practices, and courses of business of a similar type and object.

Emergency relief is needed here because the fraud is ongoing. Defendants are actively soliciting additional investments and continuing to misrepresent the performance of the Fund on their website and in account statements sent to Fund investors. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's emergency application for relief, enjoining Defendants from continuing to violate federal securities laws and allowing for an accounting and freezing of Defendants' assets to protect investors' interests. Plaintiff further request that the Court order expedited discovery.

## STATEMENT OF FACTS

### I.    DEFENDANTS

**A.    Rabinovich & Associates, LP** is a limited partnership, purportedly organized in December 2002 and located at 14 Wall Street, New York, NY. Declaration of Terrence Bohan, dated November 26, 2007 (hereafter, "Bohan Decl.") at ¶ 4. Its offices are actually located in an unmarked storefront at 502 Gravesend Neck Road, Brooklyn, NY. Bohan Decl. ¶¶ 5, 13, 29. It is not registered in any capacity with the Commission, and is not a member of the NASD, the NYSE or SIPC. Bohan Decl. ¶¶ 4, 27. According to its website, www.ra-lp.com, Rabinovich & Associates is an "independent investment company whose affiliates offer a broad array of financial products and services." Bohan Decl. ¶ 4. In actuality, Rabinovich & Associates is an unregistered investment company and an unregistered broker-dealer operating a boiler room. Bohan Decl. ¶¶ 5, 13, 27.

**B.    Alex Rabinovich**, age 29, resides in Brooklyn, New York. Bohan Decl. ¶ 6. He is the general partner of Rabinovich & Associates and a self-described "private wealth manager." Id. From August 2001 through April 2004, Rabinovich worked as a registered representative for, successively, Dupont Securities Group, Inc., Indianapolis Securities, Inc. and Salomon Grey Financial Corporation, each of which has been the subject of significant disciplinary action. Id. In March 2004, he consented to a fine of $5,000 to resolve a customer complaint, by a 72-year-old retiree, of unauthorized trading and churning in her account at Dupont. Id. In July 2004, the NASD revoked his registration for failure to pay the fine, and a month later, Rabinovich consented to a bar from association with any NASD member in any capacity on the basis of his failure to respond to an NASD request to provide testimony. Id. In November 2004, in a

4

customer arbitration, the NASD found Rabinovich and Dupont jointly liable for approximately $165,000, based on claims of fraud, breach of contract and breach of fiduciary duty. Id.

      C.     **Joseph Lovaglio**, age 25, resides in Brooklyn, New York. He is a managing director of Rabinovich & Associates and the head of its sales operation. Bohan Decl. ¶¶ 7, 16. Since 1998, he has worked for at least four financial firms, at least three of which have been the subject of significant enforcement action. Bohan Decl. ¶ 7. Lovaglio is the subject of a pending FINRA proceeding alleging violations of NASD rules based on his failure to provide FINRA with requested information and documents in connection with a customer allegation of fraud. Id.

## II.    <u>FACTS</u>

### A.    <u>Rabinovich & Associates</u>

Rabinovich & Associates holds itself out as an "independent investment company" and a broker-dealer "whose affiliates offer a broad array of financial products and services," and whose principal offices are located at 14 Wall Street. Bohan Decl. ¶ 8. According to the Rabinovich & Associates limited partnership agreement, the Fund "is organized to acquire for investment the securities . . . of any recognized stock exchange company . . . to realize the value of such Securities by managing the same for the mutual benefit of the [General Partner and the Limited Partners]." Id., and Exhibit 4 thereto. The firm's website indicates that the Fund is divided into two funds, one of which follows a "moderate growth" strategy and the other of which follows an "aggressive growth" strategy. Bohan Decl. ¶ 8, and Exhibit 1 thereto.

The limited partnership agreement confers broad powers on the general partner, who is Alex Rabinovich. Bohan Decl. ¶ 9. The agreement also provides that the general partner shall receive "no fees, wages or payment" for managing the Fund, "except for his fifty (50%) percent

profit realized on any transactions on behalf of the partnership[,]" and provides that the

partnership shall bear all organizational and operating expenses. Id., and Exhibit 4 thereto.

The firm's website expands only slightly on the Fund's vague investment strategy. It

states, for example, that Rabinovich's goal is "to yield returns to individual investors that

institutions are accustomed to[,]" and continues with such bland pronouncements as:

> The firm's model for investing complements the average investor's needs.
> The model works when capital is pooled together and distributed
> respectively. It limits risk and increases returns. . . . When many investors
> devote funds together, capital accumulates and all are more likely to turn a
> profit because of the large buying power. . . .

Bohan Decl. ¶ 10, and Exhibit 1 thereto.

Among the Fund's main selling points are the firm's claimed experience and the Fund's

purported track record. Bohan Decl. ¶ 21. The website recounts the firm's supposed

"experience and success with institutional clients." Bohan Decl. ¶ 11. The site further

represents, "Due to the fund's exceptional performance and the successful relationships

maintained with multi-million dollar clients, the firm also agreed to reward average investors. . . .

