Counsel of Record:
Mark K. Schonfeld (MS-2798)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022
(212) 336-1100

07 CV 10547

JUDGE LYNCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

　　　　　　　Plaintiff,

-against-

RABINOVICH & ASSOCIATES, LP,
ALEX RABINOVICH AND
JOSEPH LOVAGLIO,

　　　　　　　Defendants.

07 Civ. ____ ( )

---

### DECLARATION OF TERRENCE P. BOHAN IN SUPPORT OF PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, ASSET FREEZE, ORDER TO SHOW CAUSE, AND OTHER RELIEF

I, Terrence P. Bohan, pursuant to 28 U.S.C. 1746, declare as follows:

1.　　I am over eighteen years of age and am employed as a branch chief in the Broker/Dealer Inspection Program in the New York Regional Office of the Securities and Exchange Commission. I have been employed at the Commission for over twelve years. I make this Declaration in support of the Commission's Emergency Application for Temporary Restraining Order, Asset Freeze, Preliminary Injunction, Order to Show Cause, and Other Relief ("Application") involving Rabinovich & Associates, LP, Alex Rabinovich and Joseph Lovaglio.

2. I make this Declaration based upon personal knowledge, information and belief. The sources of my information and the bases of my belief are: my November 8, 2007 interviews of defendants Rabinovich and Lovaglio; my observations during a visit to the office of Rabinovich & Associates (sometimes referred to hereafter as the "Fund" or the "firm") on November 8, 2007; interviews of Fund investors conducted by myself and other Commission staff under my supervision;[1] my review of the Fund's website; the account statements for the Fund's brokerage accounts and the Commission staff's analysis of these statements; and public records and other documents obtained and reviewed by the Commission staff.[2] The statements of others set forth herein are described in substance and in part, and not verbatim. To the extent that there are assertions herein concerning dates and numbers, they are approximate, based upon information and evidence gathered to date. Because the Commission submits this Declaration for the limited purpose of supporting the Application, I have not set forth each and every fact that I know about the investigation.

3. Emergency relief is needed here because the staff's investigation shows that the defendants have been defrauding investors and are actively soliciting additional investments.

---

[1] Between November 5, 2007 and November 13, 2007, I participated in the interviews of five investors. In addition, other Commission staff, under my direction, interviewed another three investors.

[2] Certain of the documents I reviewed are exhibits to this declaration. They are cited as "Bohan Decl. Exhibit __" and are contained in an appendix submitted herewith.

2

**The Defendants**

4.      Defendant Rabinovich & Associates is a limited partnership, purportedly organized in December 2002[3] and located at 14 Wall Street, New York, NY. It is not registered in any capacity with the Commission, and is not a member of the NASD, the New York Stock Exchange ("NYSE") or the Securities Investor Protection Corporation ("SIPC"). According to its website, www.ra-lp.com, Rabinovich & Associates is "an independent investment company whose affiliates offer a broad array of financial products and services." [4]

5.      In actuality, Rabinovich & Associates is an unregistered investment company and broker-dealer operating a "boiler room,"[5] selling limited partnership interests in the Fund and other securities, primarily to senior citizens and retirees, from an unmarked storefront at 502 Gravesend Neck Road in Brooklyn. The firm sells interests in the Fund by "cold calling" (i.e., unsolicited calls to potential investors), and by making extraordinary -- and false -- claims to investors and potential investors about the Fund's performance. For example, correspondence, dated December 2006, sent to one Fund investor claimed that the "Rabinovich & Associates LP Growth" fund had achieved a 538% return since its inception in December 2002.[6] As discussed

---

[3]     Documents sent to investors identify "December 2002" as the Fund's "inception date." The staff has found no evidence, however, of the Fund's existence or activity prior to October 2003.

[4]     Bohan Decl. Exhibit 1 is a copy of the firm's website, www.ra-lp.com, printed by the Commission staff on November 25, 2007. For ease of reference, the staff has numbered the pages. The above-quoted passage may be found on page 6.

[5]     The term "boiler room" refers to a "place where high-pressure salespeople use banks of telephones to call lists of potential investors . . . in order to peddle speculative, even fraudulent, securities." John Downes and Jordan Elliot Goodman, Dictionary of Finance and Investment Terms (Barrons, 6th Ed. 2003) at 67.

