# AGREEMENT
# OF
# LIMITED PARTNERSHIP
# OF
# RABINOVICH & ASSOCIATES, LP

AGREEMENT OF LIMITED PARTNERSHIP dated as of December 1, 2003 by and among, Alex Rabinovich as the general partner (hereinafter referred to as the "General Partner"), and the persons and/or entities who have executed this Agreement as limited partners and whose names are listed as such on Schedule A hereto (hereinafter referred to individually as a "Limited Partner" and collectively as the "Limited Partners"). The General Partner and the Limited Partners are hereinafter sometimes referred to individually as a "Partner" and collectively as the "Partners."

## ARTICLE I

## GENERAL PROVISIONS

    1.01    <u>Definitions.</u>

    (a)    "Act" means the New York Revised Uniform Limited Partnership Act.

    (b)    "Agreement" means this Agreement of Limited Partnership by and among the General Partner and the Limited Partners dated as of December 1, 2003, as it may be amended from time to time.

    (c)    "Capital Account" of a Partner means the individual capital account of such Partner established and maintained in accordance with Sections 4.01 and 4.02 of this Agreement.

    (d)    "Capital Contributions" means the amounts contributed or to be contributed to the capital of the Partnership by the Partners in accordance with Section 4.01 and as reflected on Schedule A hereto.

    (e)    "Claim" shall have the meaning set forth in Section 2.04(b) of this Agreement.

    (f)    "Code" means the Internal Revenue Code of 1986, as amended. All references to provisions of the Code or to any regulations promulgated thereunder shall be deemed to include any successor provisions thereto.

    (g)    "Cumulative Gain" means the excess of the sum of realized Gains of the Partnership over the sum of realized Losses of the Partnership from the date hereof to the date of determination.

(h) "Cumulative Loss" means the excess of the sum of realized Losses of the Partnership over the sum of realized Gains of the Partnership from the date hereof to the date of determination.

(i) "Fiscal Year" of the Partnership means the calendar year or, in the case of the first such year of the Partnership, the remainder of the calendar year beginning on the date of this Agreement.

(j) "Gains" shall mean net income or gains of the Partnership for federal income tax purposes.

(k) "Indemnified Party" shall have the meaning set forth in Section 2.04(a) of this Agreement.

(l) "Losses" shall mean the losses of the Partnership for federal income tax purposes.

(m) "Partnership" means Rabinovich & Associates LP., a New York limited partnership.

(n) "Partnership Interest" means the share of a Partner in the Gains and Losses of the Partnership and the right to receive distributions of Partnership assets, as provided in this Agreement.

(o) "Partnership Percentage" means that percentage established for each Partner in Section 5.01 of this Agreement.

(p) "Securities" shall have the meaning set forth in Section 1.05(a) of this Agreement.

(q) "Securities Act" means the Securities Act of 1933, as amended.

(r) "Tax Matters Partner" shall have the meaning set forth in Section 8.02 of this Agreement.

(s) "Treasury Regulations" means the income tax regulations promulgated by the Treasury Department under the Code.

(t) "Transfer" means any sale, exchange, transfer, gift, encumbrance, assignment, pledge, mortgage or other disposition, whether voluntary or involuntary.

1.02  Formation of the Partnership. The parties hereto hereby form a limited partnership under the Act to engage in the activities hereinafter described for the period and upon the terms and conditions set forth herein. Upon execution of this Agreement, the rights, duties and obligations of the Partners shall be governed by this Agreement.

1.03  Name of the Partnership. The name of the partnership is "Rabinovich & Associates L.P." or such other name as determined by the General Partner to be necessary or appropriate for the conduct of the activities of the Partnership.

1.04  Principal Office and Qualification.

(a)  The Partnership's principal office shall be 14 Wall St. 20th Floor, New York, New York 10005, or at such other place or places as the General Partner shall from time to time determine. The General Partner shall give prompt written notice of any such change to each Partner.

(b)  The General Partner shall have the power at any time to qualify the Partnership to do business in each jurisdiction where the activities of the Partnership make such qualification necessary. The General Partner shall have the power at any time to qualify the Partnership under any name where the Partnership's name is unavailable for use in a particular Jurisdiction.

1.05  Purpose and Powers of the Partnership.

(a)  The Partnership is organized to acquire for investment the securities (the "Securities") of any recognized stock exchange company (referred to herein as the "Company"), to realize the value of such Securities by managing the same for the mutual benefit of the Partners.

