**Cybertrader, Inc.**
**For the Account Of**
**RABINOVICH & ASSOCIATES LP**
**Account # 19571959**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest; Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.

    (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
    (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
    (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
    (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
    (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.



Member NASD/SIPC
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX 78759
(512) 320-5444

**YOUR BROKERAGE ACCOUNT STATEMENT**
**12/01/04 to 12/31/04**

RABINOVICH & ASSOCIATES LP

Page 2 of 2

ACCOUNT NUMBER: 19571959

## CASH MOVEMENT DETAIL

| DESCRIPTION | ACCT TYPE | DATE | ACTIVITY | QUANTITY | MARKET PRICE | AMOUNT CHARGED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| TO TYPE 2 | CSH | 12/03 | JOURNAL | | | | 7.73 |
| FROM TYPE 1 | MGN | 12/03 | JOURNAL | | | 7.73 | |
| CLOSING BALANCE | | | | | | | 386.16 |

## ALLIANCE MONEY FUND DETAILS

| PROCESSED DATE | ACTIVITY | AMOUNT CHARGED | AMOUNT CREDITED | BALANCE |
|---|---|---|---|---|
| OPENING BALANCE FOR ALLIANCE CAPITAL RESERVES | | | | 141.27 |
| 12/03 | REDEEM: CAPITAL RESERVES | 141.27 | | |
| 12/31 | 1.019% 11/16-12/31    141 | | .07 | |
| CLOSING BALANCE FOR ALLIANCE CAPITAL RESERVES | | | | .07 |

SUMMARY:

| | | | |
|---|---|---|---|
| TOTAL DOLLARS PURCHASED : | 0.00 | TOTAL SHARES PURCHASED : | 0.00 |
| TOTAL DOLLARS SOLD : | 0.00 | TOTAL SHARES SOLD : | 0.00 |

DPP AND REIT SECURITIES ARE GENERALLY ILLIQUID AND THE ESTIMATED VALUE OF THESE SECURITIES MAY NOT BE REALIZED UPON LIQUIDATION OF THE SECURITY.
THE VALUE OF THE SECURITY WILL DIFFER FROM THE PURCHASE PRICE. IN THE EVENT VALUATIONS ARE PROVIDED, THEY WILL BE BASED UPON ESTIMATED VALUES
OBTAINED FROM THE ISSUER'S ANNUAL REPORT. HOWEVER, IN SOME CASES ACCURATE VALUATION INFORMATION IS NOT AVAILABLE AND WILL NOT BE PROVIDED.

NASD HAS FILED WITH THE SEC A PROPOSED RULE CHANGE TO AMEND NASD RULE 2340 TO REQUIRE THAT ACCOUNT STATEMENTS INCLUDE A STATEMENT THAT ADVISES
EACH CUSTOMER TO PROMPTLY REPORT ANY INACCURACY OR DISCREPANCY IN THAT PERSON'S ACCOUNT TO HIS OR HER BROKERAGE FIRM AND CLEARING FIRM (WHERE
THESE ARE DIFFERENT FIRMS) AND TO RE-CONFIRM ANY ORAL COMMUNICATIONS IN WRITING.
HTTP://WWW.NASD.COM/STELLENT/GROUPS/RULES_REGS/DOCUMENTS/RULE_FILING/NASDW_011958.PDF

WHEN YOU DEPOSIT FUNDS BY CHECK, YOU ACKNOWLEDGE AND GIVE APPROVAL THAT WE MAY, AT OUR DISCRETION AND WITHOUT FURTHER PRIOR NOTICE, UTILIZE
AN ELECTRONIC CHECK PROCESS OR AUTOMATED CLEARING HOUSE (ACH) FACILITY TO DRAFT FUNDS IN THE AMOUNT OF ANY OF YOUR CHECKS PAYABLE TO US, OUR
AGENTS OR ASSIGNS. THIS MEANS THAT YOUR CHECKING ACCOUNT MAY BE DEBITED ON THE SAME DAY THAT WE RECEIVE YOUR CHECK AND THAT A COPY OF YOUR
CHECK WILL NOT BE RETURNED WITH YOUR CHECKING ACCOUNT STATEMENT.

