**Counsel of Record:**
**Mark K. Schonfeld (MS-2798)**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**3 World Financial Center, Suite 400**
**New York, NY 10281-1022**
**(212) 336-0145 (Paley)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **against-** : | **07 Civ. 10547 (GEL)** |
| : | |
| **RABINOVICH & ASSOCIATES, LP,** : | |
| **ALEX RABINOVICH AND** : | |
| **JOSEPH LOVAGLIO,** : | |
| : | |
| **Defendants.** : | |
| : | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANTS RABINOVICH AND LOVAGLIO FOR A PROTECTIVE ORDER PURSUANT TO FED.R.CIV.P. 26(C) AND FOR A STAY OF PROCEEDINGS

The Securities and Exchange Commission respectfully submits this memorandum of law in opposition to the motion of defendants Rabinovich and Lovaglio (the "Defendants") for an unspecified protective order and a stay of proceedings "until all threat of criminal liability in connection with such participation has ended"[1] (the "Motion").

The Motion should be denied because, among other reasons, the Defendants have not stated any special circumstances warranting the extraordinary remedy of a stay, much less a stay lasting until such time as the Defendants are no longer in any danger of being charged criminally for their fraudulent conduct. The Defendants' request for a protective order should also be

---

[1]     Motion at p. 10.

denied because the Defendants have neither identified the discovery as to which they seek the protective order, nor have they stated good cause for any protective order.

## I.    PROCEDURAL BACKGROUND

The Commission brought this action on November 26, 2007 by emergency application for an order to show cause, a temporary restraining order, and an order freezing assets and granting other relief (the "Order to Show Cause"). The Complaint alleges, among other things, that defendants, operating out of a storefront boiler room in Brooklyn, sold limited partnership interests in Rabinovich & Associates, LP (sometimes referred to hereafter as the "Fund") and other securities to investors, including senior citizens and retirees; that the defendants obtained these investments by cold-calling and making fraudulent statements to potential investors; and that the defendants substantially depleted the investors' funds while falsely reporting to the investors that the Fund was highly profitable.

Following a hearing on November 26, 2007 -- at which defendants Rabinovich and Rabinovich & Associates were represented -- the Court granted the Commission's application. On November 27, 2007, the Commission served all of the defendants with the Order to Show Cause, Summons, and Complaint. On December 12, 2007, the Defendants consented to a preliminary injunction and other relief, and the Court entered an Order of Preliminary Injunction, on January 14, 2008, as to Rabinovich and Lovaglio. Defendant Rabinovich & Associates has defaulted.

The Department of Justice is also investigating the Defendants' activities. To date, no criminal charges have been brought.

- 2 -

**The Status of Discovery**

On November 28, 2007, the Commission served all of the defendants with documents requests. Pursuant to the Order to Show Cause, the defendants were required to produce responsive documents by December 3, 2008. The Order to Show Cause also required that Defendants provide the Commission with detailed verified accountings by that date. To date, the defendants have not produced a single document in response to the Commission's document requests and have not provided the verified accounting, even after the Order of Preliminary Injunction reiterated the Defendants' obligation to provide such an accounting.[2]

On December 4, 2007, the Commission took the depositions of Rabinovich and Lovaglio. Both defendants invoked their rights under the Fifth Amendment in response to virtually all questions concerning Rabinovich & Associates, their sources of income and topics other than name and address.[3] The Defendants also invoked the Fifth Amendment in response to the Commission's Request for Admissions, served on December 7, 2008. The Commission has also served interrogatories on defendant Lovaglio and a letter request to defendant Rabinovich, concerning the source of funds used to pay their attorneys in connection with this case. The

---

[2]      In a letter to the Court, dated January 29, 2008, Vincent Romano, the attorney for defendant Lovaglio, stated incorrectly that the Defendants have provided a joint verified accounting. The document to which Mr. Romano seems to be referring is a one-page, unsigned chart, produced by Rabinovich, with information about thirty-seven of the approximately 150 current Rabinovich & Associates investors. (Rabinovich falsely represented that the chart was a complete list of current investors and the amount owed to each.) That chart (i) is not verified; (ii) is not an accounting, containing none of the information required by Section XII of the Order to Show Cause and Section VIII of the Order of Preliminary Injunction; (iii) is patently false even as to the limited information it purportedly provided; and (iv) was not a "joint" submission.