Therefore, at the end of 2003, the fund closed its doors to institutions and welcomed the average

investor." Id. It is extremely unlikely that there are or have ever been institutional investors in

the Fund, or that the firm has ever had any multi-million dollar clients. Id. at n.15.

In marketing the Fund, Defendants extol the Fund's purported extraordinary track record.

Bohan Decl. ¶ 21. The Fund's website indicates that, from inception, the firm has achieved a

127.3% return in its "moderate growth fund" and a 442.9% return in its "aggressive growth

fund." Bohan Decl. ¶ 11. The website further claims, for example, that the firm achieved a

123.90% return in 2004, an 84.20% return in 2005 and a 54.70% return in 2006. Bohan Decl. ¶

21. Moreover, according to the website, in the firm's worst quarter ever – purportedly the only

quarter in the three-year period when the quarterly return was less than 11.80% – it achieved a 6.10% return. Id. The website conveys that these purported returns are the result of the firm's "large buying power" and Rabinovich's trading acumen. Id. According to the website, Rabinovich is "the man who is able to swim with the sharks." Id.

The Fund's website also highlights the Fund's supposed flexible redemption policy and lack of management fees, as well as the purported character of Rabinovich and Lovaglio. Bohan Decl. ¶ 12. For example, the website contains a number of "testimonials" that extol the Fund's flexibility and high returns and praise Rabinovich and Lovaglio personally:

> "The thing I appreciate most is the personable service and the returns are phenomenal." James Bull from NV

> "R&A L.P. has guided us correctly in the market and is delightful team to work with. Joseph Lovaglio is very easy to communicate with and a pleasure to do business with." Thomas Yancey from AZ

> "The only company where the firm gets compensated on performance and also pick[s] mostly winners providing percentage gains in any market conditions, where else can you do that." Dean Henderson from CA

> "I am pleased with the consistency of performance that the fund produces. Alex Rabinovich is honest, frank, and very easy to deal with. He is one of the most trustworthy people in the industry that I have ever encountered. He will tell you how it is!!" Howard Hinck from NJ

Id.

## B.    Defendants Are Operating a Boiler Room

The firm's primary activity is the sale of limited partnership interests in the Fund and other securities, including shares in a purported private placement by Datawind Net Access Corp. Bohan Decl. ¶¶ 15, 20. In addition, Rabinovich engages in day-trading on behalf of the Fund. Bohan Decl. ¶ 15.

Lovaglio heads the sales operation, which consists of himself and a number of other cold callers. Bohan Decl. ¶ 16. Lovaglio personally makes many of the cold calls and also frequently calls existing Fund investors to solicit additional investments. Id. The Fund's salesmen are paid a commission based on a percentage of the amount they raise. Bohan Decl. ¶ 15.

The firm targets senior citizens and unsophisticated investors. Bohan Decl. ¶ 19. At least eleven of the Fund's investors are sixty years old or older, including three who are in their seventies and three who are in their eighties. Id. At least three investors used their IRA money to invest in the Fund, with the firm's assistance and encouragement. Bohan Decl. ¶ 19, 24. As reflected in the testimonials of investors set forth on the Fund's website, Fund investors are located across the country. Bohan Decl. ¶ 12.

By means of fraudulent representations and high pressure sales tactics, including those described below, Defendants have raised at least $550,000 from at least twenty-three investors. Bohan Decl. ¶¶ 17, 34 – 35. No registration statement was ever filed with the Commission in connection with the offering of interests in the Fund. Bohan Decl. ¶ 28.

## C.    Defendants Have Made and Continue to Make Materially False and Misleading Statements to Fund Investors and Prospective Investors

To induce potential investors to invest in the Fund and to induce existing investors to make additional investments and to refer other prospective investors, Defendants have made numerous misrepresentations to Fund investors and prospective investors about the firm, the background of the firm's principals, the Fund's track record, and the performance of individual investors' accounts.

Defendants represent on quarterly account statements mailed to investors that Rabinovich & Associates is a member of the NASD, the NYSE, and SIPC. Bohan Decl. ¶¶ 26, 36, and

Exhibits 8 and 13 thereto. This representation is false. The firm is not a member of the NASD
or the NYSE and its customer's accounts are not insured by SIPC. Bohan Decl. ¶¶ 4, 27.

Defendants also tout the firm's supposed Wall Street location. On account statements,
letters to investors, the firm's website, Rabinovich's and Lovaglio's business cards, and the
limited partnership agreements mailed to some investors, the firm has repeatedly represented that
its office or its principal office is at 14 Wall Street. Bohan Decl. ¶ 29. Investors have been
instructed to, and do, send funds and signed partnership agreements to the Wall Street address in
the belief that the firm's offices are located there. Bohan Decl. ¶ 30. In fact, the offices are in an
unmarked Brooklyn storefront and the Wall Street address is nothing more than a commercial
mail drop used by Defendants to create the false impression that the firm is prosperous and
professional. Bohan Decl. ¶ 29.