[6]     The December 2006 correspondence, provided to the staff by investor Carl Bergstrom, is Bohan Decl. Exhibit 2.

below, however, the Commission staff's analysis reveals that the Fund has lost money in every quarter of its existence.

6.    Defendant Alex Rabinovich, age 29, resides in Brooklyn, New York. He is the general partner of Rabinovich & Associates and describes himself on his business card as a "private wealth manager."[7] CRD information for Rabinovich (CRD # 310081) shows that, from August 2001 through April 2004, Rabinovich worked as a registered representative for, successively, Dupont Securities Group, Inc., Indianapolis Securities, Inc. and Salomon Grey Financial Corporation, each of which has been the subject of significant disciplinary action.[8] According to CRD information and records of NASD disciplinary actions available through the FINRA website, in March 2004, Rabinovich consented to a fine of $5,000 to resolve a customer complaint, by a 72-year-old retiree, of unauthorized trading and churning in her account at Dupont. On July 2, 2004, the NASD revoked Rabinovich's registration for failure to pay the

---

[7]    Rabinovich and Lovaglio provided me with their business cards, copies of which are Bohan Decl. Exhibit 3.

[8]    "CRD information" refers to a CRD or IARD(SM) System report provided to the Commission staff on November 9, 2007 and reflects information on various licensing and registration forms submitted to the NASD. Dupont Securities Group was expelled by the NASD in 2005 on the basis of the firm's participation in unlawful sales of unregistered securities and an associated person's approval of a false press release designed to manipulate the price of a stock. See Disciplinary and Other NASD Actions December 2005, available at http://www.finra.org/Regulatory Enforcement/Monthly Disciplinary Actions/2005 Actions. Salomon Grey Financial was expelled by the NASD in April 2006 based on a panoply of violations, including extensive supervisory failures, and failure to comply with rules concerning email retention, customer complaint reporting, and anti-money laundering procedures. See NASD News Release, Texas Brokerage Firm Salomon Grey Financial Expelled for Widespread Violations of NASD Rules (April 27, 2006), available at http://www.finra.org/PressRoom/NewsReleases/2006NewsReleases. Indianapolis Securities was the subject of a Commission action filed in 2003 arising out of an ongoing fraudulent offering that commenced in October 2002. See SEC v. Discover Capital Holdings Corp., et al., Litigation Release Nos. 18222 (July 10, 2003) and 18988 (December 2, 2004).

4

fine, see <u>Disciplinary and Other NASD Actions August 2004</u>, available at http://www.finra.org/Regulatory Enforcement/Monthly Disciplinary Actions/2004 Actions/August 2004, and a month later, Rabinovich consented to a bar from association with any NASD member in any capacity on the basis of his failure to respond to an NASD request to provide testimony. See <u>Disciplinary Actions and Other NASD Actions September 2004</u>, available at http://www.finra.org/Regulatory Enforcement/Monthly Disciplinary Actions/2004 Actions/September 2004. In November 2004, in a customer arbitration, the NASD found Rabinovich and Dupont jointly liable for approximately $165,000 based on claims of fraud, breach of contract and breach of fiduciary duty.

7.  Defendant Joseph Lovaglio, age 25, has the title of managing director at Rabinovich & Associates and appears to be the head of its sales operation. CRD information for Lovaglio (CRD # 3234996) shows that, since 1998, Lovaglio has worked for at least four financial firms, at least three of which have been the subject of significant enforcement action. For example, the principals of Walter Scott Lev & Associates, where Lovaglio worked from June 1998 to January 2000, pleaded guilty to operating a boiler room and defrauding investors during the period of Lovaglio's employment. Another former employer, D. L. Cromwell Investments, Inc., a registered broker-dealer where Lovaglio worked in 1999, was expelled by the NASD in February 2004 for engaging in manipulative practices.[9] Lovaglio is the subject of a pending

---

[9]  See United States Attorney for the Southern District of New York press release, <u>Former Officers of Walter Scott Lev Sentenced by U.S. in "Boiler Room" Scam</u> (October 8, 2004), available at http://www.usdoj.gov/usao/nys/pressreleases/October04/yampolskysentencedpr.pdf; <u>Disciplinary and Other NASD Action March 2004</u> (Decisions Issued), available at http://www.finra.org/Regulatory Enforcement/Monthly Disciplinary Actions/2004 Actions/March 2004. In addition, A.R. Capital, where Lovaglio worked from May 2003 to March 2005, immediately prior to joining Rabinovich & Associates, is, according to a recent newspaper article, under investigation for allegedly defrauding investors from