(b)  In order to accomplish its purposes, the Partnership may:

(i)  acquire for investment the Securities;

(ii)  borrow or raise money, and from time to time without limitation as to amount, issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and other evidences of indebtedness in such amounts and with such terms, conditions, rights and privileges as determined by the General Partner to be necessary or advisable;

(iii)  hold, receive, mortgage, pledge, lease, transfer, exchange, otherwise dispose of, grant options with respect to and otherwise deal in and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Securities and all other assets held or owned by the Partnership;

    (iv) engage accountants, custodians, investment advisers, attorneys and any and all other agents and assistants, both professional and non-professional, and to compensate them in such manner as may be necessary or advisable;

    (v) sell, convey, exchange, lease, license or otherwise dispose of the Securities or other assets of the Partnership;

    (vi) enter into, perform and carry out contracts and agreements necessary, appropriate or incidental to the accomplishment of the purposes of the Partnership; and

    (vii) engage in any other lawful act or activity necessary or incidental to the accomplishment of the purposes of the Partnership.

  1.06 <u>Term of the Partnership</u>. The Partnership shall commence on the date of the filing, pursuant to law, of its Certificate of Limited Partnership, and shall continue until terminated pursuant to the provisions of this Agreement.

## **ARTICLE II**

## **MANAGEMENT OF THE PARTNERSHIP**

  2.01 <u>Management Generally</u>.

  (a) Subject to the provisions of this Agreement, the General Partner shall have the exclusive right and power to manage, conduct and operate the business of the Partnership. In managing the business of the Partnership, the General Partner shall have full and complete power to engage in all acts enumerated or specified in Section 1.05 and all other acts and things that in its judgment are necessary, appropriate or incident to the management and the furtherance of the business of the Partnership, subject, however, to the provisions of paragraph (c) of this Section 2.01.

  (b) The General Partner shall devote so much of his time and attention to the business and the affairs of the Partnership as it, in its judgment, deems reasonably appropriate for Partnership purposes.

  (c) Except with the prior approval of [Partners holding a majority of the Partnership Percentages], the General Partner shall not:

    (i) borrow money, other than (1) on terms and pursuant to loan agreements so approved or (2) for the purpose of investing in Securities;

    (ii) settle any litigation or debt owed to the Partnership for less than

the full amount due as reflected in the books and records of the Partnership;

       (iii)    dispose of any assets of the Partnership for less than all or substantially all of the face amount thereof (or the accreted value thereof in the case of instruments issued at a discount to their face amount);

       (iv)    change the nature of the business of the Partnership; or

       (v)    do or perform any act on behalf of the Partnership which is outside of the ordinary course of the Partnership's business.

       (d)    No Limited Partner shall take any part in the control or management of the business or affairs of the Partnership except as is specifically permitted by this Agreement nor shall any Limited Partner have any authority to act for or on behalf of the Partnership.

       (e)    The act of the General Partner in the name and on behalf of the Partnership shall constitute the act of the Partnership and all third parties dealing with the Partnership shall be fully protected in relying upon the signature of the General Partner in any matter affecting the Partnership.

       2.02    <u>Fees and Expenses</u>.

       (a)    In exchange for the services provided by the General Partner to the Partnership as described herein, the Partnership shall pay the General Partner no fees, wages or payment except for his fifty (50%) percent profit realized on any transactions on behalf of the partnership.

       (b)    The Partnership shall bear the organizational and operating expenses of the Partnership, including all legal, bookkeeping, accounting, and any transaction costs associated with the purchase and sale of the Securities.

       2.03    <u>Authority of the General Partner</u>.

       (a)    In addition to the rights and powers of the General Partner to manage and operate the Partnership as provided herein or granted or implied by law, the General Partner shall have the right, on behalf of the Partnership, to execute and file any and all reports, schedules, notices and other instruments or documents required to be filed by the Partnership under any applicable federal or state law, rule or regulation, or deemed, in the judgment of the General Partner, to be necessary or appropriate under the circumstances. Each Limited Partner hereby agrees to furnish promptly upon request any information concerning such Limited Partner and its affiliates as the General Partner reasonably believes necessary or desirable in order to comply with filing requirements arising under applicable laws, rules and regulations. The General Partner is authorized to disclose such information concerning each Limited Partner and its affiliates as in the reasonable judgment of the General Partner is required under applicable law; <u>provided</u>,

however, that other than as permitted above, the General Partner shall keep such information confidential. At the request of the General Partner, each Limited Partner hereby agrees to prepare, execute and make such filings as the General Partner reasonably believes necessary or appropriate under applicable law.