PURSUANT TO SEC RULE 11AC1-6, PENSON FINANCIAL SERVICES.INC. IS REQUIRED TO MAKE PUBLICLY AVAILABLE A QUARTERLY REPORT WITH REGARD TO ITS
ROUTING OF NON-DIRECTED ORDERS. FOR THE PURPOSE OF THIS RULE, PENSON HAS ENTERED INTO AN AGREEMENT WITH TRANSACTION AUDIT GROUP ("TAG") TO
DISCLOSE THE REQUIRED INFORMATION PERTAINING TO THIS RULE AND ANY NON-DIRECTED ORDERS ENTERED ON THE PHASE3/SUNGARD SYSTEM. THIS INFORMATION
CAN BE VIEWED AT: HTTP://WWW.TAGAUDIT.COM/RULE6.ASP?USER=PFSI

THE NASD REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE
NASD'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR NASD, CONTACT THE NASD PROGRAM
HOTLINE AT (800) 289-9999 OR ACCESS THE NASD WEB SITE AT WWW.NASDBROKERCHECK.COM

**Cybertrader, Inc.**
Member NASD/SIPC, 12401 Research Blvd, Bldg 2, Suite 350
Austin, TX 78759

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY 11223-4808

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest; Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
    (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
    (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
    (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
    (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
    (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.



**CyberTrader** ®
A Charles Schwab Company

Member NASD/SIPC
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX 78759
(512) 320-5444

YOUR BROKERAGE
ACCOUNT STATEMENT
01/01/05 to 01/31/05

Page 1 of 2

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY 11223-4808

FINANCIAL CONSULTANT:

CYBERTRADER, INC. HOUSE REP
512-320-5444

OFFICE SERVING YOU:

Member NASD/SIPC
12401 Research Blvd, Bldg 2, Suite 350
Austin, TX 78759

ACCOUNT NUMBER: 19571959

BRANCH & REP:   CY00

TELEPHONE: (512) 320-5444

## ACCOUNT VALUE

|  | THIS PERIOD | LAST PERIOD |
|---|---|---|
| MONEY FUNDS |  | .07 |
| LONG MARKET VALUE |  | .07 |
| MARGIN ACCOUNT BALANCE | 237.23 | 386.16 |
| TOTAL CASH | 237.23 | 386.16 |
| TOTAL ACCOUNT VALUE | 237.23 | 386.23 |

## INCOME SUMMARY

|  | THIS MONTH | YEAR TO DATE |
|---|---|---|

## PORTFOLIO POSITIONS

| CASH BALANCES | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | % OF PORT. | EST CUR YIELD | ESTIMATED ANN INCOME |
|---|---|---|---|---|---|---|---|
| MARGIN ACCOUNT BALANCE |  |  |  | 237.23 | 100.00 |  |  |
| TOTAL CASH BALANCES |  |  |  | 237.23 | 100.00 |  |  |
| TOTAL VALUE OF PRICED SECURITIES |  |  |  | 237.23 | 100.00 |  |  |

ACCOUNT VALUE AND TOTALS ARE BASED ONLY ON PRICED SECURITIES. WE MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT. FOR MUNICIPAL SECURITIES AND SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE (NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE. THEY DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES. FOR CURRENT PRICES, PLEASE CONTACT YOUR FINANCIAL CONSULTANT.

## CASH MOVEMENT DETAIL

| DESCRIPTION | ACCT TYPE | DATE | ACTIVITY | QUANTITY | MARKET PRICE | AMOUNT CHARGED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| OPENING BALANCE |  |  |  |  |  |  | 386.16 |
| PREMACCTNP DEC04 | CSH | 1/05 | JOURNAL |  |  | 149.00 |  |
| REDEEM:  CAPITAL RESERVES | CSH | 1/06 | DEPOSIT |  |  |  | .07 |
| TO TYPE 2 | CSH | 1/06 | JOURNAL |  |  |  | 148.93 |
| FROM TYPE 1 | MGN | 1/06 | JOURNAL |  |  | 148.93 |  |
| CLOSING BALANCE |  |  |  |  |  |  | 237.23 |

OVER

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.
MEMBER NASD AND SIPC

**Cybertrader, Inc.**
**For the Account Of**
**RABINOVICH & ASSOCIATES LP**
**Account # 19571959**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. **Definitions.** "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. **Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. **Security Interest; Liquidation.** All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. **Lending Agreement; Margin or Short Accounts.** With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. **Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
   (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
   (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
   (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
   (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
   (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. **ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. **Other Agreements; Option Transactions, Charges.** The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. **Option Account.** Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. **Miscellaneous.** Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance includable on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.