[3]      The depositions of two Rabinovich & Associates employees are scheduled for February 28, 2008.

Defendants have refused to provide the requested information absent a specific court order compelling them to do so.[4]

Even as the Defendants have refused to produce documents or information, defendant Lovaglio served the Commission with an extensive document request. The Commission responded in a timely manner, and has produced more than 2,500 pages.

At the court conference on January 25, 2008 -- after obtaining discovery from the Commission and, at the same time, refusing for nearly two months to provide the Commission with verified accountings or documents, in clear violation of the Order to Show Cause and Order of Preliminary Injunction -- defendants Rabinovich and Lovaglio informed the Commission and the Court that they now wish to stay discovery, in light of a criminal investigation of which they admittedly have been aware since "[s]hortly after the filing [of the Complaint]."[5] The Court denied the Defendants' oral application, noting that they had not articulated any special circumstances warranting a stay. The Court, however, permitted the defendants to make a written submission in order, among other things, to set forth what, if any, special circumstances, exist.

On February 8, 2008, the Defendants filed the instant Motion, which contains little more than a series of recitations of general legal principles. The Motion does not remotely allude to any special circumstances meriting a stay or good cause for a protective order.

---

[4] Lovaglio's attorney has also refused to comply with a subpoena issued to him, seeking related documents. The Commission anticipates making a motion to compel as to all of the outstanding discovery issues, in the very near future, as soon as the parties have complied with the requirements of Fed.R.Civ.P.37 and this Court's rules, including the obligation to meet and confer.

[5] Motion at p. 2.

## II.    **ARGUMENT**

### A.    **The Applicable Legal Standard**

The stay of civil proceedings, based solely on a related criminal investigation, is strongly

disfavored in this Circuit.  As an initial matter, the Constitution does not require the stay of civil

proceedings whenever a defendant is the subject of a related criminal investigation.  See, e.g.,

Sterling National Bank v. A-1 Hotels International, Inc., 175 F.Supp.2d 573, 576 (S.D.N.Y.

2001) (GEL) (citing Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995);

Nosik v. Singe, 40 F.3d 592, 596 (2d Cir. 1993)).  Moreover, "[t]here is no general federal

constitutional, statutory, or common law rule barring the simultaneous prosecution of separate

civil and criminal actions by different federal agencies against the same defendant involving the

same transactions."  Simultaneous prosecution of civil and criminal actions "is generally

unobjectionable because the federal government is entitled to vindicate the different interests

promoted by different regulatory provisions even though it attempts to vindicate several interests

simultaneously in different forums."  SEC v. First Financial Group of Texas, Inc., 659 F.2d 660,

666-667 (5th Cir. 1981).  See also Sterling National Bank, 175 F.Supp.2d at 578 ("it is

universally agreed that the mere pendency of a criminal investigation standing alone does not

require a stay") (citing cases).

To the contrary, courts, including the Court of Appeals for the D.C. Circuit, have

recognized the value of permitting the federal agencies, including the SEC and the Justice

Department, to simultaneously pursue civil and criminal actions:

> Effective enforcement of the securities laws requires that the SEC
> and Justice be able to investigate possible violations
> simultaneously. . . . . If the SEC suspects that a company has
> violated the securities laws, it must be able to respond quickly: it
> must be able to obtain relevant information concerning the alleged
> violation and to seek prompt judicial redress if necessary.