Defendants fail to disclose to investors or potential investors that Rabinovich has been
barred by the NASD from association with any broker or dealer, even as the firm's website –
which does not mention Rabinovich's bar – touts his purported experience and includes a
testimonial to his honesty. Bohan Decl. ¶ 31. On information and belief, Defendants also fail to
disclose to investors and prospective investors the pending FINRA proceeding against Lovaglio,
which is not disclosed on the website. Bohan Decl. ¶ 32.

Defendants also misrepresent the Fund's track record to prospective and existing Fund
investors. For example, the firm website states that the Fund achieved a 123.90% return in 2004,
an 84.20% return in 2005 and a 54.70% return in 2006. Bohan Decl. ¶ 21. The same or similar
performance claims are also contained in promotional materials sent to prospective investors.
Bohan Decl. ¶ 22. In one such document, Defendants touted a cumulative return of 538.01%
since the Fund's inception in December 2002. Bohan Decl. ¶ 22, and Exhibit 2 thereto. A

second investor received a similar document, apparently in early 2006, which boasted the same 123.90% return for 2004 but a return of 97.10% in 2005, even higher than the number on the website. Bohan Decl. ¶ 22, and Exhibit 9 thereto.

Quarterly account statements sent to Fund investors also represent that the Fund is earning substantial returns. Bohan Decl. ¶ 23. The account statements set forth the amount of each investor's "dividend," and reflect Fund performance of as much as 18.600% for a quarter and 62.278% for a year. Id., and Exhibits 11, 12 thereto.

These performance claims are false. Since it began trading, the Fund has incurred losses on its trading every quarter. Bohan Decl. ¶ 25.

Defendants have made other misrepresentations about the benefits and risks of investing in the Fund. For example, correspondence dated December 2006 sent to one Fund investor states, in part:

Benefits of Rabinovich & Associates LP Fund Program

– Asset diversification and the possible risk reduction associated with adding low to
  slightly negative correlation to the equity investments in your portfolio
– A good alternative to low yielding bonds and deposits
– Professional account management from a well-capitalized firm
– Liquidity of assets – redemptions may take place on a quarterly basis, with no fee or
  penalty.

Bohan Decl. ¶ 33, and Exhibit 2 thereto. In fact, in light of its consistent losses, the Fund is not a good alternative to "low yielding bonds and deposits" and, upon information and belief, the firm is not well-capitalized. Bohan Decl. ¶ 33.

In addition to the misrepresentations outlined above, Lovaglio has made other false or misleading statements to investors and prospective investors in oral sales pitches. Bohan Decl. ¶ 34. For example, Lovaglio told one investor that he was heavily invested in the Fund himself, when in fact he is not. Id. Lovaglio also minimized the risks of investing in the Fund when

speaking with investors and potential investors, by, for example, comparing an investment in the Fund to "money in the bank." Bohan Decl. ¶ 35. In selling interests in the Fund, Lovaglio also engaged in other high pressure sales tactics. Id.

**D.    Defendants Are Continuing to Defraud Fund Investors and to Solicit Additional Investments**

Defendants are continuing to defraud Fund investors and continuing to solicit additional investments in the Fund. Bohan Decl. ¶ 36. The most recent account statements sent to Fund investors, for the quarter ended September 2007, repeat the false representation that the firm is a member of the NASD, NASD, and SIPC. Bohan Decl. ¶ 26, 36. These statements also contain positive performance claims for the quarter that are inconsistent with the trading losses in the Fund's brokerage account for that period. Bohan Decl. ¶ 26. In addition, a letter to a Fund investor, dated August 9, 2007, apparently signed by Rabinovich, contained several false and misleading statements including: "this past year was a great year for us . . . ." That representation is contradicted by the firm's substantial trading losses in every quarter of the prior year (and all other years) as shown in the statements of the Fund's brokerage accounts. Bohan Decl. ¶ 36, and Exhibit 15 thereto. Three investors have reported receiving calls from Lovaglio in October or November 2007 soliciting additional investments in the Fund. Bohan Decl. ¶ 36. And, by all appearances, the storefront has continued to be an active boiler room, at least as of November 8, 2007. Id. Moreover, on or about November 16th, an investor who had been requesting the return of his investment for months finally got his money back. Bohan Dec. ¶ 36, and Exhibit 16 thereto. Because the Fund does not appear to have earned any trading profits or have any source of income other than investor contributions, it appears Defendants used funds fraudulently obtained from other investors to repay this investor. Bohan Decl. ¶ 36.

**ARGUMENT**

I.    **DEFENDANTS SHOULD BE TEMPORARILY RESTRAINED
AND PRELIMINARILY ENJOINED FROM FURTHER
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Because the Commission is "not ... an ordinary litigant, but ... a statutory guardian

charged with safeguarding the public interest in enforcing the securities laws," its burden to

secure temporary or preliminary relief is less than that of a private party. SEC v. Management

Dynamics, Inc., 515 F.2d 801, 808-9 (2d Cir. 1975). The Commission is entitled to entry of

temporary and preliminary injunctive relief against future securities law violations upon "a

substantial showing of likelihood of success as to both a current violation and the risk of

repetition." See SEC v. Cavanagh, 155 F.3d 129, 132 (2d Cir. 1998) ("Cavanagh I"); see also

SEC v. Unifund SAL, 910 F.2d 1028, 1039-40 (2d Cir. 1990).[2] The Commission need not show

irreparable injury or a balance of equities in its favor. Cavanagh I, 155 F.3d at 132; Unifund

SAL at 1035.