5

proceeding by the Financial Industry Regulatory Authority, Inc. ("FINRA") alleging violations of NASD rules based on his failure to provide FINRA with requested information and documents in connection with a customer allegation of fraud.[10]

**The Fund**

8.  Rabinovich & Associates holds itself out as an "independent investment company" and broker-dealer "whose affiliates offer a broad array of financial products and services," and whose principal offices are located at 14 Wall Street.[11] According to the Rabinovich & Associates limited partnership agreement, the Fund "is organized to acquire for investment the securities . . . of any recognized stock exchange company . . . to realize the value of such Securities by managing the same for the mutual benefit of the [General Partner and the Limited Partners]."[12] The limited partnership agreement says nothing about the Fund's investment strategy, although the firm's website indicates that the Fund is divided into two funds, one of which follows a "moderate growth" strategy and the other of which follows an "aggressive growth" strategy.[13]

---

early 2003 to September 2006, and, in connection with that activity, allegedly lulling investors "by sending out phony statements with flashy returns." New York Post, "Scam & On the Lam," (September 7, 2007), available at http://www.nypost.com/seven/09092007/business/scam__on_the_lam.htm.

[10] The NASD and the New York Stock Exchange member regulation, enforcement, and arbitration operations have been consolidated, effective July 30, 2007, creating FINRA.

[11] See Bohan Exhibit 1 at 6.

[12] A copy of the limited partnership agreement, provided to the staff by the defendants on November 8, 2007, is Bohan Decl. Exhibit 4. The language quoted above if from section 1.05 of that agreement.

[13] See Bohan Decl. Exhibit 1 at 7.

9.   The limited partnership agreement confers broad powers on the General Partner, who is Alex Rabinovich. The agreement also states that the General Partner shall receive "no fees, wages or payment" for managing the Fund, "except for his fifty (50%) percent profit realized on any transactions on behalf of the partnership[,]" and provides that the partnership shall bear all organizational and operating expenses.[14]

10.  The firm's website expands only slightly on the Fund's supposed investment strategy. As of November 25, 2007, the website states that Rabinovich's goal is "to yield returns to individual investors that institutions are accustomed to[,]" and continues with such vague pronouncements as:

> The firm's model for investing complements the average investor's needs. The model works when capital is pooled together and distributed respectively. It limits risk and increases returns. . . . When many investors devote funds together, capital accumulates and all are more likely to turn a profit because of the large buying power. . . .[15]

11.  The website also recounts the firm's supposed "experience and success with institutional clients," indicating that, from inception, the firm had achieved a 127.3% return in its "moderate growth fund" and a 442.9% return in its "aggressive growth fund." The site further represents, "Due to the fund's exceptional performance and the successful relationships maintained with multi-million dollar clients, the firm also agreed to reward average investors. . . . Therefore, at the end of 2003, the fund closed its doors to institutions and welcomed the average investor."[16]

12.  The website also highlights the Fund's supposed flexible redemption policy and

---

[14]  Bohan Decl. Exhibit 4, at section 2.02.

[15]  See Bohan Decl. Exhibit 1 at 3.

[16]  See Bohan Decl. Exhibit 1 at 7. The Commission staff has found no evidence that there are or ever have been any institutional investors in the Fund or that the Fund has or ever has had any multi-million dollar clients.

7

lack of management fees, as well as the purported character of Rabinovich and Lovaglio. For example, the website contains a number of "testimonials" that extol the Fund's purported flexibility and high returns and praise Rabinovich and Lovaglio personally:

> "The thing I appreciate most is the personable service and the returns are phenomenal." James Bull from NV

> "R&A L.P. has guided us correctly in the market and is delightful team to work with. Joseph Lovaglio is very easy to communicate with and a pleasure to do business with." Thomas Yancey from AZ

> "The only company where the firm gets compensated on performance and also pick[s] mostly winners providing percentage gains in any market conditions, where else can you do that." Dean Henderson from CA