(b) All decisions or actions made or taken by the General Partner pursuant to and in accordance with Section 2.01(a) or this Section 2.03 hereof shall be binding upon all of the Partners and the Partnership.

(c) The General Partner may make, in its sole discretion, the elections referred to in Section 754 of the Code or any similar provisions enacted in lieu thereof, or any corresponding provisions of state tax laws, and/or any other elections provided for under the tax laws and, in connection therewith, each of the Partners agrees, upon request of the General Partner, to supply the information necessary to properly give effect to such elections.

(d) Notwithstanding anything to the contrary contained in this Agreement, the General Partner has the discretion to waive allocation of Gains due to the General Partner under Section 5.02(b) hereof from affiliated entities of the General Partner and officers and directors of such entities.

[(e) Each Limited Partner acknowledges that the General Partner purchases and sells securities on its own behalf and on behalf of others independent of the General Partner's activities on behalf of the Partnership. Each Limited Partner waives any right or interest in any such transactions.]

2.04    Exculpation and Indemnification.

(a) The General Partner, its officers, directors and employees, and any persons acting for the Partnership at the request of the General Partner on behalf of the Partnership, and any affiliate of any of the foregoing (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall not be liable to the Limited Partners or the Partnership for (i) mistakes of judgment or for any action or omission, or for losses due to any such mistake, action or omission; provided, that such losses do not result from the Indemnified Party's dishonesty, willful misconduct, gross negligence or fraud in the performance of its duties, or from reckless disregard of its obligations or duties under this Agreement, or (ii) losses due to any action or omission by any employee, broker or other agent of the Partnership; provided, that such employee, broker or agent shall have been selected with reasonable care. The Indemnified Parties may consult, at the expense of the Partnership, with legal counsel, accountants and other professionals in respect of Partnership affairs and be fully protected and justified in any action or failure to act which is taken or omitted in good faith in reliance upon and in accordance with the advice or opinion of such counsel, accountants or other professionals.

(b) The Partnership shall indemnify and hold harmless each Indemnified Party from and against any and all liability to third parties, including reasonable attorney's fees, arising from any and all claims, demands, actions, suits or proceedings (civil, criminal, administrative or investigative) (collectively, a "Claim") in which the Indemnified Party shall be involved as a party or otherwise, or be threatened to be made a party, by reason of any actions taken or omitted or alleged to have been taken or omitted in connection with or in any way related to the activities or affairs of the Partnership, if such activities were taken or omitted in good faith in the reasonable belief that they were on behalf of the Partnership or in furtherance of or not opposed to the best interests of the Partnership, or if such Claim resulted from an honest mistake of judgment on the part of the Indemnified Party. The Partnership may pay all expenses incurred by an Indemnified Party in defending a Claim in advance of the final disposition of such Claim so long as the Indemnified Party undertakes to repay such expenses if he is finally adjudicated not to be entitled to indemnification. The undertaking of the Partnership to indemnify the Indemnified Parties shall be satisfied out of the assets of the Partnership and, to the extent required by law to discharge the liabilities of the Partnership, any amounts previously distributed by the Partnership to the Partners.

(c) The provisions of this Section 2.04 shall not be deemed to be exclusive of any other rights to which an Indemnified Party may be entitled under any agreement, as a matter of law or otherwise, both as to action in an Indemnified Party's official capacity and to action in another capacity, and shall continue as to an Indemnified Party who has ceased to have an official capacity and shall inure to the benefit of the heirs, successors and administrators of such Indemnified Party. At the expense of the Partnership, the General Partner shall have the power to purchase and maintain insurance on behalf of the General Partner and the other Indemnified Parties against any liability asserted against or incurred by them in any such capacity, or arising out of the General Partner's status as such, whether or not the Partnership would have the power or the obligation to defend or indemnify the Indemnified Parties against such liability under the provisions of this Agreement.

## ARTICLE III

## LIABILITY OF THE PARTNERS

3.01 **Liability of Limited Partners.** Except as otherwise required under the Act, no Limited Partner shall be liable for or subject to any loss, liability or expense whatsoever of the Partnership beyond such Limited Partner's agreed contribution of capital to the Partnership.