**CyberTrader** ®
A Charles Schwab Company

Member NASD/SIPC
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX 78759
(512) 320-5444

**YOUR BROKERAGE ACCOUNT STATEMENT**
**01/01/05 to 01/31/05**

Page 2 of 2

RABINOVICH & ASSOCIATES LP

ACCOUNT NUMBER: 19571959

## ALLIANCE MONEY FUND DETAILS

| PROCESSED DATE | ACTIVITY | AMOUNT CHARGED | AMOUNT CREDITED | BALANCE |
|---|---|---|---|---|
| OPENING BALANCE FOR ALLIANCE CAPITAL RESERVES | | | | .07 |
| 1/06 | REDEEM: CAPITAL RESERVES | .07 | | |
| CLOSING BALANCE FOR ALLIANCE CAPITAL RESERVES | | | | .00 |

SUMMARY:

| TOTAL DOLLARS PURCHASED : | 0.00 | TOTAL SHARES PURCHASED : | 0.00 |
|---|---|---|---|
| TOTAL DOLLARS SOLD : | 0.00 | TOTAL SHARES SOLD : | 0.00 |

DPP AND REIT SECURITIES ARE GENERALLY ILLIQUID AND THE ESTIMATED VALUE OF THESE SECURITIES MAY NOT BE REALIZED UPON LIQUIDATION OF THE SECURITY.
THE VALUE OF THE SECURITY WILL DIFFER FROM THE PURCHASE PRICE. IN THE EVENT VALUATIONS ARE PROVIDED, THEY WILL BE BASED UPON ESTIMATED VALUES
OBTAINED FROM THE ISSUER'S ANNUAL REPORT. HOWEVER, IN SOME CASES ACCURATE VALUATION INFORMATION IS NOT AVAILABLE AND WILL NOT BE PROVIDED.

NASD HAS FILED WITH THE SEC A PROPOSED RULE CHANGE TO AMEND NASD RULE 2340 TO REQUIRE THAT ACCOUNT STATEMENTS INCLUDE A STATEMENT THAT ADVISES
EACH CUSTOMER TO PROMPTLY REPORT ANY INACCURACY OR DISCREPANCY IN THAT PERSON'S ACCOUNT TO HIS OR HER BROKERAGE FIRM AND CLEARING FIRM (WHERE
THESE ARE DIFFERENT FIRMS) AND TO RE-CONFIRM ANY ORAL COMMUNICATIONS IN WRITING.
HTTP://WWW.NASD.COM/STELLENT/GROUPS/RULES_REGS/DOCUMENTS/RULE_FILING/NASDW_011958.PDF

WHEN YOU DEPOSIT FUNDS BY CHECK, YOU ACKNOWLEDGE AND GIVE APPROVAL THAT WE MAY, AT OUR DISCRETION AND WITHOUT FURTHER PRIOR NOTICE, UTILIZE
AN ELECTRONIC CHECK PROCESS OR AUTOMATED CLEARING HOUSE (ACH) FACILITY TO DRAFT FUNDS IN THE AMOUNT OF ANY OF YOUR CHECKS PAYABLE TO US, OUR
AGENTS OR ASSIGNS. THIS MEANS THAT YOUR CHECKING ACCOUNT MAY BE DEBITED ON THE SAME DAY THAT WE RECEIVE YOUR CHECK AND THAT A COPY OF YOUR
CHECK WILL NOT BE RETURNED WITH YOUR CHECKING ACCOUNT STATEMENT.