> Similarly, Justice must act quickly if it suspects that the laws have been broken. Grand jury investigations take time, as do criminal prosecutions. If Justice moves too slowly the statute of limitations may run, witnesses may die or move away, memories may fade, or enforcement resources may be diverted. See United States v. Fields, 592 F.2d 638, 646 (2d Cir. 1978), cert. denied, 442 U.S. 917, 99 S. Ct. 2838, 61 L. Ed. 2d 284 (1979). The SEC cannot always wait for Justice to complete the criminal proceedings if it is to obtain the necessary prompt civil remedy, neither can Justice always await the conclusion of the civil proceeding without endangering its criminal case. United States v. Kordel, [397 U.S. 1, 11-13 (1970).

SEC v. Dresser Industries, Inc., 628 F.2d 1368,1377 (D.C. Cir. 1980).[6]

Accordingly, the Dresser Industries court concluded that it should not block parallel proceedings by the SEC and Department of Justice in the absence of "special circumstances" in which the nature of the proceedings demonstrably prejudices substantial rights of the investigated party or of the government." Dresser Industries, 628 F.2d at 1374 (citing Kordel, 397 U.S. at 11-13). "Special circumstances" may occur if the government brought a civil action "solely to obtain evidence for its criminal prosecution," if the defendant is without counsel, or if the defendant reasonably fears "prejudice from adverse pre-trial publicity or other unfair injury." Kordel, 397 U.S. at 11-12.

In exercising its discretion to stay a civil proceeding, the court must "consider the particular circumstances and competing interests involved in the case," Sterling National Bank, 175 F.Supp.2d at 578 (citation omitted), and inquire "into a variety of factors, including [1] the extent to which the defendant's fifth amendment rights are implicated," as well as such factors as:

---

[6]  See also Kordel, 397 U.S. at 11 ("It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial").

[2] the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; [3] the burden which any particular aspect of the proceedings may impose on defendants; [4] the convenience of the court in the management of its cases, and the efficient use of judicial resources; [5] the interests of persons not parties to the civil litigation; and [6] the interest of the public in the pending civil and criminal litigation.[7]

Sterling National Bank, 175 F.Supp.2d at 576 (internal quotation marks and citations omitted).

A party seeking a stay bears an especially heavy burden when he has not yet been indicted. "District courts in this Circuit 'generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted.'" Sterling National Bank, 175 F.Supp.2d at 576-77 (quoting Citibank, N.A. v. Hakim, No. 92 Civ. 6233 (MBM), 1993 U.S. Dist. LEXIS 16299, *2-3 (S.D.N.Y. Nov. 18, 1993))[8]

---

[7]  Other courts have similarly described relevant factors as including:  (1) the extent to which the issues in the civil and criminal proceedings overlap; (2) the status of the criminal proceedings; (3) the prejudice to the plaintiff caused by a delay; (4) the burden on the defendants; (5) the interest of the court; and (6) the public interest. See, e.g., JHW Greentree Capital, L.P. v. Whittier Trust Co., 05 Civ. 2985 (HB), 2005 U.S. Dist. LEXIS 14687, *2 (S.D.N.Y. Nov. 10, 2005); In re Adelphia Communications Securities Litigation, 02 Civ. 1781 (HJH), 2003 U.S. Dist. LEXIS 9736, *7 (E.D. Pa. May 13, 2003).

[8]  In Sterling National Bank, 175 F.Supp.2d at 576 n3, this Court also noted the following cases in this Circuit in support of this proposition: In re Par Pharmaceutical, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment, . . . but will deny a stay of the civil proceeding where no indictment has issued") (internal citations omitted); United States v. Private Sanitation Indus. Ass'n, 811 F. Supp. 802, 805 (E.D.N.Y. 1992) ("since [defendant] has yet to be indicted by any grand jury, his motion to stay may be denied on that ground alone"); United States v. District Council of New York City, 782 F. Supp. 920, 925 (S.D.N.Y. 1992) ("courts in this district will deny a stay of the civil proceeding where no indictment has issued") (internal quotation marks and citations omitted); Kudo v. Simels, 1992 U.S. Dist. LEXIS 4590, No. 91 Civ. 3167 (JFK) (S.D.N.Y. April 8, 1992) ("In this circuit, district courts generally take the extraordinary step of issuing a stay only after a criminal investigation has resulted in an indictment") (internal citations omitted). See also Fidelity Fund of California v. Reinhold,

**B.**    **The Motion for a Stay Should Be Denied**

Consideration of each of the foregoing factors clearly indicates that no stay is warranted here.