Here, the Commission can easily meet its burden of making a substantial showing that (i)

Defendants have violated the antifraud and registration provisions of the federal securities laws;

and (ii) there is a present risk that Defendants will repeat their unlawful conduct by continuing

the fraud alleged in the Complaint.

---

[2]    The Commission also is relieved of demonstrating the lack of an adequate remedy at law, as
private litigants must, to obtain an injunction. Cavanagh I, 155 F.3d at 132; Management
Dynamics, 515 F.2d at 808-9.

A.    **Defendants Have Committed Violations of the Federal Securities Laws by Defrauding Investors in Connection With Unregistered Sales of Securities**

1.    **Defendants have violated Sections 5 and 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5**

Defendants' fraudulent sales securities in an unregistered offering are actionable under the anti-fraud provisions of both the Securities Act of 1933, 15 U.S.C. § 77 ("Securities Act") and the Securities Exchange Act of 1934, 15 U.S.C. § 78 ("Exchange Act"). Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities. Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit the same conduct if committed in connection with the purchase or sale of securities. To establish a violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, the Commission must show: (1) a misrepresentation or omission regarding material facts or other fraudulent conduct; (2) made with scienter; and (3) in the offer or sale, or in connection with the purchase or sale, of a security. See Basic, Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988) (citation omitted). A statement or omission is material if a reasonable investor would view its disclosure as significantly altering the "total mix" of information made available. TSC Industries v. Northway, Inc., 426 U.S. 438, 449 (1976). A misrepresentation is made "in connection with the purchase or sale of any security" when the misrepresentation and the securities transaction are part of the same fraudulent scheme. SEC v. Zandford, 535 U.S. 813, 813-814 (2002); United States v. O'Hagan, 521 U.S. 642, 655-656 (1997).

To violate Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, a person must act with scienter.[3] Scienter is "a mental state embracing intent to

---

[3]    A showing of negligence is sufficient to establish a violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act. See Aaron v. SEC, 446 U.S. 680, 701-02 (1980).

13

deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.2 (1976).

Knowing or reckless conduct satisfies the scienter requirement. See e.g., Novak v. Kasaks, 216

F.3d 300, 312 (2d Cir. 2000); SEC v. U.S. Envtl., 155 F.3d 107, 111 (2d Cir. 1998), cert. denied

sub nom. Romano v. SEC, 526 U.S. 1111 (1999); Rolf v. Blyth, Eastman Dillon & Co., Inc., 570

F.2d 38, 44-48 (2d Cir. 1978). Proof of scienter can be inferred from circumstantial evidence.

Herman & MacLean v. Huddleston, 459 U.S. 375, 390-91 n.30 (1983).

Defendants have made numerous misrepresentations and omissions to induce the

purchase of initial and additional interests in the Fund, which are securities.[4] On the firm's

website, in account statements and other written correspondence and in telephone

communications, Defendants have misrepresented that: (1) the firm is a member of the NYSE,

NASD and SIPC; (2) Rabinovich & Associates, LP has had substantial, positive returns

throughout its history; and (3) Lovaglio has personally invested in the Fund. Defendants failed

to disclose to investors and prospective investors that: (1) Rabinovich has been barred by the

NASD from association with any broker or dealer; and (2) in all likelihood, have not disclosed

that Lovaglio is the subject of a pending FINRA action and is about to be barred.

These misrepresentations are clearly material. Substantial overstatements of an

investment's performance, and the failure to disclose losses are obviously material. Moreover, a

reasonable investor would consider it important that the firm responsible for investing and

---

[4]     Interests in the Fund -- Rabinovich & Associates limited partnership interests -- are
        clearly securities because the limited partnership agreement gives the general partner the
        "exclusive right and power to manage, conduct and operate the business of the
        Partnership." Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 153 (3d Cir. 1997) (in
        determining whether a limited partnership interest is a security, court must "look at the
        transaction as a whole, considering the arrangements the parties made" to determine who
        exercised control in generating profits). See also, Abrahamson v. Fleschner, 568 F.2d
        862, 868 (2d Cir. 1977), cert. denied sub nom., Harry Goodkin & Co. v. Abrahamson,
        436 U.S. 905 (1978).

safeguarding client funds misrepresented itself as licensed to trade securities. See Marbury Management, Inc. v. Kohn, 470 F. Supp. 509, 512-513 (S.D.N.Y. 1979), aff'd in part, rev'd in part on other grounds, 629 F.2d 705 (2d Cir. 1980) (finding a broker-trainee's misrepresentation of his status as a stock broker and portfolio management specialist material). A reasonable investor would also find it significant that the firm was not in fact a member of various securities industry organizations that provide investor protection as it claimed. Moreover, the omission of a salesman's disciplinary action barring him from offering and selling of securities and giving investment advice "alters the 'total mix' of information an investor would rely upon in making a financial investment." SEC v. Householder, No. 02 C 4128, 2002 WL 31207292, at *7 (N.D. Ill. Oct. 1, 2002).