> "I am pleased with the consistency of performance that the fund produces. Alex Rabinovich is honest, frank, and very easy to deal with. He is one of the most trustworthy people in the industry that I have ever encountered. He will tell you how it is!!" Howard Hinck from NJ[17]

### The Defendants Are Operating a Boiler Room

13. On November 8, 2007, my colleague Paul Eberhard and I conducted an unannounced visit to Rabinovich & Associates' office at 502 Gravesend Neck Road, Brooklyn, New York. While there, we observed many of the typical indicia of a cold-calling, boiler room operation, including (a) a main room with five desks, each with a telephone; (b) several time zone maps of the United States; (c) hundreds of index cards that appeared to be "lead cards" (with names and contact information, presumably of potential investors) strewn across the desks and piled in a box with a do-not-call list; (d) sales scripts; and (e) a large bulletin board along a wall displaying a list of reasons for a person to invest in the Fund, including "recession proof,"

---

[17]   See Bohan Decl. Exhibit 1 at 14-15.

"50/50 profit sharing" and "quarterly dividends." The bulletin board also displayed a number of "points" for various numbers of "leads" (e.g., "1 lead = 1 point", "2 leads = 5 points").[18]

14. We also interviewed Rabinovich, Lovaglio and a junior salesman, all of whom agreed to speak with us voluntarily, for about two hours, about the business and activities of the firm.

15. Rabinovich stated that the firm sells limited partnership interests in the Fund, and that he engages in day-trading with the limited partners' investments. He further stated that he is the general partner of the firm, is responsible for its operations and management, and conducts all of the Fund's trading, from a separate location. Rabinovich explained that trading profits are divided 50/50 between him and the partnership, after payment of expenses, and that he takes no other fees or compensation. He also said that salesmen are paid a commission ranging from 3% to 10% of the amount they raise, depending on a number of factors that he could not seem to articulate.

16. Lovaglio appears to run the sales operation, which currently consists of himself and two other cold callers. According to his business card, Lovaglio has the title "managing director,"[19] and he has his own "office" – a desk with a phone separated from the main part of the storefront. Lovaglio stated that he personally makes many of the cold calls and also frequently calls existing Fund investors to solicit additional investments.[20] Four investors also

---

[18] When I began to read one of the scripts, attached to a partition beside a desk, a junior salesman stepped between me and the script, blocking my view. The small portion of the script that I had had a chance to read stated that R & A is a "block trader" on Wall Street and is able to purchase securities at a discount.

[19] See Bohan Decl. Exhibit 3.

[20] During the interview, Rabinovich said that the Fund obtains investments through referrals. He claimed that Lovaglio's job and the job of the other employee present at the

9

told the Commission staff that their initial contact with Rabinovich & Associates was a cold call from Lovaglio. Two others investors told the Commission staff that their initial contact was a cold call from Alan Kaprov, a salesman who is no longer at the firm.[21]

17.  Rabinovich told Mr. Eberhard and me that the Fund has approximately 60-80 investors and about $1 million in assets under management, about half of which is at all times invested in a money market fund. The eight investors interviewed by the Commission staff reported investing a total of approximately $208,000 in the Fund. I have reviewed a list of investors supplied by the Fund to Cyber Trader, Inc. (an affiliate of Charles Schwab & Co., Inc),[22] indicating additional investments by other investors totaling an additional $369,000.[23] Based on the investor interviews, the list of investors provided by the Fund to Cyber Trader, and investors identified on the firm's website, there appear to be at least twenty-three Fund investors.

18.  Rabinovich told me that the Fund has accounts at two brokerage firms, TradeStation Securities, Inc. and Cyber Trader. When I asked Rabinovich if the Fund maintains any investments outside of the brokerage accounts, such as private placements or real estate, he said that it did not. Following the interview, I obtained from Cyber Trader statements of the Fund's account there, which showed, among other things, that the account was closed in February 2007. I also obtained from Trade Station statements of the Fund's account there,

---

interview is "investor relations." However, Rabinovich conceded that the firm calls people with whom it has no previous relationship and then sends some of them an introductory package, which includes business cards, the limited partnership agreement and a list of references.

[21]  According to Rabinovich, Kaprov is currently in prison for possession of stolen property.

[22]  A copy of this list and cover letter, dated January 8, 2007, is Bohan Decl. Exhibit 5.