3.02 **Liability of General Partner.** The General Partner will in no case be liable for the return of all or any part of the Capital Contributions of any Partner, it being expressly understood that any return of capital to a Partner will be made solely from the assets of the Partnership.

## ARTICLE IV

## CAPITAL ACCOUNTS

4.01   Establishment of Capital Accounts. A separate capital account ("Capital Account") shall be established for each Partner. Each Partner shall make Capital Contributions to the Partnership in the amounts set forth on Schedule A hereto. Notwithstanding anything to the contrary contained herein, the General Partner shall not be obligated to make any contribution to the capital of the Partnership.

4.02   Maintenance of Capital Accounts.

(a)   A separate Capital Account shall be maintained for each Partner on the books of the Partnership in accordance with the provisions of Treasury Regulation §1.704-1(b)(2)(iv). Such Capital Account shall be increased by (i) the amount of all Capital Contributions made by that Partner to the Partnership and (ii) the Gains allocated to such Partner pursuant to Section 5.02 hereof, and shall be decreased by (A) the amount of all distributions to that Partner and (B) the Losses allocated to such Partner pursuant to Section 5.02 hereof. In addition, such other adjustments to each Partner's Capital Account shall be made as required or permitted to conform the maintenance of Capital Accounts to the provisions of Treasury Regulation §1.704-1(b)(2)(iv). Such other adjustments shall include, for example, the following:
in the case of a distribution in kind, the difference between the fair market value, as determined by the General Partner in its sole discretion, of the securities or other property to be distributed and the cost to the Partnership of such securities or other property shall be deemed to be a Gain or Loss, as the case may be, recognized by the Partnership and allocated among the Partners in accordance with Section 5.02 immediately prior to such distribution, and such distribution shall be deemed for purposes hereof to be a distribution of an amount equal to the value thereof.

(b)   A transferee of a Partnership Interest shall succeed to a pro rata portion of the Capital Account of the transferor relating to the Partnership Interest so transferred.

4.03   Return on and of Capital. No Partner shall be entitled to:

(a)   receive any interest or other compensation on or with respect to his Capital Contributions or Capital Account;

(b)   without the written consent of the General Partner, withdraw any part of his Capital Account or receive any distribution, except as provided in Article V and upon dissolution of the Partnership as provided herein; or

(c)   receive any property from the Partnership other than cash.

    4.04 <u>Assessments</u>.  No Partner shall be obligated to contribute capital to the Partnership except as provided in Section 4.01, and no Partner shall be obligated to lend money to the Partnership.

## ARTICLE V

## PARTNERSHIP PERCENTAGES; ALLOCATIONS; DISTRIBUTIONS

      5.01    Partnership Percentages. The Partnership Percentages of the Partners shall be as set forth opposite their respective names on Schedule A hereto.

      5.02    Allocations of Gains and Losses.

      (a)    Except as provided in paragraph (b) of this Section 5.02, Gains and Losses shall be allocated to the Partners in accordance with Partnership Percentages.

      (b)    (i) If the Partnership does not have Cumulative Loss, 50% of the Gain otherwise allocable to the Limited Partners under paragraph (a) shall be allocated to the General Partner.

      (ii) If the Partnership has Cumulative Gain, no percentage of the Loss otherwise allocable to the Limited Partners under paragraph (a) shall be allocated to the General Partner until such Cumulative Gain is eliminated.

      (c)    Notwithstanding the foregoing, Losses shall not be allocated to the Limited Partners if, or to the extent that, such allocation would create or increase a deficit balance in such Partner's Capital Account, taking into account all subsequent adjustments, allocations and distributions which are reasonably expected, as described in Treasury Regulations §1.704-1(b)(2)(ii)(d). Any Loss, the allocation of which is prohibited by this Section 5.02(c), shall be allocated among the Limited Partners in accordance to their relative interests in the Partnership (as determined under Treasury Regulations §1.704-1(b)(3)). If for any reason a deficit balance should result in the Capital Account of a Limited Partner, in each subsequent period in which the Partnership has Gains, such Gains shall be allocated first to such Limited Partner until such deficit balance is reduced to zero.