PURSUANT TO SEC RULE 11AC1-6, PENSON FINANCIAL SERVICES.INC. IS REQUIRED TO MAKE PUBLICLY AVAILABLE A QUARTERLY REPORT WITH REGARD TO ITS
ROUTING OF NON-DIRECTED ORDERS. FOR THE PURPOSE OF THIS RULE, PENSON HAS ENTERED INTO AN AGREEMENT WITH TRANSACTION AUDIT GROUP ("TAG") TO
DISCLOSE THE REQUIRED INFORMATION PERTAINING TO THIS RULE AND ANY NON-DIRECTED ORDERS ENTERED ON THE PHASE3/SUNGARD SYSTEM. THIS INFORMATION
CAN BE VIEWED AT: HTTP://WWW.TAGAUDIT.COM/RULE6.ASP?USER=PFSI

THE NASD REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE
NASD'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR NASD, CONTACT THE NASD PROGRAM
HOTLINE AT (800) 289-9999 OR ACCESS THE NASD WEB SITE AT WWW.NASDBROKERCHECK.COM

Cybertrader, Inc.
Member NASD/SIPC, 12401 Research Blvd, Bldg 2, Suite 350
Austin, TX 78759

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY 11223-4808

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest: Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
  (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
  (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
  (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
  (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
  (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING ON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.



**Member NASD/SIPC**
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX 78759
(512) 320-5444

**YOUR BROKERAGE
ACCOUNT STATEMENT
02/01/05 to 02/28/05**

Page 1 of 2

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY 11223-4808

ACCOUNT NUMBER: 19571959

BRANCH & REP: CY00

FINANCIAL CONSULTANT:

CYBERTRADER, INC. HOUSE REP
512-320-5444

OFFICE SERVING YOU:

Member NASD/SIPC
12401 Research Blvd, Bldg 2, Suite 350
Austin, TX 78759

TELEPHONE: (512) 320-5444

## ACCOUNT VALUE

|  | THIS PERIOD | LAST PERIOD |
|---|---|---|
| MARGIN ACCOUNT BALANCE | 88.23 | 237.23 |
| TOTAL CASH | 88.23 | 237.23 |
| **TOTAL ACCOUNT VALUE** | 88.23 | 237.23 |

## INCOME SUMMARY

|  | THIS MONTH | YEAR TO DATE |
|---|---|---|
|  |  |  |

## PORTFOLIO POSITIONS

| CASH BALANCES | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | % OF PORT. | EST CUR YIELD | ESTIMATED ANN INCOME |
|---|---|---|---|---|---|---|---|
| MARGIN ACCOUNT BALANCE |  |  |  | 88.23 | 100.00 |  |  |
| **TOTAL CASH BALANCES** |  |  |  | 88.23 | 100.00 |  |  |
| **TOTAL VALUE OF PRICED SECURITIES** |  |  |  | 88.23 | 100.00 |  |  |

ACCOUNT VALUE AND TOTALS ARE BASED ONLY ON PRICED SECURITIES. WE MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT. FOR MUNICIPAL SECURITIES AND SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE (NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE. THEY DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES. FOR CURRENT PRICES, PLEASE CONTACT YOUR FINANCIAL CONSULTANT.

## CASH MOVEMENT DETAIL

| DESCRIPTION | ACCT TYPE | DATE | ACTIVITY | QUANTITY | MARKET PRICE | AMOUNT CHARGED | AMOUNT CREDITED |
|---|---|---|---|---|---|---|---|
| OPENING BALANCE |  |  |  |  |  |  | 237.23 |
| PREMACCTNP JAN05 | CSH | 2/02 | JOURNAL |  |  | 149.00 |  |
| TO TYPE 2 | CSH | 2/03 | JOURNAL |  |  |  | 149.00 |
| FROM TYPE 1 | MGN | 2/03 | JOURNAL |  |  | 149.00 |  |
| CLOSING BALANCE |  |  |  |  |  |  | 88.23 |

OVER

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.
MEMBER NASD AND SIPC

**Cybertrader, Inc.
For the Account Of
RABINOVICH & ASSOCIATES LP
Account # 19571959**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest: Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
  (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
  (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
  (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
  (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
  (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

Case 1:07-cv-10547-GEL   Document 11-13   Filed 12/19/2007   Page 10 of 13



**Member NASD/SIPC**
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX 78759
(512) 320-5444

**YOUR BROKERAGE ACCOUNT STATEMENT**
**02/01/05 to 02/28/05**

Page 2 of 2

RABINOVICH & ASSOCIATES LP

ACCOUNT NUMBER: 19571959

SUMMARY:

| | | | |
|---|---|---|---|
| TOTAL DOLLARS PURCHASED : | 0.00 | TOTAL SHARES PURCHASED : | 0.00 |
| TOTAL DOLLARS SOLD : | 0.00 | TOTAL SHARES SOLD : | 0.00 |

SIPC DOES NOT COVER COMMODITY CONTRACTS AND OPTIONS ON FUTURES.