1.    **The Civil Action Does Not Place an Undue Burden on the Defendants' Assertion of the Fifth Amendment Privilege**

Defendants appear to argue that a stay is warranted because it would be unfair for the Commission to obtain an adverse inference based on their assertion of the Fifth Amendment privilege.  It is well-established, however, that "a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Keating, 45 F.3d at 326 (holding that civil enforcement action should not be stayed while criminal action was pending).[9]  And, like the movants in Sterling National Bank, Rabinovich and Lovaglio "can point to nothing that suggests that the dilemma they face is more pointed or difficult than in another case of parallel proceedings." Sterling National Bank, 175 F.Supp.2d at 578.[10]  Moreover, the defendants have already asserted their right against self-incrimination at their depositions; and the discovery now outstanding involves the production of documents by the Defendants and discovery from third parties -- neither of which appears to implicate the Defendants' Fifth Amendment rights.

---

190 F.R.D. 45, 52-53 (E.D.N.Y. 1997) (stay granted as to indicted defendant, denied as to defendant who had not yet been indicted).

[9]    "Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Keating, 45 F.3d at 326 (citing Baxter v. Palmigiana, 425 U.S. 308, 318 (1976)).

[10]    In Sterling National Bank, this court noted, however, that the potential for prejudice to a defendant is greater where the civil action has been brought by the government.  175 F.Supp.2d at 579.

With respect to the production of documents, the Defendants' brief raises the act of production doctrine, most recently discussed by the United States Supreme Court in United States v. Hubbell, 530 U.S. 27 (2000). As the Court explained in Hubbell, the act of producing documents in response to a grand jury subpoena may have a compelled testimonial aspect with respect to the existence, authenticity and custody of the documents produced; and the constitutional privilege against self incrimination applies to that aspect of a subpoena response. Id. at 36-37.

The act of production doctrine does not appear to be applicable to this case, and the Defendants make no effort to show otherwise. For example, the vast majority of the documents currently sought by the Commission are corporate records, such as the records of defendant Rabinovich & Associates and M.P. Capital LLC (another entity through which Lovaglio apparently sold securities), and such entities do not possess a Fifth Amendment privilege.[11] See, e.g., Armstrong v. Guccione, 470 F.3d 89 (2nd Cir. 2006).

In Armstrong, for example, the Second Circuit rejected as meritless the contention of the defendant, a corporate officer, that the forced production of corporate records, in connection with civil enforcement actions by the SEC and the Commodity Futures Trading Commission, violated his Fifth Amendment right against compelled self-incrimination. 470 F.3d at 97-98 (citing

---

[11]    Significantly, in Hubbell, the government apparently had no prior knowledge of the existence or the whereabouts of the documents ultimately produced. 530 U.S. at 45. The Defendants have provided no indication that there are any non-corporate documents in the Defendants' possession, as to which the same can be said. Compare Fisher v. United States, 425 U.S. 391 (1976). Fisher dealt with summonses issued by the Internal Revenue Service seeking working papers used in the preparation of tax returns. Because the papers had been voluntarily prepared prior to the issuance of the summonses, they could not be "said to contain compelled testimonial evidence, either of the taxpayers or of anyone else." 425 U.S. at 409-410. Accordingly, the taxpayer could not "avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." Hubbell, 530 U.S. at 36 (citing Fisher, 425 U.S. at 409-410)

Braswell v. United States, 487 U.S. 99, 109-10 (1988) (corporate custodian could not invoke the Fifth Amendment as a basis for refusing to produce corporate records, even though the act of producing those records has independent testimonial significance, which might incriminate the custodian personally); United States v. White, 322 U.S. 694, 699 (1944) (upholding an order of contempt against a union representative for refusing to produce union records because the official held the records in a representative capacity and the Fifth Amendment privilege applies only to natural persons)). The court specifically rejected Armstrong's argument that the reasoning of Hubbell required a different result. 470 F.3d at 98.