Defendants' actions betray an intentional fraud, not merely accidental misstatements or omissions, which makes Defendants' securities violations particularly egregious and, in turn, the need for judicial intervention more urgent. Scienter is a mental state embracing intent to deceive, manipulate, or defraud. Ernst & Ernst, 425 U.S. at 193. The Second Circuit has held that reckless conduct generally satisfies the scienter requirement. See, e.g., SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (holding that scienter required for a Section 10(b) or Rule 10b-5 claim "may be established through a showing of a reckless disregard for the truth"), citing Rolf, 570 F.2d at 46; Sirota v. Solitron Devices, Inc., 673 F.2d 566, 573 (2d Cir. 1982), cert. denied, 459 U.S. 838 (1982).

While recklessness is sufficient to sustain the Commission's claims, the evidence in this case goes beyond mere recklessness. Indeed, the blatant falsity of statements included on the Fund's website, and in letters and other communications to investors highlights the intentional nature of Defendants' deception. Defendants grossly exaggerated the Fund's performance to

hide trading losses, falsely represented that the firm is registered and investors are protected by

SIPC insurance, and withheld critical information from investors and prospective investors about

the disciplinary history of its principals. Moreover, Defendant Rabinovich admitted to the

Commission's staff that he intentionally misled investors about the Fund's address to deceive

investors into believing that the Fund was a Wall Street firm. Defendants intentionally misled

investors to obtain investors funds, most of which appear to have been lost. Accordingly,

Defendants violated Secion 17(a) of the Securities Act and Section 10(b) of the Exchange Act

and Rule 10b-5 thereunder.

### 2. Rabinovich Has Violated Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder, and Lovaglio Aided and Abetted Those Violations

Section 206(4) of the Advisers Act prohibits investment advisers from, by the use of

jurisdictional means, engaging in any act, practice, or course of business which is fraudulent,

deceptive and manipulative and authorizes the Commission to adopt rules defining such

prohibited conduct. Rule 206(4)-8 provides that it is an illegal practice for advisers to: (1) make

any untrue statement of a material fact or omit to state a material fact necessary to make the

statements made, in the light of the circumstances under which they were made, not misleading,

to any investor or prospective investor in a pooled investment vehicle; or (2) otherwise defraud

those investors or prospective investors.[5] No showing of scienter is required. See Prohibition of

---

[5]     The new rule broadly defines "pooled investment vehicle" as "any investment company as defined in section 3(a) of the Investment Company Act of 1940 (15 U.S.C. 80a-3(a)) or any company that would be an investment company under section 3(a) of that Act but for the exclusion provided from that definition by either Section 3(c)(1) or Section 3(c)(7) of that Act (15 U.S.C. §§ 80a-3(c)(1) or (7))." Rabinovich & Associates is an unregistered investment company under Section 3(a) of the Investment Company Act because it is "an issuer which is or holds itself out as being engaged primarily . . . in the business of investing, reinvesting, or trading in securities[.]"

_Fraud by Advisers to Certain Pooled Investment Vehicles_, Advisers Act Release No. 2628 (August 3, 2007)("Adopting Release") at 13. The rule became effective on September 10, 2007.

The rule prohibits advisers from, among other things, making false or misleading statements in account statements sent to existing investors, Adopting Release at 6, and misleading investors or potential investors concerning the credentials or experience of the adviser, Adopting Release at 10. [6]

Rabinovich is an investment adviser pursuant to Section 202(11) of the Advisers Act, which defines "investment adviser," in part, as a "person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities[]." Rabinovich falls within the statutory definition because, as the general partner of Rabinovich & Associates, and the individual responsible for buying and selling securities on its behalf, he directs the Fund's investments, and does so for compensation in the form of a performance fee. See, e.g., SEC v. Haligiannis, 470 F. Supp.2d 373, 383 (S.D.N.Y. 2007); SEC v. Berger, 244 F. Supp.2d 180, 192 (S.D.N.Y. 2001).

Rabinovich violated Section 206(4) and Rule 206(4)-8 by making false performance claims to Fund investors and prospective investors, falsely representing that the firm is a member of the NASD, NYSE and SIPC and is located on Wall Street, and by failing to disclose his and Lovaglio's disciplinary history in account statements sent to investors after the rule took effect on September 10, and on the firm's website, which continued to be active after the effective date.

---

[6]     The rule applies to both registered and unregistered advisers. See Adopting Release at 7. Accordingly, it applies to Rabinovich, who was not registered with the Commission as an investment adviser.