[23]  One of these investors, who invested $25,000, was paid back.

account number 17265972, which was opened in February 2007.[24] As of November 21, 2007, the Trade Station account held $197,348 in cash.

19.  The firm appears to be targeting senior citizens. Of the eleven investors whose ages the staff has been able to determine, all are at least sixty years old, including three who are in their eighties and three who are in their seventies. At least three of the investors interviewed used their IRA money to invest in the Fund, apparently with the firm's assistance and encouragement.

20.  In addition to shares of the Fund, the firm has also offered or sold shares in the purported private placements of at least two companies, Datawind Net Access Corp. and "BIDV." For example, Carl Bergstrom purchased 1805 Datawind shares from the firm in about August 2005 because, according to Bergstrom, the Rabinovich & Associates' salesman led him to believe that Datawind was going public.[25] According to Bergstrom, after Datawind failed to go public and after he complained repeatedly to Rabinovich, Rabinovich agreed to partially "buy back" the shares. Instead of refunding his money, however, Rabinovich purported to give Bergstrom a $2,615 interest in the Fund, in exchange for 805 Datawind shares. Another individual with whom I spoke told me that Lovaglio solicited him in connection with Datawind

---

[24] Copies of the Fund's account statements obtained from Cyber Trader and Trade Station are Bohan Decl. Exhibits 6 and 7, respectively.

[25] Bergstrom provided the Commission staff with: (1) A document titled, "pre-confirmation," apparently signed by Rabinovich and seeming to reflect Bergstrom's agreement to purchase Datawind shares from Rabinovich & Associates; (2) A statement of Bergstrom's account with Rabinovich & Associates as of December 31, 2005 purporting to reflect his ownership of Datawind shares; and (3) Bergstrom's most recent account statement purporting to show the exchange of 805 of Bergstrom's Datawind shares for an interest in the Fund valued at $2,615. These documents are Bohan Decl. Exhibit 8. In the interests of protecting investors' privacy, the staff has redacted the account numbers on the investors' account statements because they are the same as investors' social security numbers.

and "BIDV," but that he decided not to invest. Another investor told the Commission staff that Lovaglio recently tried to sell him a real estate investment, and that Lovaglio claimed he would guarantee the investor a 15% return if the investor invested $25,000.

**The Defendants Have Defrauded and Are Continuing to Defraud Investors and Potential Investors**

### The Defendants Have Made and Are Continuing to Make Extraordinary Claims About the Performance of the Fund and of Individual Investor's Accounts.

21. The defendants frequently tout the Fund's purported track record. The firm's website, for example, states that the Fund achieved a 123.90% return in 2004, an 84.20% return in 2005 and a 54.70% return in 2006. Moreover, according to the website, in the Fund's worst quarter ever, it achieved a 6.10% return.[26] In every other quarter mentioned, the Fund purportedly earned 11.80% or more. These purported returns are supposedly the result of the firm's "large buying power" and Rabinovich's trading acumen. According to the website, Rabinovich is "not only the General Partner, the head trader, and the chief of all the day to day operations . . . he is the man who is able to swim with the sharks."[27]

22. The same yearly performance claims that are posted on the website appear on correspondence the firm sent to Fund investor Carl Bergstrom. That correspondence also claimed that the Fund had earned a return of 538.01% since its inception in December 2002.[28] A second investor received a similar document, apparently in early 2006, which boasted the same

---

[26] See Bohan Decl. Exhibit 1 at 11-13.

[27] See Bohan Decl. Exhibit 1 at 2. At the November 8th interview, Rabinovich told Mr. Eberhard and myself that the Fund has made a profit every quarter of its existence and that he has a "gift" for trading.

[28] See Bohan Decl. Exhibit 2. The staff has found no evidence of any trading by the Fund prior to December 2003.