      (d)    It is the intention of the provisions of this Agreement with respect to maintenance of Capital Accounts and allocations of Gains and Losses and distributions to assure that, over the term of the Partnership, the Limited Partners bear any Cumulative Loss in accordance with their contributed capital and that the General Partner share in 50% of any Cumulative Gain which would otherwise be allocable to the Limited Partners based on Partnership Percentages. The provisions of this Agreement shall be construed in accordance with this intention.

      5.03    Distributions.

      (a)    Until such time as amounts equal to the Capital Contributions of the Partners have been repaid to the Partners, distributions to the Partners shall be made from time to time in the discretion of the General Partner pro rata among the Partners in accordance with Partnership Percentages. These distributions, including dividends or

percentages of profit shall be calculated and distributed quarterly. Thereafter, the General Partner may from time to time make distributions from the Partnership to or among the Partners pro rata in accordance with Capital Accounts, provided, that in no event shall distributions be made which would result in any Partner having, as the result thereof, a negative balance in his Capital Account.

(b)     Notwithstanding the foregoing, the General Partner shall, upon the request of any Partner, distribute to such Partner an amount sufficient to enable it to discharge any federal, state and local income tax liability arising as a result of such Partner's interest in the Partnership.

## ARTICLE VI

## ADDITIONAL PARTNERS; ASSIGNABILITY OF INTERESTS; WITHDRAWAL

6.01    Admission of Additional Partners. Additional partners may be admitted to the Partnership only upon the consent of the General Partner. No one shall be admitted as a Partner without subscribing and delivering to the Partnership a counterpart of this Agreement. With the express written consent of the General Partner, each new limited partner, upon execution of a copy of this Agreement, payment of any required capital contribution and in the case of transferees of a Partner's interest, satisfaction of the conditions in Section 6.02(d), shall be deemed to be a Partner of the Partnership and all references herein to a Partner or the Partners shall be deemed to refer additionally to such newly admitted Partner. Upon the admission of any additional Partner, the General Partner shall prepare, execute and distribute to the Partners an appropriate amendment to this Agreement (including Schedule A annexed hereto). Admission of additional Partners pursuant to this Article VI shall not cause a dissolution of the Partnership, and all Partners shall continue to be subject to the provisions of this Agreement in all respects.

6.02    Assignment of Partnership Interests.

(a)     No Limited Partner shall sell, assign (except by operation of law), or in any manner dispose of or create, or suffer the creation of, a security interest on or in its interest in the Partnership, in whole or in part, nor enter into any agreement as the result of which any
person, firm or corporation shall become interested with such Limited Partner in its interest in the Partnership, without the prior written consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner, and in no event shall an assignee or a successor, by operation of law or otherwise, to a Limited Partner be entitled to become a substitute Limited Partner unless admitted to the Partnership in accordance with Section 6.01. By executing this Agreement, each party hereto agrees to execute such other instruments, certificates and documents as, in the sole and absolute judgment of the General Partner, may be necessary, appropriate or desirable to sell interests in the Partnership legally without registering such sale under federal and local securities laws and otherwise complying with the laws of the jurisdictions to which

the Partnership and the Partners are subject.

(b) The death, incompetence, incapacity, insanity or bankruptcy of a Limited Partner shall not dissolve or terminate the Partnership. In such event, except as set forth in this subsection (b), his executor, administrator, guardian, conservator or legal representative shall succeed to his interest in the Partnership and shall be liable for all the liabilities and obligations of the Limited Partner under this Agreement, but shall have the right to become a substitute Limited Partner only in accordance with the provisions of this Section 6.02. Any Transfer by such executor, administrator, guardian, conservator or representative of all or a portion of such interest shall be governed by clauses (a) and (d) of this Section 6.02. For the purpose of settling the estate of the deceased Limited Partner, the executor or administrator shall have only such rights of a Limited Partner as are necessary for such purpose.

(c) The interest of the General Partner in the Partnership shall not be assignable, in whole or in part, without the prior written consent of Partners holding a majority of the Partnership Percentages, and no assignee of the General Partner's interest shall be admitted as a General Partner except in accordance with Section 6.01.