DPP AND REIT SECURITIES ARE GENERALLY ILLIQUID AND THE ESTIMATED VALUE OF THESE SECURITIES MAY NOT BE REALIZED UPON LIQUIDATION OF THE SECURITY. THE VALUE OF THE SECURITY WILL DIFFER FROM THE PURCHASE PRICE. IN THE EVENT VALUATIONS ARE PROVIDED, THEY WILL BE BASED UPON ESTIMATED VALUES OBTAINED FROM THE ISSUER'S ANNUAL REPORT. HOWEVER, IN SOME CASES ACCURATE VALUATION INFORMATION IS NOT AVAILABLE AND WILL NOT BE PROVIDED.

NASD HAS FILED WITH THE SEC A PROPOSED RULE CHANGE TO AMEND NASD RULE 2340 TO REQUIRE THAT ACCOUNT STATEMENTS INCLUDE A STATEMENT THAT ADVISES EACH CUSTOMER TO PROMPTLY REPORT ANY INACCURACY OR DISCREPANCY IN THAT PERSON'S ACCOUNT TO HIS OR HER BROKERAGE FIRM AND CLEARING FIRM (WHERE THESE ARE DIFFERENT FIRMS) AND TO RE-CONFIRM ANY ORAL COMMUNICATIONS IN WRITING.
HTTP://WWW.NASD.COM/STELLENT/GROUPS/RULES_REGS/DOCUMENTS/RULE_FILING/NASDW_011958.PDF

WHEN YOU DEPOSIT FUNDS BY CHECK, YOU ACKNOWLEDGE AND GIVE APPROVAL THAT WE MAY, AT OUR DISCRETION AND WITHOUT FURTHER PRIOR NOTICE, UTILIZE AN ELECTRONIC CHECK PROCESS OR AUTOMATED CLEARING HOUSE (ACH) FACILITY TO DRAFT FUNDS IN THE AMOUNT OF ANY OF YOUR CHECKS PAYABLE TO US, OUR AGENTS OR ASSIGNS. THIS MEANS THAT YOUR CHECKING ACCOUNT MAY BE DEBITED ON THE SAME DAY THAT WE RECEIVE YOUR CHECK AND THAT A COPY OF YOUR CHECK WILL NOT BE RETURNED WITH YOUR CHECKING ACCOUNT STATEMENT.

PURSUANT TO SEC RULE 11AC1-6, PENSON FINANCIAL SERVICES.INC. IS REQUIRED TO MAKE PUBLICLY AVAILABLE A QUARTERLY REPORT WITH REGARD TO ITS ROUTING OF NON-DIRECTED ORDERS. FOR THE PURPOSE OF THIS RULE, PENSON HAS ENTERED INTO AN AGREEMENT WITH TRANSACTION AUDIT GROUP ("TAG") TO DISCLOSE THE REQUIRED INFORMATION PERTAINING TO THIS RULE AND ANY NON-DIRECTED ORDERS ENTERED ON THE PHASE3/SUNGARD SYSTEM. THIS INFORMATION CAN BE VIEWED AT: HTTP://WWW.TAGAUDIT.COM/RULE6.ASP?USER=PFSI

THE NASD REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE NASD'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR NASD, CONTACT THE NASD PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE NASD WEB SITE AT WWW.NASDBROKERCHECK.COM

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.
MEMBER NASD AND SIPC

Cybertrader, Inc.
Member NASD/SIPC, 12401 Research Blvd, Bldg 2, Suite 350
Austin, TX  78759

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY  11223-4808

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest: Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
  (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
  (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
  (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
  (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
  (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options; the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.