As the Supreme Court explained in Braswell, "the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. . . . Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation." 487 U.S. at 109-10. Thus, any claim of Fifth Amendment privilege asserted by the custodian "would be tantamount to a claim of privilege by the corporation - which of course possesses no such privilege." Id. at 110.

As the Supreme Court explained in Hubbell, a defendant cannot avoid compliance with a subpoena "merely because the demanded documents contain[] incriminating evidence, whether written by others or voluntarily prepared by himself." 425 U.S. at 36. See also U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc., 04 Civ. 1233 (DLC), 2007 U.S. Dist. LEXIS 31931, *7 (S.D.N.Y. 2007) (defendant cannot assert the Fifth Amendment privilege to avoid producing corporate documents and records, even if their production may prove personally incriminating).

Accordingly, this Court should reject as meritless the Defendants contention that a stay of these proceedings is required pursuant to the Fifth Amendment.[12]

### 2. A Stay Will Significantly Prejudice the Commission in its Efforts to Effectively Enforce the Securities Laws and Protect the Public

The second factor also weighs against a stay. As an initial matter, the SEC and the Department of Justice have distinct missions and are empowered to seek different relief. As noted above, "the federal government is entitled to vindicate the different interests promoted by different regulatory provisions," First Financial Group of Texas, Inc., 659 F.2d at 666-667, and the "[e]ffective enforcement of the securities laws requires that the SEC and Justice be able to investigate possible violations simultaneously." Dresser Industries, Inc., 628 F.2d at1377. For instance, as it is doing in this case, the Commission often seeks from defendants injunctions which, if obtained, defendants must disclose in certain public filings. In addition, if it is in the public interest to do so, the Commission may, following the imposition of such injunctions, bar or otherwise limit defendants from further participation in certain aspects of the securities industry based on an injunction entered in the civil action. All of these remedies are in furtherance of the Commission's responsibility to protect the investing public.

---

[12]    As noted above, some courts analyze this factor by considering the extent to which the civil and criminal actions overlap and the status of the criminal proceedings. In this case, there is no way to determine the overlap with any certainty because no criminal proceeding has been instituted in this case. Until the criminal authorities complete their investigation and, as appropriate, file an action, no one can know the degree of overlap, if any, between the two matters. See, e.g., SEC v. United Brands Co., 75 Civ. 509, 1975 U.S. Dist. LEXIS 11380, *2-3 (D.D.C. Jul. 18, 1975) (noting that "[e]ven if the factual and legal issues in the two actions arise from the same transactions and are substantially identical, it does not necessarily follow that there is a concrete possibility of interference between the two."); Greentree, 2005 U.S. Dist. LEXIS at *3 ("[a]bsent indictment, the scope and nature of the criminal investigation is unknown" and a court "cannot determine the extent to which an indefinite criminal case overlaps with a pending civil action.")

A stay of discovery will hinder the Commission's effort to protect the investing public in various other respects. For example, the discovery sought by the Commission is highly likely to assist the Commission in identifying: additional victims of the defendants' fraudulent activities, additional participants in the fraud, and/or possibly additional proceeds of the fraud before these proceeds are dissipated. The sooner the Commission can obtain such information, the more quickly it can take steps to protect the public.

In addition, the Commission would suffer the prejudice suffered by all plaintiffs subject to a delay of proceedings, including the inability to vindicate its claims expeditiously; the death of witnesses or the fading of witness memories; the turnover of staff; and the possibility of collectible assets of the defendants being dissipated in the course of a criminal trial.

### 3.    The Unhindered Progress of the Civil Litigation Will Not Significantly Prejudice Rabinovich and Lovaglio

The third factor also favors the Commission. Rabinovich and Lovaglio contend that they will suffer unfair prejudice because proceeding with discovery in the civil case will require them to choose between responding substantively and invoking their Fifth Amendment rights. What Rabinovich and Lovaglio neglect to tell the Court is that they already made that choice by, invoking the Fifth Amendment repeatedly at their depositions and in response to the Commission's Request for Admissions. Moreover, as discussed above, the discovery of corporate documents does not even implicate Fifth Amendment concerns.