Lovaglio aided and abetted violations of this section and rule. Liability for aiding and abetting Advisers Act violations requires proof that the defendant had knowledge of wrongdoing, or a general awareness that his role was part of an overall activity that was improper. SEC v. Washington Inv. Network, 475 F.3d 392, 397 (D.C. Cir. 2007) (quotations omitted). As discussed above, Lovaglio personally solicited investors and oversaw the sales operation. He has made or caused others to make false statements to investors and prospective investors in Rabinovich & Associates about the safety of investing in Rabinovich & Associates, his purported investment in it, and its purported positive returns. As Rabinovich & Associates' "managing director" and the head of its sales operations he was aware of, or at a minimum recklessly disregarded, the representations the firm was making, as well as the facts that it was distorting or concealing. Lovaglio was, at a minimum, generally aware that his role in selling interests in the Fund was part of an overall activity that was improper. Accordingly, Lovaglio aided and abetted Rabinovich's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

### 3. Defendants have Violated Sections 5(a) and 5(c) of the Securities Act by Offering and Selling Securities in Unregistered Transactions

#### a. Defendants are Offering and Selling Securities in Unregistered Transactions

Section 5 requires that an offering of securities be registered with the Commission before any person may sell or offer to sell such securities. To state a cause of action under Section 5, one must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale.'" SEC v. Cavanagh, 445 F.3d 105, 111 n. 13 (2d Cir. 2006) ("Cavanagh II"), quoting European & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 124 n. 4 (2d Cir.1998).

Defendants have violated and are continuing to violate Sections 5(a) and 5(c) because:
(1) Rabinovich, Lovaglio and others are offering and selling securities in the form of partnership interests in Rabinovich & Associates, (2) for which no registration statement has been filed, (3) by making phone calls and using the mails to contact investors throughout the United States. Moreover, Lovaglio and others are selling interests in the Fund by making unsolicited cold calls to members of the general public thus rendering unavailable any exemption from registration pursuant to Section 4(2) of the Securities Act. See, e.g., SEC v. Opulentica LLC, 479 F. Supp.2d 319, (S.D.N.Y. 2007) (soliciting sales on website and advertising in newspapers renders Section 4(2) unavailable). It also appears that investors were not provided the necessary financial information for the offering to qualify for an exemption from registration. [7]

**b.    No Exemption from Registration is Available**

"Once a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption." Cavanagh II, 445 F.3d at 11 n.13, citing SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953). No such exemption applies for Defendants here.

The offering of interests in Rabinovich & Associates does not appear to comply with the requirements of Rules 504, 505 or 506 of Regulation D of the Securities Act. These Rules provide exemptions from the requirements of Section 5 for limited offers and sales of securities. The Rule 504 exemption does appear to be available because Rabinovich & Associates is an investment company as to which the exemption is not available under Rule 504(a)(2). Nor can Rabinovich & Associates, LP avail itself of the exemption under Rules 505 or 506. Rules 505

---

[7]    Several investors provided the staff with the documents they received from Rabinovich & Associates. None of these productions included any financial information about the firm, apart from performance claims.

and 506, which limit the number of unaccredited purchasers of the offerings, also require that all offers and sales comply with the conditions of Rule 502.

The offerings do not qualify for either the Rule 505 or Rule 506 exemption because, among other reasons, the offering does not comply with Rule 502(c). This rule explicitly prohibits offers and sales of securities by means of any form of general solicitation. Communicating by "cold calling" or unsolicited mailings to customers with whom there is no pre-existing relationship, to sell an unregistered security, constitutes general solicitation prohibition. See Johnston v. Bumba, 764 F. Supp. 1263, 1274-75 (N.D. Ill. 1991). See also Robert Testa, Securities Act Release No. 7018 (Sept. 29, 1993). Additionally Rule 502(b) also requires that an issuer provide unaccredited investors with financial information, such as audited balance sheets or financial statements. Given that several of the investors, who are in their 60s, 70s, and 80s, used funds from their IRA accounts to purchase interests in the Fund, it is highly unlikely that they would meet the definition of accredited investor under the Rule. Because investors were not provided with required financial information about the Fund at the time they invested, the offering failed to comply with Rule 502(b). See Pinnacle Comm. Int'l, Inc. v. American Family Mortgage Corp., 417 F. Supp.2d 1073, 1084 (D. Minn. 2006).

Furthermore, the offering is not exempt from registration pursuant to Section 4(2) of the Securities Act, the private offering exemption. Four factors are relevant in deciding whether the Section 4(2) private offering exemption applies: (1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship between the issuer and the offerees. See SEC v. Murphy, 626 F.2d 633, 644-45 (9th Cir. 1980). The focus of the inquiry under Section 4(2) is the need of the offerees for the additional protection afforded by registration, such as the need for them to have access to the additional information that would be

available in a registration statement. See SEC v. Ralston Purina Co., 346 U.S. 119, 127 (1953).
Given that several of the elderly investors used funds from their IRA accounts to purchase
interests in the Fund, it is highly unlikely that they were sophisticated enough not to require the
additional information that would have been provided in a registration statement. Accordingly, it
is unlikely that the Section 4(2) exemption is available for the offer and sale of interests in the
Fund.

Nor does it appear that the offering of interests in the Fund qualifies for the Securities
Act's Section 4(6) exemption. Section 4(6) provides a safe harbor for securities offerings that
do not exceed $5 million and are made solely to accredited investors. However, to qualify from
this exemption, the issuer must not conduct any advertising or public solicitation for the
transaction, a requirement the offering of Fund shares clearly does not satisfy. Thus, the Section
4(6) exemption is not available to the offerings of interests in the Fund.