123.90% return for 2004 but a return of 97.10% in 2005, even higher than the number on the website.[29]

23.  Quarterly account statements sent to Fund investors also represent that the Fund is earning substantial returns. The statements generally indicate the amount of the investor's "dividend" and the "percentage gain" during the quarter. For example, one investor's June 2007 account statement states that he earned a $705 dividend that quarter on his $10,000 investment. The statement also says that the Fund's year-to-date "percentage gain" was 24.81%.[30] A second investor's statement for the quarter ended March 31, 2006 also states that the investor earned a "dividend" of $518.21 for the quarter and that the Fund had a 18.600% gain for the quarter.[31] A third investor provided the staff with a December 31, 2005 account statement showing a year-to-date gain for the Fund (i.e., "earnings") of 62.278%. During that quarter, the investor supposedly earned a "dividend" of $1,748.[32]

24.  The impressive performance claims have led at least some investors to make additional investments in the Fund. For example, investor David Bodtker, a 71-year-old retiree, told the staff that he persuaded his wife, age 73, to invest a year after he did, after seeing the returns on his own investment. Similarly, investor Donald Ferguson, age 78, stated that, after seeing the "dividends" he was making, he concluded that the Fund was a great investment and, at Lovaglio's urging, cashed in his IRA and invested approximately $110,000 more in the Fund.

---

[29] This document, provided to the staff by investor Jeremy Gorman, is Bohan Decl. Exhibit 9.

[30] This account statement, provided to the staff by Sanford Nash, is Bohan Decl. Exhibit 10.

[31] This account statement, provided to the staff by David Bodtker, is Bohan Decl. Exhibit 11.

[32] This account statement, provided to the staff by Donald Ferguson, is Bohan Decl. Exhibit 12.

25. All of these performance claims appear to be unfounded. The Commission staff has reviewed the only Fund brokerage accounts of which it is aware (based on Rabinovich's representation, noted above, that the firm's only two brokerage accounts are at Cyber Trader and Trade Station). The Fund's account at Cyber Trader, closed in February 2007, incurred trading losses for every quarter from the opening of the account in December 2003 until the account was closed. During that period, $530,000 was deposited into the account, $124,950 was withdrawn from the account,[33] and the account incurred trading losses of $320,513. In February 2007, when the account was closed, the balance remaining was only $84,537. Statements for the Fund's Trade Station account indicate that this account was opened in February 2007 and that the Fund has continued to incur losses every quarter since then. Between February 22, 2007 and October 31, 2007, $190,000 was deposited into the account, and it incurred trading losses in excess of $75,000.

**The Defendants Have Misrepresented and Continue to Misrepresent That Rabinovich & Associates Is a Member of the NASD, NYSE and SIPC**

26. The defendants falsely represent to investors that Rabinovich & Associates is a member of the NASD, the NYSE and SIPC. Account statements obtained from six Fund investors for the periods ending December 31, 2006, March 31, 2007, June 30, 2007 and September 30, 2007, bear the legend "Account Carried With Rabinovich Associates LP Member NASD, NYSE, SIPC." These statements also contain misrepresentations about the investors' profits during those quarters which are inconsistent with the trading losses in the Fund's brokerage account for that period.[34]

---

[33] The brokerage account records reflect transfers of money to an account (number 831-056-2058) at Astoria Federal Savings in the name of Rabinovich & Associates.

[34] Examples of account statements bearing this legend are Bohan Decl. Exhibits 8 and 13.

27.     The Commission staff has searched the Commission's public files and FINRA's database, and has found no evidence that Rabinovich & Associates is a member of the NASD, the NYSE or SIPC or that it is registered with Commission as an investment company. In addition, the staff called the New York State Attorney General's Office of Investor Protection, and determined that Rabinovich & Associates is not licensed with the State of New York to act as an investment adviser.

28.     A search of the Commission's public files shows that no registration statement was ever filed with the Commission in connection with the offering of interests in the Fund.

### Defendants Misrepresent to Investors and Potential Investors That Rabinovich & Associates Is a Wall Street Firm

29.     The defendants also tout the firm's Wall Street address. On account statements, letters to investors, the firm website, Rabinovich's and Lovaglio's business cards, and the limited partnership agreements sent to some investors, the firm has repeatedly represented that its office or its principal office is at 14 Wall Street.[35] In fact, the offices are in a shoddy Brooklyn storefront and the Wall Street address is nothing more than a mail drop. Rabinovich told me that the Wall Street address is simply a mailing address that the firm uses because it "is a prestigious location" and "it looks good."

30.     Investors I interviewed told me that they were directed to, and did, use the Wall Street address when sending anything to the Fund, such as investments and signed partnership agreements.[36] None of them were aware that the Wall Street address was only a mailing address

---

[35] See Bohan Decl. Exhibits 8 and 13 (account statements); Exhibit 1 at 6, 31 and 32 (a page of the firm's website); Exhibit 3 (the individual defendants' business cards); and Exhibit 4, at section 1.04 (the limited partnership agreement).