(d) Any successor or transferee of any Partner hereunder shall be bound by the provisions of this Agreement. Prior to recognizing any assignment of a Partner's Partnership Interest that has been Transferred in accordance with this Section 6.02, the General Partner shall require the transferring Partner to execute and acknowledge a written instrument of assignment in form and substance satisfactory to the General Partner, require the transferee to execute an amendment to the Certificate of Limited Partnership (if required by the Act) and require the transferee to assume all obligations of the transferring Partner. Any transferee who is not a Partner at the time of the assignment shall be entitled to the allocations and distributions attributable to the Partnership Interest assigned to it and to Transfer such interest in accordance with and subject to the terms of this Agreement (including, but not limited to, the restrictions on Transfer of this Section 6.02); however, such transferee shall not be entitled to the other rights of a Partner until he is admitted as and becomes a substitute Partner. Notwithstanding the above, the Partnership and the General Partner shall incur no liability for allocations and distributions made in good faith to the transferring Partner until the written instrument of Transfer has been received by the Partnership and recorded on its books and the effective date of the Transfer has passed.

6.03 Withdrawal. No Partner shall have the right to withdraw from the Partnership except upon the termination hereof in accordance with Article VII.

## ARTICLE VII

## DISSOLUTION AND LIQUIDATION

7.01 Dissolution.

(a) The Partnership shall be dissolved upon the earliest of:

(i) A date agreed upon by the General Partner and all limited partners with notice by the General Partner to the Limited Partners of intention to dissolve the Partnership;

(ii) Any limited partner may withdraw from the partnership at anytime with notice to the General Partner. Distribution of the limited partner's account shall be made by the General Partner no later than thirty days from notice to the General Partner, and

(iii) entry of a decree of judicial dissolution

(b) The bankruptcy, dissolution or termination of a Limited Partner shall not terminate or dissolve the Partnership, but the same shall continue under the terms of and pursuant to this Agreement, and the Partnership shall be entitled to act on the instructions of the persons duly authorized to act on behalf of such Limited Partner in dealing with its interest in the Partnership.

7.02    Liquidation.

(a) Upon an event of dissolution of the Partnership as provided in Section 7.01(a), the affairs of the Partnership shall be wound up in accordance with the provisions of this Section 7.02. Dissolution of the Partnership shall be effective on the day on which the event giving rise to dissolution occurs, but the Partnership shall not terminate until the Partnership's Certificate of Limited Partnership shall have been canceled and the assets of the Partnership shall have been distributed as provided herein.

(b) Upon the dissolution of the Partnership, a full account of the assets and liabilities of the Partnership shall be taken, and thereafter all of the assets and liabilities of the Partnership shall be liquidated in an orderly manner by the General Partner (except as set forth in subsections (c) and (d) below) acting, to the extent feasible, with the approval of Partners holding a majority of the Partnership Percentages, with a view to maximizing the net realizable value of the Partnership's assets. The proceeds of liquidation shall be applied as follows and in the following order of priority (using cash or cash equivalents first):

(i) to the payment of all debts, taxes, obligations and liabilities of the Partnership and the necessary expenses of liquidation, excluding any debts, obligations and liabilities to Partners, and to the creation of such reserves as the General Partner deems reasonably necessary to meet any contingent or unforeseen debts, obligations or liabilities of the Partnership to persons who are not Partners (if and when said contingency shall cease to exist, the moneys, if any, remaining

in said reserve shall be distributed as provided in this Article VII);

        (ii)    to the payment of any debts owing by the Partnership to the Partners; and

        (iii)    to the Partners pro rata in accordance with the positive balances in their respective Capital Accounts.

    (c)    The liquidation of the Partnership shall be conducted by the General Partner; <u>provided</u>, that if the General Partner is unwilling or unable to do so, the Partners shall have the right to appoint a liquidator who shall have the powers of the General Partner in respect of liquidation.

    (d)    In the event that, in the General Partner's or the liquidator's opinion, complete liquidation of the assets of the Partnership within a reasonable period of time proves impractical or otherwise not to be in the best interest of the Partners, assets of the Partnership may be distributed to the Partners in kind, but only after all cash and cash-equivalents received by the Partnership in a liquidating sale pursuant to this Section 7.02 have first been distributed and only after payments have been made and reserves established in accordance with Sections 7.02(b)(i) and (ii). Nothing in this subsection (d) shall be deemed to allow a Partner to demand any property from the Partnership other than cash.

    (e)    Within sixty (60) days after the dissolution of the Partnership, and at such time as the liquidation of the Partnership shall have been completed, the General Partner (or the liquidator appointed in accordance with subsection (c) above) shall cause to be prepared and forwarded to each Partner a final accounting of the Partnership, including the manner of distribution of the Partnership's assets.