**CyberTrader®**
A Charles Schwab Company

Member NASD/SIPC
12401 Research Blvd
Bldg 2, Suite 350
Austin, TX  78759
(512) 320-5444

YOUR BROKERAGE
ACCOUNT STATEMENT
03/01/05 to 03/31/05

Page 1 of 2

RABINOVICH & ASSOCIATES LP
2250 E 4TH ST
APT 2C
BROOKLYN, NY  11223-4808

FINANCIAL CONSULTANT:

CYBERTRADER, INC. HOUSE REP
512-320-5444

OFFICE SERVING YOU:

Member NASD/SIPC
12401 Research Blvd, Bldg 2, Suite 350
Austin, TX  78759

TELEPHONE: (512) 320-5444

ACCOUNT NUMBER: 19571959

BRANCH & REP:    CY00

## ACCOUNT VALUE

|  | THIS PERIOD | LAST PERIOD |
|---|---:|---:|
| MONEY FUNDS | 42,087.23 | |
|   LONG MARKET VALUE | 42,087.23 | |
| CASH ACCOUNT BALANCE | .95 | |
| MARGIN ACCOUNT BALANCE | 1.00 | 88.23 |
|   TOTAL CASH | 1.95 | 88.23 |
| **TOTAL ACCOUNT VALUE** | **42,089.18** | **88.23** |

## INCOME SUMMARY

|  | THIS MONTH | YEAR TO DATE |
|---|---:|---:|
| CREDIT INTEREST | 0.95 | 0.95 |
| **TOTAL INCOME** | **0.95** | **0.95** |

## PORTFOLIO POSITIONS

| MONEY FUNDS | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | % OF PORT. | EST CUR YIELD | ESTIMATED ANN INCOME |
|---|---|---:|---:|---:|---:|---|---|
| ALLIANCE CAPITAL RESERVES | MMF | 42,087.230 | 1.00 | 42,087.23 | 100.00 | | |
| TOTAL VALUE OF MONEY FUNDS | | | | 42,087.23 | 100.00 | | |
| TOTAL LONG MARKET VALUE | | | | 42,087.23 | 100.00 | | |

CASH BALANCES

| CASH ACCOUNT BALANCE | | | | .95 | | | |
|---|---|---|---|---:|---|---|---|
| MARGIN ACCOUNT BALANCE | | | | 1.00 | | | |
| TOTAL CASH BALANCES | | | | 1.95 | | | |
| TOTAL VALUE OF PRICED SECURITIES | | | | 42,089.18 | 100.00 | | |

ACCOUNT VALUE AND TOTALS ARE BASED ONLY ON PRICED SECURITIES.  WE MAY BE UNABLE TO PRICE ALL SECURITIES IN YOUR ACCOUNT.  FOR MUNICIPAL SECURITIES AND SOME OTHER FIXED INCOME SECURITIES, PRICES ARE APPROXIMATE (NOT ACTUAL MARKET BIDS) AND ARE PROVIDED ONLY AS A GENERAL GUIDE.  THEY DO NOT NECESSARILY REFLECT ACTUAL MARKET PRICES.  FOR CURRENT PRICES, PLEASE CONTACT YOUR FINANCIAL CONSULTANT.

## CASH MOVEMENT DETAIL

| DESCRIPTION | ACCT TYPE | DATE | ACTIVITY | QUANTITY | MARKET PRICE | AMOUNT CHARGED | AMOUNT CREDITED |
|---|---|---|---|---|---|---:|---:|
| OPENING BALANCE | | | | | | | 88.23 |
| W/T FR CUST | MGN | 3/30 | JOURNAL | | | | 42,000.00 |

OVER

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.
MEMBER NASD AND SIPC

**Cybertrader, Inc.**
**For the Account Of**
**RABINOVICH & ASSOCIATES LP**
**Account # 19571959**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest; Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You, are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives, employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES.
  (A) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
  (B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
  (C) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
  (D) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE THE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
  (E) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE CUSTOMER AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR THE INTRODUCING BROKER'S AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE CUSTOMER'S ACCOUNT, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGEMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forebearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Your financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.