Nor would the Defendants face unfair prejudice from the continuation of the Commission's efforts to obtain discovery from third parties, including financial institutions, investors and other persons with knowledge of the defendants' unlawful activities. See, e.g., Devita v. Sills, 422 F.2d 1172, 1181 (3d Cir. 1972) ("we know of no rule or equitable principle that protects a defendant in a pending criminal prosecution from the disclosure, by another

person in a separate civil action, of evidence which may later become part of the prosecution's case against him).[13]

### 4.    The Remaining Factors Also Weigh Against a Stay

The remaining factors -- the convenience of this Court and efficient use of judicial resources, the public interest, and the interests of non-parties -- all weigh in favor of a stay. The Commission cannot conceive of any efficiency to the Court from an indefinite stay of these proceedings. Moreover, since the public interest coincides with that of the Commission, for the same reasons that a stay would prejudice the Commission, set forth above, it is in the public interest to permit this case to proceed without delay. Non-parties may also suffer undue harm from a stay, since the burden and uncertainty faced by investors and potential witnesses would be unnecessarily and indefinitely prolonged.

### 5.    A Stay Is Not Warranted by Any Other Factors

As mentioned above, the Kordel court alluded to additional "special circumstances" which might warrant a stay. None of these circumstances are applicable. The Commission has not commenced this civil action "solely to obtain evidence for [a] criminal prosecution,"[14] the

---

[13]    In any event, the Defendants should be estopped from claiming prejudice from the continuation of discovery at this juncture. Notably, the Defendants have requested a stay only after they have taken full advantage of civil discovery to learn information that they could not have gathered in a criminal proceeding, while simultaneously stonewalling the Commission's discovery efforts.

[14]    Rabinovich and Lovaglio state in the conclusion of their Motion, without any explanation or support whatsoever, "The SEC's participation in this matter disguised as a civil matter, in fact they are a tool for a criminal indictment." Motion at p.10. Defendants' assertion is utterly false. Defendants' actual concern is likely the sharing of information by the Commission with the Department of Justice, which activity promotes efficiency, avoids unnecessary duplication of effort, and is specifically authorized by Congress. See, e.g., Dresser Industries, 628 F.2d at 1376 (the Securities Act of 1933 and the Securities Exchange Act of 1934 "explicitly empower the SEC to investigate possible infractions of the securities laws with a view to both civil and criminal enforcement, and to transmit the fruits of its investigations to Justice in the event of potential criminal proceedings").

Defendants have been aware of the interest by the Department of Justice since shortly after the Commission filed this action, the defendants are represented by counsel and the Defendants have not even suggested that they reasonably fears prejudice from adverse pre-trial publicity or "other unfair injury." See Kordel, 397 U.S. at 12.

      C.      **The Motion for a Protective Order Should Also Be Denied.**

      The Defendants also request, presumably in the alternative, that the Court issue a protective order.  The Motion does not specify the discovery as to which the Defendants seek such an order, and it appears that the protective order envisioned by the Defendants would be one that essentially stays all discovery.  For the same reasons set forth above, the Defendants have not shown good cause for a protective order, and their request should be denied.

### III.    **CONCLUSION**

For the reasons stated above, this Court should deny the Motion in its entirety.

Dated: New York, NY
        February 22, 2008                    Respectfully submitted,


                                             By:  ⟋⟋⟋⟋⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍⟍
                                             Mark K. Schonfeld (MS-2798)
                                             Michael Paley (MP-6035)
                                             ATTORNEY FOR PLAINTIFF
                                             SECURITIES AND EXCHANGE COMMISSION
                                             New York Regional Office
                                             3 World Financial Center, Suite 400
                                             New York, New York 10281-1022
                                             (212) 336-1045 (Paley)

Of Counsel:
Andrew M. Calamari
Leslie Kazon
James Burt IV
Kristine Zaleskas

- 15 -