Accordingly, it is highly unlikely that Defendants can meet their burden of establishing
an exemption to the Section 5 registration requirements for their offer and sale of interests in the
Fund. Thus, Defendants' past and ongoing offer and sale of interests in the Fund violates and
continues to violate Sections 5(a) and 5(c) of the Securities Act.

### 4.    Defendants Are Operating as Unregistered Brokers in Violation of Section 15(a) of the Exchange Act

Section 15(a)(1) of the Exchange Act makes it illegal for a "broker" to effect any
transaction in, or to induce or attempt to induce the purchase or sale of, any security unless the
broker is registered with the Commission or, in the case of a natural person, is associated with a
registered broker or dealer. The Commission is not required to show scienter to establish a
violation of Section 15(a)(1). See, e.g., SEC v. Martino, 255 F. Supp.2d 268, 283 (S.D.N.Y.
2003).

Section 3(a)(4) of the Exchange Act defines a broker as any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others." A person "effects transactions in securities" if he or she participates in such transactions "at key points in the chain of distribution." Massachusetts Fin. Servs., Inc. v. Security Investor Protection Corp., 411 F. Supp. 411, 415 (D. Mass.), aff'd, 545 F. 2d 754 (1st Cir. 1976). Among the activities that may indicate a person is a broker are: (1) soliciting investors; (2) "participating in the securities business with some degree of regularity[;]" and (3) receiving transaction-based compensation, as opposed to a salary. See, e.g., Martino, supra at 283; Patrick Rooney and Adrian Antoniu Alexander, Exchange Act Release No. 44414, 2001 SEC LEXIS 1139 (June 13, 2001); SEC v. Hanson, 726 F. Supp. 74 (S.D.N.Y. 1989); SEC v. Kenton Capital, Ltd, 69 F. Supp.2d 1, 12-13 (D.D.C. 1998).

Defendants are clearly acting as unregistered broker-dealers. They routinely solicit investors as part of an ongoing business operation which includes trading in securities for compensation. They offer and sell securities for issuers other than the Fund. Moreover, Rabinovich conceded that the salesmen receive commissions based at least in part on the amount of money raised from investors.

None of Defendants qualifies for the exemption from registration applicable to associated persons of an issuer. Rule 3a4-1 exempts associated persons of an issuer from the definition of "broker" if they meet certain conditions. To qualify for that exemption, the associated person of the issuer must not, among other things, be "subject to a statutory disqualification" or receive compensation for selling the issuer's securities. Rabinovich is subject to a statutory disqualification, as defined in Section 3(39) of the Exchange Act, because he has been barred by the NASD. Moreover, the safe-harbor is not available to associated persons of issuers who, at

the time of participation in the sale of securities of the issuer, are associated persons of a broker-dealer. See Exchange Act Rule 3a4-1(a)(3). Rabinovich and Lovaglio are both associated persons of Rabinovich & Associates, which itself is acting as broker. The Rule 3a4-1 safe harbor is not available for Rabinovich & Associates as it is not an "associated person of an issuer" as defined in paragraph (c)(1) of the rule.

### 5. Rabinovich & Associates is Operating as an Unregistered Investment Company in Violation of Section 7(a) of the Investment Company Act

Section 7(a)(1) of the Investment Company Act makes it unlawful for any investment company to use the mails or means of interstate commerce to sell or offer securities, or to deliver such securities after sale, unless the investment company is registered as such with the Commission. Section 3(a)(1)(A) of the Investment Company Act defines an investment company as any issuer that holds itself to be, is engaged in, or proposes to be engaged primarily in the business of investing, reinvesting, or trading in securities. Rabinovich & Associates issued securities in the form of limited partnership interests in a public offering, and held itself out as being engaged primarily, or proposing to engage primarily, in the business of investing, reinvesting, or trading in securities. Accordingly, Rabinovich & Associates is an investment company under Section 3(a)(1)(A) and is must be registered.

No exemption or exclusion appears to be available here. The two common exemptions from the definition of investment company are Sections 3(c)(1) and (7). Section 3(c)(1) of the Investment Company Act provides an exclusion for an issuer that has not more than 100 beneficial owners of its securities and is not making and does not presently propose to make a public offering of its securities. Section 3(c)(7) contains a similar exclusion for issuers that have issued securities owned exclusively by persons who were "qualified purchasers" (generally high net

worth individuals or institutions, at the time that they purchased such securities) and is not

making and does not presently propose to make a public offering of its securities. Even if the Fund

has fewer than 100 investors, it cannot rely on the exemption in Section 3(c)(1) because it was

engaged in a public offering. Similarly, the Fund is precluded from relying on Section 3(c)(7)

because it was engaged in a public offering. Moreover, as discussed above, it is highly unlikely

that all of the investors in the Fund were qualified investors. Accordingly, by acting as an

investment company without registering with the Commission under the Investment Company

Act or qualifying for an exemption from registration, the Fund is violating Section 7(a) of the

Investment Company Act.