[36] The 14 Wall Street address is the address that appears on the self-addressed Federal Express air bill label provided by the firm to a prospective Fund investor, along with the

or that the firm actually operated from a Brooklyn storefront. At least three investors stated that the Wall Street address gave the firm legitimacy in their eyes and was a factor in their decision to invest.

### The Defendants Have Failed to Disclose Rabinovich's Disciplinary History

31. The defendants have also failed to disclose to investors Rabinovich's bar from association with a broker or dealer, even as they tout his purported experience and include a testimonial to his honesty on the firm's website. The website does not mention Rabinovich's bar and all three investors specifically questioned by the staff on this subject stated that they were unaware of Rabinovich's bar. Two of them said that information about the bar would have affected their decision to invest in the Fund.

32. I have no reason to believe that the defendants have disclosed to investors the pending FINRA proceeding against Lovaglio. These proceedings are not mentioned on the firm's website.

### Additional Fraudulent Representations and High Pressure Sales Tactics

33. The defendants have also misrepresented to investors the benefits and risks of investing in the Fund. For example, correspondence, dated December 2006, sent by the firm to investor Bergstrom, cited various "Benefits of Rabinovich & Associates LP Fund Program," including the following: "A good alternative to low yielding bonds and deposits," "Professional account management from a well-capitalized firm," and "Redemptions may take place on a quarterly basis, with no fee or penalty."[37] I have not seen any evidence indicating that the Fund

---

partnership agreement and other documents. A copy of the air bill provided to the staff by David Bodtker is Bohan Decl. Exhibit 14. The staff has redacted the investor's Federal Express account number.

[37] See Bohan Decl. Exhibit 2.

is a good alternative to bonds or other investments, nor have I seen anything to suggest that the firm is "well capitalized."

34.    Lovaglio has made other false or misleading statements to investors and prospective investors in oral sales pitches, as well as engaging in other high pressure sales tactics. One investor told the Commission staff that Lovaglio told him that he had invested a significant amount of his own money in the Fund. When I questioned Lovaglio on November 8th, however, he stated that he did not own any interest in the Fund.

35.    Another investor indicated that Lovaglio minimized the risks of investing in the Fund, comparing it to "'money in the bank.'" The investor also said that Lovaglio pressured him to increase his investment by sounding "highly inflamed" and by saying that the investor's initial $5,000 investment was "'an insult.'"

### The Defendants Are Continuing to Defraud and to Solicit Additional Investments from Fund Investors

36.    Defendants are apparently continuing to defraud Fund investors and potential investors. For example, the most recent quarterly statements sent by defendants to investors, for the quarter ended September 30, 2007, repeat the false representation that the firm is a member of the NYSE, NASD and SIPC.[38] In addition, a letter to a Fund investor, dated August 9, 2007, apparently signed by Rabinovich, contained several false and misleading statements including: "this past year was a great year for us . . . ." That representation is contradicted by the firm's substantial trading losses in every quarter of the prior year (and all other years) as shown in the statements of the Fund's brokerage accounts.[39] In addition, three investors have reported to the

---

[38]    See Bohan Decl. Exhibits 8 and 13.

[39]    This letter is Bohan Decl. Exhibit 15.

staff receiving calls from Lovaglio in October or November 2007 soliciting additional investments in the Fund. And, by all appearances, the storefront has continued to be an active boiler room, at least as of November 8, 2007. Moreover, on or about November 16th, an investor who had been requesting the return of his investment for months finally got his money back.[40] Because the Fund does not appear to have earned any trading profits or have any source of income other than investor contributions, it appears that the defendants used funds fraudulently obtained from other investors to repay this investor.

37.     Pursuant to 28 U.S.C. §1746, I, Terrence P. Bohan, declare under penalty of perjury that the foregoing is true and correct.

Executed on November 26, 2007
New York, New York

_____
Terrence P. Bohan

---

[40] A copy of the check reflecting that payment – a check for $10,000 drawn on an account in the name of Rabinovich & Associates at Astoria Federal Savings Bank payable to investor Sanford Nash -- is Bohan Decl. Exhibit 16.