## <u>ARTICLE VIII</u>

## <u>MISCELLANEOUS</u>

    8.01    <u>Reports to Partners</u>.

    (a)    Appropriate records and books of account shall be kept, based on its method of accounting, at the principal place of business of the Partnership or such other place as the General Partner shall determine, and each Partner shall have access, during normal business hours and upon reasonable prior written notice to the General Partner, to all records and books of account and the right to receive copies thereof; <u>provided</u>, however, that the Partnership shall not be required to disclose any confidential or proprietary information. Any information disclosed to a Partner which the General Partner identifies as confidential or proprietary shall be kept confidential by such Partner.

    (b)    The books and records of the Partnership shall be prepared in accordance with generally accepted accounting principles, except as otherwise provided

herein. Within ninety (90) days of the end of each Fiscal Year, the Partnership shall prepare and mail to each Partner a report setting forth as at the end of and for such Fiscal Year:

    (i)    a balance sheet of the Partnership;

    (ii)    an income statement of the Partnership which shall include a statement of each Partner's allocable share thereof;

    (iii)    a statement of cash flows and such other information as shall be reasonably necessary for the Partners to be advised of the conduct of the affairs of the Partnership; and

    (iv)    the amount credited or charged to each Partner's Capital Account as at the end of such year.

In addition, the Partnership shall provide to each Partner as soon as practicable following the close of the Fiscal Year: (A) the amount of such Partner's share in the Partnership's taxable income or loss for such year, in sufficient detail to enable him to prepare his federal, state and other tax returns; and (B) any other information the General Partner, after consultation with the Limited Partner requesting the same, shall deem necessary or appropriate. The Partnership shall also cause to be delivered to each Limited Partner, upon request, such other information as shall be needed by such Limited Partner in order to enable it to file any of its tax returns and will also from time to time furnish such other information as a Limited Partner may reasonably request for the purpose of enabling it to comply with any reporting or filing requirements imposed by any statute, rule, regulation or otherwise by any governmental agency or authority.

    8.02    <u>Tax Matters Partner</u>. The General Partner is designated to act as the Tax Matters Partner as that term is defined in Section 6231(a)(7) of the Code.

    8.03    <u>Successors</u>. This Agreement shall be binding on and inure to the benefit of the executors, administrators, estates, heirs, and legal successors and representatives of the Partners.

    8.04    <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of laws.

    8.05    <u>Notices</u>. For the purposes of this Agreement, all notices or other communications given or made hereunder shall be in writing and shall be given or made to each Partner at the address set forth below the name of such Partner on Schedule A to this Agreement, or at such other place or places as shall from time to time be specified in a notice similarly given by one of the means set forth in the following sentence. All such notices or other communications shall be deemed to have been duly given (a) on the date

of personal delivery, or (b) on the date of transmission by telegram, cable, telex or telephonic facsimile transmission, or (c) on the business day following delivery to an internationally recognized overnight courier service.

      8.06   No Oral Modification. No modification or waiver of this Agreement, or any part hereof, shall be valid or effective unless in writing, signed by the party or parties sought to be charged therewith; and no waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

      8.07   Entire Agreement; Amendments. This Agreement sets forth the entire understanding of the parties hereto and, except to reflect the admission of additional Partners, this Agreement shall not be amended except by an instrument in writing executed by all of the Partners who have not withdrawn as of the effective date of such amendments.

      8.08   Waiver of Partition. Each Partner hereby waives the right to partition of any assets of the Partnership.

      8.09   Headings. The headings of the several Articles and Sections of this Agreement are for convenience of reference only, and are not to be considered in construing the terms and provisions of this Agreement.

      8.10   Terms Generally. The defined terms herein shall apply equally to both the singular and plural forms of the term defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.

      8.11   Statutes and Codes. Reference to any statute or code shall include any modification or reenactment of the same.

      8.12   Construction and Interpretation.

      (a)   This is a confidential agreement between Alex Rabinovich the General Partner of Rabinovich & Associates LP and such Limited Partner. Individuals eligible for this partnership can only be eligible on a referral basis. Therefore, we have enclosed the information of four Limited Partners, with their consent, to be used as references. This disclosure is being made as a good faith effort for your comfort and security as well as assumes that such Limited Partner is accredited.