### B.    Defendants Are Likely to Continue Their Illegal Conduct

In determining whether to grant emergency relief, courts consider whether there is a

reasonable likelihood that the defendant will again engage in illegal conduct. Cavanagh I, 155

F.3d at 135. As the Second Circuit set forth:

> Certainly, the commission of past illegal conduct is highly suggestive of the
> likelihood of future violations . . . [F]actors suggesting that the infraction might not
> have been an isolated occurrence are always relevant . . . Moreover, appellate courts
> have repeatedly cautioned that cessation of illegal activity does not ipso facto justify
> the denial of an injunction.

SEC v. Management Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975). In assessing that

likelihood, courts consider such factors as the character of the violation, "isolated or recurrent

nature of the infraction," the degree of scienter involved, and whether future violations may

occur because of the defendant's occupation. See, e.g., id.; SEC v. Commonwealth Chem. Secs.,

Inc., 574 F.2d 90, 100 (2d Cir. 1978).

In this case, the violative conduct is recurrent and ongoing, continuing even after

Defendants had been questioned by the Commission's staff. As of November 25, 2007, the

Firm's website, through which it solicits investors and on which it makes material misrepresentations and omissions of material fact, is still on line. Defendants Rabinovich and Lovaglio have a history of engaging in fraudulent activities, and the blatant nature of their fraud and degree of scienter, is striking. Accordingly, a temporary restraining order is necessary to prevent the fraud from continuing, and to preserve the status quo pending a preliminary injunction hearing.

## II.  THE COURT SHOULD GRANT ADDITIONAL RELIEF TO FACILITATE THE PRESERVATION OF INVESTOR ASSETS AND PROSECUTION OF THE CASE

The Court should order an asset freeze and a verified accounting to preserve and identify investor assets. The Court should also order expedited discovery and prohibit the destruction of documents and witness tampering to allow for the efficient and just prosecution of this action.

### A.     The Court Should Enter an Asset Freeze

It is well established that a court has the authority in securities fraud cases to grant ancillary relief, such as asset freezes, in order to preserve funds necessary to satisfy any final judgments a court may enter compelling, for example, the disgorgement of profits or civil penalties. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103, 1105-06 (2d Cir. 1972). In fact, the showing needed to warrant an asset freeze is lesser than that required to support an injunction. See, e.g., Unifund SAL, 910 F.2d at 1041 (court upholding asset freeze, despite finding insufficient basis to enter preliminary injunction). Where there are concerns that defendants might dissipate assets, a court need only find some basis for inferring a violation of the federal securities laws in order to impose a freeze order. Id.; see also SEC v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000) (purpose of asset freeze is to preserve status quo by preventing dissipation and diversion of assets).

In this case, dissipation is at the heart of the Commissions concerns, as Defendants have already demonstrated a willingness to conceal the Fund's losses and have repaid some investors the amount of their entire investment, undoubtedly at the expense of other investors. See Bohan Decl. ¶ 36. Accordingly, the Court should grant an asset freeze over the assets of the Defendants to protect investors from the further dissipation of the Fund's assets.

**B.      The Court Should Order an Accounting of the Disposition of All Investor Funds**

Courts also may impose the equitable remedy of a sworn accounting to provide an accurate measure of the whereabouts of the proceeds of an offering. SEC v. Bremont, 954 F. Supp. 726, 733 (S.D.N.Y. 1997) (granting accounting prior to evidentiary hearing); see generally Manor Nursing Centers, 458 F.2d at 1105; see also Exchange Act Section 21(d)(5) (codifying Section 305 of the Sarbanes-Oxley Act, which provides that "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors"). Given the dissipation of most of the known funds that Defendants' have raised, and the possibility, based on Rabinovich's claims, that significantly more funds may have been raised from investors, an accounting of the disposition of all investors funds is called for.

**C.      The Court Should Enter an Order Permitting Expedited Discovery and Prohibiting the Destruction of Documents**

The Court should grant the Commission's request for expedited discovery to allow the Commission to act quickly to obtain bank and other records necessary to locate, identify and preserve investor assets, and determine whether Defendants are engaged in other ongoing

frauds.[8]  Likewise, the Court should enter an order prohibiting Defendants from destroying and

altering documents in order to preserve as much of the evidence as possible given Defendants'

continuing misconduct.

## CONCLUSION

For the foregoing reasons, and those set forth in the accompanying Declarations and

exhibits, the Commission respectfully requests that its application be granted.


Dated: New York, NY
        November 26, 2007                      Respectfully submitted,



                                               By: _____

                                               Mark K. Schonfeld (MS-2798)
                                               Michael Paley (MP-6035)
                                               ATTORNEY FOR PLAINTIFF
                                               SECURITIES AND EXCHANGE COMMISSION
                                               New York Regional Office
                                               3 World Financial Center, Suite 400
                                               New York, New York 10281-1022
                                               (212) 336-1045 (Paley)



Of Counsel:

Andrew M. Calamari
Leslie Kazon
James Burt IV
Kristine Zaleskas


---

[8]  In light of the Commission's need to continue conducting discovery in order to locate the
Company's assets, the Commission requests an order expediting discovery that will remain
in place beyond any hearing or application for preliminary injunctions.