      (b)   Whenever possible, the provisions of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Agreement shall be unenforceable or invalid under said applicable law, such provision shall be ineffective only to the extent of such unenforceability or invalidity, and the remaining provisions of this Agreement shall continue to be binding and in full force and effect.

(c) The General Partner and the Limited Partners hereby agree that as between them, any rule of construction to the effect that ambiguities are to be construed against the drafting party shall be inapplicable to this Agreement.

8.13 <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument.

8.14 <u>Power of Attorney</u>. Each Limited Partner, by his or its execution of this Agreement, hereby irrevocably constitutes and appoints the General Partner as its true and lawful attorney to make, execute, sign, acknowledge and file and record in its name, place and stead (a) the Certificate of Limited Partnership, as well as amendments thereto and a statement of cancellation thereof, under the laws of the State of New York, or which may be required by, or appropriate under, the laws of any other state or other jurisdiction, (b) any certificates, instruments and documents (including fictitious name certificates), as well as amendments thereto and statements of cancellation thereof, as may be required by or appropriate under the laws of any state or other jurisdiction in which the Partnership is doing or intends to do business in connection with the use of the name of the Partnership by the Partnership, and (c) any other instrument which may be required to be filed by the Partnership under the laws of the United States, any state, or any political subdivision thereof, or by any governmental or quasi- government agency, or which the General Partner deems it advisable to file. The foregoing Power of Attorney shall be deemed irrevocable and to be a power coupled with an interest, and shall survive, and shall not be affected by, the subsequent dissolution or bankruptcy of such Limited Partner hereunder.

8.15 <u>Arbitration</u>. Any dispute, claim or controversy arising under or relating to this Agreement which is not satisfactorily resolved by the parties shall be resolved by arbitration (including the allocation of costs of any arbitration) in accordance with the Rules of the American Arbitration Association for Commercial Arbitration. The arbitration shall be conducted before a single arbitrator at the office of the American Arbitration Association in New York City. The award of the arbitrator shall be final and binding on all parties in interest. The arbitrator shall have no authority or power to modify, alter or amend any provision of this Agreement or render any award which has the effect of modifying, altering or amending this Agreement. Judgment upon the decision rendered by the arbitrator may be entered in any court having jurisdiction thereof.

8.16 <u>Representations and Warranties of Limited Partners</u>. By execution and delivery of this Agreement, each of the Limited Partners (a) represents and warrants that its interest in the Partnership is intended to be and is being acquired solely for its own account for investment and with no present intention of distributing or reselling all or any part thereof, (b) acknowledges that it is aware that interests in the Partnership have not been registered under the Securities Act, that interests in the Partnership cannot be sold or otherwise disposed of unless they are registered thereunder or unless an exemption from such registration is available and that the Partnership has no intention of

so registering interests in the Partnership thereunder, and that accordingly it is able and is prepared to bear the economic risk of making its capital contributions contemplated hereby with respect to its interest in the Partnership and to suffer a loss in connection with its investment in the Partnership, (c) acknowledges that it is aware that the Securities may not be registered under the Securities Act, in which case the Securities cannot be sold or otherwise disposed of unless they are registered thereunder or unless an exemption from such registration is available, and that accordingly it is able and is prepared to bear the economic risk of purchasing the Securities and to suffer a loss in connection with its investment in the Company, (d) represents (i) that it is authorized, and has all requisite power and authority, to become a Limited Partner and make its capital contributions, (ii) that this Agreement has been duly and validly executed by it and constitutes its valid and binding obligation enforceable in accordance with its terms, (iii) that its execution, delivery and performance of this Agreement complies with all laws applicable to it or to which it is subject and does not violate, breach or conflict with any agreement to which it is a party or by which it or its assets are bound, (iv) that it is an accredited investor within the meaning of Rule 501 promulgated under Regulation D of the Securities Act and (v) that it has obtained all consents or approvals, if any, of governmental bodies having jurisdiction over it necessary in connection with its execution, delivery and performance of this Agreement, and (e) acknowledges that it has read this Agreement and understands the provisions hereof, including, without limitation, with respect to the fees payable by the Partnership to the General Partner and the allocation of the Partnership's gains and losses.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Agreement has been duly executed by each of the Partners as of the day and year first above written.

**GENERAL PARTNER:**

Date: November 6, 2007

By: _____
      Alex Rabinovich

**LIMITED PARTNER:**

_____
Name:

_____
S.S #