Counsel of Record:
Leslie Kazon (LK-6777)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022
(212) 336-0107 (Kazon)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,    : | |
|    : | |
| Plaintiff,    : | |
|    : | |
| -against-    : | 07 Civ. 10547 (GEL) |
|    : | |
| RABINOVICH & ASSOCIATES, LP,    : | |
| ALEX RABINOVICH AND    : | |
| JOSEPH LOVAGLIO,    : | |
|    : | |
| Defendants.    : | |

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
<u>AGAINST DEFENDANT JOSEPH LOVAGLIO</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ...................................................................................2

The Defendant and Related Parties.............................................................................2

Procedural Background.............................................................................................3

The Defendants Operated a Boiler Room Through Which They Fraudulently Offered and Sold
Interests in the Fund................................................................................................4

False and Misleading Communications with Investors.................................................6

Lovaglio Made and Caused Others to Make Material Misrepresentations and Omissions in
Selling Interests in the Fund ....................................................................................8

ARGUMENT

THE COMMISSION IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW
AGAINST DEFENDANT LOVAGLIO ..........................................................................9

I.       Standard of Review ...............................................................................9

II       Lovaglio Violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange
         Act and Rule 10b-5 thereunder.............................................................................10

III.     Lovaglio Aided and Abetted Rabinovich's Violations of Section 206(4) of the Advisers
         Act and Rule 206(4)-8 Thereunder.....................................................................14

IV.      Lovaglio Violated Sections 5(a) and 5(c) of the Securities Act by Offering and Selling
         Securities in an Unregistered Offering ...............................................................16

         A.       Lovaglio Offered and Sold Securities in an Unregistered Offering ..................16

         B.       No Exemption from Registration is Available to Lovaglio.................................17

V.       Lovaglio Violated Section 15(a) of the Exchange Act by Acting as an
         Unregistered Broker..........................................................................................18

VI.      The Commission is Entitled to the Relief It Seeks Against Lovaglio ...............................20

         A.       Lovaglio Should Be Permanently Enjoined from Violating the Securities Laws .20

B.     Lovaglio Should Be Ordered to Disgorge His Ill-Gotten Gains and Pay Pre-Judgment Interest ................................................................................................ 21

C.     The Court Should Impose a Third Tier Civil Penalty on Lovaglio ....................... 22

CONCLUSION ............................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases:**

Aaron v. SEC, 446 U.S. 680 (1980) ............................................................. 11

Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977).............................13

American Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp., No. 94 Viv. 2727, 1997 WL 906427 (S.D.N.Y. Sept. 12, 1997)................................................................10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)..................................10

Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983) ......................................16

Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) ..........................11

Basic, Inc. v. Levinson, 485 U.S. 224 (1988) ...............................................11

Berko v. SEC, 316 F.2d 137 (2d Cir. 1964) .................................................12

Brink's Inc. v. City of New York, 717 F.2d 700 (2d Cir.1983) ....................10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...........................................10

In re Complete Management, Inc., 2001 WL 314631 (S.D.N.Y. 2001).......................11

Elkind v. Liggett & Myers, Inc., 635 F.2d 156 (2d Cir. 1980) ....................14

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976) ....................................11

European & Overseas Comm. Traders, S.A. v. Banque Paribas London, 147 F.3d. 118 (2d Cir. 1998) ..................................................................................................17

Hanly v. SEC, 415 F.2d 589 (2d Cir. 1969) .................................................12

Herman & MacLean v. Huddleston, 459 U.S. 375 (1983) ...........................12

Hill York Corp. v. American Int'l Franchises, 448 F.2d 680 (5th Cir. 1971).................17

Massachusetts Fin. Servs., Inc. v. Security Investor Protection Corp., 411 F. Supp. 411 (D. Mass.), aff'd, 545 F.2d 754 (1st Cir. 1976) ..................................................19

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ...........................................12

Patrick Rooney, Exchange Act Relase No. 44414, 2001 SEC LEXIS 1139 (June 13, 2001) ......19

Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38 (2d Cir.), cert. denied, 439 U.S. 1039 (1978)..................................................................................................................... 11

Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995)..........................................................10

SEC v. Benson, 675 F. Supp. 1122 (S.D.N.Y. 1987) ......................................................21

SEC v. Berger, 244 F. Supp.2d 180 (S.D.N.Y. 2001) ....................................................16

SEC v. Blavin, 557 F. Supp.2d 1304 (E.D. Mich. 1983).................................................14

SEC v. Cavanagh, 445 F.3d 105 (2d Cir. 2006) .............................................................17

SEC v. Cherif, 933 F.2d 403 (7th Cir. 1991)...................................................................10

SEC v. Commonwealth Chemical Secs., Inc., 574 F.2d 90 (2d Cir. 1978) ...............20, 21

SEC v. Continental Tobacco Co., 463 F.2d 137 (5th Cir. 1972) .....................................17

SEC v. Drucker, 528 F. Supp.2d 450 (S.D.N.Y. 2007) ..................................................22

SEC v. First City Financial Corp., 890 F.2d 1215 (D.C. Cir. 1989) ..............................21

SEC v. First Jersey Securities, Inc., 101 F.3d 1450 (2d Cir. 1996) ...................13, 21, 22

SEC v. Haligiannis, 470 F. Supp.2d 373 (S.D.N.Y. 2007) ......................................14, 16

SEC v. Hanson, 726 F. Supp. 74 (S.D.N.Y. 1989)..........................................................19

SEC v. Hasho, 784 F. Supp. 1059 (S.D.N.Y. 1992) .......................................................12

SEC v. Householder, 02 C. 4128, 2002 WL 31207292 (N.D. Ill. Oct. 1, 2002) ............14

SEC v. Hughes Capital Corp., 124 F.3d 449 (3d Cir. 1997) ...........................................21

SEC v. Kenton Capital, Ltd., 69 F. Supp.2d 1 (D.D.C. 1998) ........................................19

SEC v. Koenig, 532 F.Supp.2d 987 (N.D. Ill. 2007)......................................................22

SEC v. Management Dynamics, Inc., 516 F.2d 801 (2d Cir. 1975) .................................21

SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972) ..............................21

SEC v. Martino, 255 F. Supp.2d 268 (S.D.N.Y. 2003) ..................................................18

SEC v. Opulentica LLC, 479 F. Supp.2d 319 (S.D.N.Y. 2007) .................................................22

SEC v. Patel, 61 F.3d 137 (2d Cir. 1995) ...................................................................................22

SEC v. Ralston Purina Co., 346 U.S. 119 (1953) .......................................................................17

SEC v. Research Automation Corp., 585 F.2d 21 (2d Cir. 1978) ...............................................20

SEC v. Save the World Air, Inc., No. 01 Civ. 11586 (GBD), 2005 WL 3077514 (S.D.N.Y. Nov. 15, 2005) .....................................................................................................................................11

SEC v. Universal Express, Inc., 475 F. Supp.2d 412 (S.D.N.Y. 2007)......................11, 12, 21, 22

SEC v. Universal Major Indus., 546 F.2d 1044 (2d Cir. 1976) ...................................................20

SEC. v. Washington Inv. Network, 475 F.3d 392 (D.C. Cir. 2007)..............................................16

Steinhardt Group, Inc. v. Citicorp, 126 F.3d 144 (3d Cir. 1997) ................................................13

TSC Industries v. Northway, Inc., 426 U.S. 438 (1976).......................................................... 11-12

## STATUTES AND RULES:

15 U.S.C. § 77e(a) ......................................................................................................................11

15 U.S.C. § 78c(a) ......................................................................................................................16

15 U.S.C. § 78j(b) .......................................................................................................................11

15 U.S.C. § 78o(a) ......................................................................................................................19

15 U.S.C. § 80b-6a(4)..................................................................................................................15

17 C.F.R. 230.504.......................................................................................................................17

17 C.F.R. 230.505.......................................................................................................................17

17 C.F.R. 230.506.......................................................................................................................17

17 C.F.R. §240.10b-5 ..................................................................................................................11

17. C.F.R. 240.3a4-1 ...................................................................................................................19

17 C.F.R. 275.206(4) ..................................................................................................................15

**OTHER MATERIALS:**

Prohibition of Fraud by Advisers of Certain Pooled Investment Vehicles, Advisers Act Release
No. 2628 (August 3, 2007) ..............................................................................................................15

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Securities and Exchange Commission submits this memorandum of law in support of its motion for summary judgment against defendant Joseph Lovaglio, together with the accompanying Statement Pursuant to Local Rule 56.1 ("Pl. 56.1 Statement"), the September 11, 2008 Declaration .of Michael Paley, the September 11, 2008 Declaration of Terrence P. Bohan, the September 11, 2008 Declaration of Elzbieta Wraga, and the Exhibits in Support of Plaintiff's Motion for Summary Judgment Against Defendant Joseph Lovaglio.

## PRELIMINARY STATEMENT

This action arose out of a fraudulent securities offering by Rabinovich & Associates, LP, (sometimes referred to hereafter as the "Fund" or the "firm"), an unregistered investment company and broker-dealer managed by defendants Alex Rabinovich and Lovaglio. From at least August 20, 2005 until at least November 2007 (the relevant period), operating out of a storefront boiler room in the Gravesend section of Brooklyn, New York, Alex Rabinovich, the firm's general partner and the Fund's portfolio manager, Lovaglio, a managing director and its head of sales, and other salesmen, raised at least $2,767,811 from at least 169 investors nationwide, through the sale of limited partnership interests in the Fund. At least $2,273,728 was raised after Lovaglio joined the firm.

Lovaglio and the other defendants obtained investments in the Fund by making fraudulent statements to investors and prospective investors, including: (1) false claims that the Fund had been extraordinarily profitable whereas the Fund's actual performance had been dismal; and (2) false representations that Rabinovich & Associates was a Wall Street firm and a member of the NASD, the New York Stock Exchange ("NYSE"), and the Securities Investor Protection Corporation ("SIPC"). Lovaglio and the other defendants also failed to disclose to

investors that Rabinovich had been barred by the NASD[1] from associating with any broker or dealer, and that there was a pending action by the NASD seeking to bar Lovaglio from associating with any broker or dealer. In addition to defrauding Fund investors, Lovaglio unlawfully operated as an unregistered broker-dealer and offered and sold securities in an unregistered offering.

Through this conduct, and that detailed below, Lovaglio violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78o(a), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and aided and abetted violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8.

## STATEMENT OF FACTS

### The Defendant and Related Parties

From at least August 20, 2005 until at least November 15, 2007 (the "relevant period'), Lovaglio was managing director of Rabinovich & Associates and the head of its sales operation. Pl. R.56.1 ¶ 6. Lovaglio is twenty-six years old and was active in the securities industry from at least 1998 until at least November 2007. Pl. R.56.1 ¶ 6. In September 2007, FINRA instituted proceedings seeking to bar Lovaglio from associating with any FINRA member based on his failure to provide FINRA with requested information and documents in connection with a customer allegation of fraud in a matter unrelated to the present action. Pl. R.56.1 ¶ 6. On

---

[1]      Effective July 30, 2007, the NASD and the NYSE member regulation, enforcement, and arbitration operations were consolidated, creating the Financial Industry Regulatory Authority, Inc., or "FINRA."

January 7, 2008, FINRA barred Lovaglio from associating with any member firm. Pl. R.56.1 ¶ 6. Lovaglio has never been registered as a broker-dealer with the Commission. Pl. R.56.1 ¶ 12.

Rabinovich & Associates, LP is a limited partnership, and was, during the relevant period, purportedly located at 14 Wall Street, New York, NY. Pl. R.56.1 ¶ 7. Rabinovich & Associates has never been registered as a broker-dealer, investment company, or investment adviser with the Commission, and was not a member of the NASD, the NYSE or SIPC. Pl. R.56.1 ¶¶ 8, 12. No registration statement was ever filed with the Commission for the offer and sale of securities issued by the Fund. Pl. R.56.1 ¶ 9.

Alex Rabinovich was the general partner of Rabinovich & Associates and purportedly its portfolio manager. Pl. R.56.1 ¶¶ 10, 18. On July 30, 2004, the NASD barred Rabinovich from association with any NASD member in any capacity. Pl. R.56.1 ¶ 11. Rabinovich has never been registered as a broker-dealer with the Commission. Pl. R.56.1 ¶ 12.

### Procedural Background

The Commission commenced this action by filing its complaint and an application for emergency relief on November 26, 2007. The Court granted the Commission's application for emergency relief, imposing a temporary restraining order, asset freeze and other emergency relief. Among other things, the Court ordered Lovaglio to file and serve a verified accounting. On December 12, 2007, the Court held a preliminary injunction hearing at which defendants Rabinovich and Lovaglio consented to the entry of a preliminary injunction, which was entered on January 15, 2008 and continued the interim relief. On December 27, 2007, defendants Rabinovich and Lovaglio served a joint answer. Defendant Rabinovich & Associates, which failed to appear at the preliminary injunction hearing, failed to answer or otherwise respond to the complaint and a certificate of default was entered against it on January 23, 2008.

The Commission took the depositions of Rabinovich and Lovaglio, but each asserted his Fifth Amendment privilege against self-incrimination and refused to answer all questions relating to the allegations in the complaint. Exhs. A & B.[2]  The Commission also served Rabinovich and Lovaglio with requests to admit pursuant to Fed. R. Civ. P. 36.  Each asserted his Fifth Amendment privilege against self-incrimination and refused to answer any of the requests to admit.  Exhs. C, D, E & F.  Lovaglio also failed to provide to provide an accounting. Paley Decl. ¶ 9.

On March 14, 2008, Rabinovich pleaded guilty to one count of securities fraud, in United States v. Alex Rabinovich, Crim. Information No. 1:08-Cr-220 (DC), in connection with the same conduct that was the basis of the Commission's complaint. Exh. G.

**The Defendants Operated a Boiler Room Through Which They Fraudulently Offered and Sold Interests in the Fund**

During the relevant period, Rabinovich & Associates operated out of a storefront office in the Gravesend section of Brooklyn. Pl. R.56.1 ¶ 13.  Approximately six people worked at the firm:  Alex Rabinovich, Lovaglio, several salesmen, and a secretary. Pl. R.56.1 ¶ 13.  The office displayed many of the hallmarks of a boiler room: (a) a main room with multiple desks, each with a telephone; (b) color-coded maps of the United States reflecting the different time zones across the continent, on several of the desks; (c) hundreds of index cards that appeared to be "lead cards" (with names and contact information, presumably of potential investors) strewn across the desks and piled in a box with a do-not-call list; (d) sales scripts; and (e) a large bulletin board along a wall displaying a list of reasons for a person to invest in the Fund,

---

[2]    References to "Exh." are to exhibits contained in the accompanying compilation of Exhibits in Support of Plaintiff's Motion for Summary Judgment Against Defendant Joseph Lovaglio.  The exhibits are attested to in one or more of the Paley, Bohan, and Wraga declarations or are self-authenticating.

including "recession proof," "50/50 profit sharing" and "quarterly dividends," as well as a number of "points" for various numbers of "leads" (e.g., "1 lead = 1 point", "2 leads = 5 points"). Pl. R.56.1 ¶ 14.

Rabinovich & Associates promoted itself on its website, www.ra-lp.com, as "an independent investment company whose affiliates offer a broad array of financial products and services." Pl. R.56.1 ¶ 16. The Fund was "organized to acquire for investment the securities . . . of any recognized stock exchange company . . . to realize the value of such Securities by managing the same for the mutual benefit of the [General Partner and the Limited Partners]."[3] Pl. R.56.1 ¶ 17. Interests in the Fund offered and sold to investors were represented to be "share[s] . . . in the Gains and Losses of the Partnership and the right to receive distributions of Partnership assets, as provided in this agreement." Pl. R.56.1 ¶ 17. Under the terms of the partnership agreement, Alex Rabinovich, as general partner, was to receive "fifty (50%) percent profit realized on any transactions on behalf of the partnership," for managing the Fund's investments. Pl. R.56.1 ¶ 18.

From as early as November 2003 through at least November 2007, the defendants raised at least $2,767,811 from at least 169 investors, through the sale of limited partnership interests in the Fund. A total of $461,593.73 was distributed to investors, so that the net amount raised was at least $2,301,217.27. At least $2,273,728 was raised after Lovaglio joined the firm. The investors were located in at least twenty-one states. Pl. R.56.1 ¶ 15.

---

[3]     Partnership interests were defined as "share[s] of a Partner in the Gains and Losses of the Partnership and the right to receive distributions of Partnership assets, as provided in this agreement." Pl. R.56.1 ¶ 17.

**False and Misleading Communications with Investors**

Lovaglio and the other defendants obtained investments in the Fund through a variety of false and misleading statements about the Fund's performance and track record, the firm's location, and the background of its principles, Alex Rabinovich and Lovaglio.[4] These fraudulent statements were made over the phone by salesmen acting under Lovaglio's direction, Pl. R.56.1 ¶¶ 14, 33, via the firm's website and account statements sent to investors, PL. R.56.1 ¶¶ 22-27, 40, and by Lovaglio directly. PL. R.56.1 ¶¶ 36, 37, 39.[5]

Rabinovich & Associates' website contained false claims about the Fund's performance and track record. For instance, the website falsely claimed that that the Fund's "moderate growth fund" had earned 127.3% since its inception, and that its "aggressive growth fund" had earned 422.9% since its inception in 2003. The website also falsely claimed that the Fund had a 123.9% return in 2004, an 84.2% return in 2005, and a 54.7% return in 2006. According to the website, in the Fund's worst quarter ever, it achieved a 6.10% return, and in every other quarter mentioned, the Fund purportedly earned at least 11.80%. Pl. R.56.1 ¶ 24.

The firm's website also stated, falsely, that the firm was located on Wall Street, Pl. R.56.1 ¶ 22, and failed to disclose Rabinovich's and Lovaglio's disciplinary history. The website identified Rabinovich as the Fund's general partner and described him as "the head trader and the chief of all the day to day operations of the Partnership . . . " and "the man who is able to swim with the sharks" and "strives to make a footprint in the [financial] industry." The

---

[4] Rabinovich & Associates also represented to investors that they owned particular securities  -- shares of "Alliance Capital Reserv." through their Rabinovich & Associates account, when they did not.  Pl. R.56.1 ¶ 29.

[5] The jurisdictional means were used in the fraud.  Investors were solicited on interstate telephone calls and were sent account opening documents and account statements through the United States mail and by Federal Express.  Pl. R.56.1 ¶ 20.

website listed Lovaglio as contact person for persons interested in working for the firm. The website did not mention that Rabinovich had been barred by the NASD from associating with an NASD-member broker-dealer, PL. R.56.1 ¶¶ 11, 40, – which the firm claimed to be, PL. R.56.1 ¶ 23. Nor did it mention the pending proceeding against Lovaglio, which was commenced on September 28, 2007. PL. R.56.1 ¶¶ 40, 6.

Account statements sent to investors also misrepresented the Fund's performance, and the firm's location and status as a regulated, insured broker-dealer. The account statements falsely represented that the Fund had performed positively. Pl. R.56.1 ¶ 27. The account statements included each investor's purported balance, earnings summary, "portfolio positions," and percentage increase in the account for the period of the statement. Pl. R.56.1 ¶ 21. The account statements stated that the firm was located on Wall Street. The Wall Street address served only as a maildrop, however, and all Rabinovich & Associates' activities occurred in Brooklyn. Pl. R.56.1 ¶ 22. The account statements also included a legend stating that the firm was a member of NASD, NYSE, and SIPC. This representation was false – Rabinovich & Associates was not a member of any of these organizations, and investors accounts were thus not insured. This representation gave false comfort to investors that the Fund was strictly regulated. Pl. R.56.1 ¶ 23.

The false performance results led investors to invest in the Fund and to make additional investments in the Fund. Pl. R.56.1 ¶ ¶28, 36, 37. Had investors known that the Fund was losing money, they doubtless would not have made additional investments and might well have tried to redeem their interests in the Fund. The firm's purported Wall Street location and regulated status, and the apparently clean records of its principals also gave comfort to investors. Pl. R.56.1 ¶¶ 22, 23, 41.

7

Account statements misrepresenting the Fund's performance and the firm's location and status as a member of the NYSE, NASD and SIPC were sent to investors at least through September 30, 2007. Pl. R.56.1 ¶ 30. The Fund's website, containing similar misrepresentations and omissions, remained active at least until November 25, 2007. Pl. R.56.1 ¶ 30. Lovaglio personally solicited investments or additional investments in the Fund by means of false and misleading statements until at least October 2007. Pl. R.56.1 ¶ 37. Investors never received audited financial statements or balance sheets for the Fund. Pl. R.56.1 ¶ 31.

**Lovaglio Made and Caused Others to Make Material Misrepresentations and Omissions in Selling Interests in the Fund**

Rabinovich & Associates was a small firm, employing approximately six people: Alex Rabinovich, Lovaglio, several salesmen, and a receptionist. Pl. R.56.1 ¶ 13. Lovaglio was second-in-command, after Rabinovich. He held himself out to investors and potential investors as the firm's managing director. Pl. R.56.1 ¶6. Moreover, Lovaglio was in charge of the Fund's sales operation; he ran the boiler room, as well as personally soliciting investments in the Fund. Pl. R.56.1 ¶¶ 33, 34.

Lovaglio sometimes obtained investments in the Fund by personally making false performance claims to prospective investors.[6] For example, Lovaglio told one prospective investor that the Fund's rate of return was around fifteen to eighteen percent. This statement was false. After meeting with Lovaglio, this investor invested $25,000. Pl. R.56.1 ¶ 36. Lovaglio also sometimes obtained additional investments from existing investors by personally echoing the Fund's false performance claims. After one investor made his initial investment, Lovaglio called him approximately every two weeks asking him to increase his investment in the Fund.

---

[6] Lovaglio even traveled to other states to solicit potential investors in person, and to seek additional investments from existing investors. Pl. R.56.1 ¶ 35.

On these calls, Lovaglio routinely told the investor that the Fund had earned positive returns. As a result of these solicitations and representations by Lovaglio, this investor made an additional investment in the Fund in the amount of $25,000. Pl. R.56.1 ¶ 37.[7] Lovaglio also represented, via his business card, that the firm was located on Wall Street, Pl. R.56.1 ¶ 22, and did not disclose to investors or prospective investors the pending FINRA proceeding against him or the NASD bar against Rabinovich. Pl. R.56.1 ¶ 39.

If Lovaglio was not aware of the Fund's true performance, he could have easily determined it by reviewing records of the Fund's brokerage account. If he was not aware of Rabinovich's bar, he could easily have discovered it by consulting the NASD's website. Pl. R.56.1 ¶ 42. Presumably he was aware of the proceeding against himself.

Lovaglio benefited financially from his illegal conduct, receiving at least $92,857.49 from Rabinovich & Associates, some if not all of which was based on the amount the firm raised from the sale of interests in the Fund. Pl. R.56.1 ¶ 43.

## ARGUMENT

## THE COMMISSION IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AGAINST DEFENDANT LOVAGLIO

**I.**     **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must inform the court of the basis for its motion, and identify the parts of the record that it believes demonstrate the absence of a

---

[7]     Lovaglio also solicited at least one investor to invest in the stock of a company called "Datawind." Pl. R.56.1 ¶ 38.

genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In deciding whether to grant summary judgment, the court must draw all justifiable inferences in favor of the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Under this standard, the Commission's motion should be granted.  The Commission has developed a substantial and undisputed factual record that establishes Lovaglio's liability under the securities laws.  Moreover, in his deposition, Lovaglio asserted his privilege against self-incrimination under the Fifth Amendment and refused to answer any questions relating to the allegations in the complaint.  Lovaglio also invoked his Fifth Amendment privilege and refused to respond to the Commission's requests to admit pursuant to Fed. R. Civ. P. 36.  Accordingly, the Commission is entitled to an adverse inference on those matters as to which Lovaglio invoked his privilege and refused to testify.  <u>See</u> <u>SEC v. Cherif</u>, 933 F.2d 403, 417 (7th Cir. 1991); <u>Brink's Inc. v. City of New York</u>, 717 F.2d 700, 710 (2d Cir.1983) (witness's invocation of Fifth Amendment privilege in civil proceedings is "admissible and competent evidence," as long as the "probative value of the evidence [is] not 'substantially outweighed by the danger of unfair prejudice' under Fed.R.Evid. 403.").[8]

## II.    Lovaglio Violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities.  Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit the same conduct if

---

[8]    Rabinovich admitted certain aspects of the fraud in his guilty plea allocution, which is admissible evidence against Lovaglio.  <u>See</u> <u>American Int'l Specialty Lines Ins. Co. v. Towers Financial Corp.</u>, 94 Civ. 2727, 1997 WL 906427 at *4 n.7 (S.D.N.Y. Sept. 12, 1997) (guilty plea allocution admissible against co-defendants in civil suit); <u>see also</u>, <u>Scholes v. Lehmann</u>, 56 F.3d 750, 762 (7th Cir. 1995) (same).

committed in connection with the purchase or sale of securities.[9]  To establish a violation of

Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, the

Commission must show: (1) a misrepresentation or omission regarding material facts or other

fraudulent conduct; (2) made with scienter; and (3) in the offer or sale, or in connection with the

purchase or sale, of a security. See Basic, Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988)

(citation omitted).  A statement or omission is material if a reasonable investor would view its

disclosure as significantly altering the "total mix" of information made available.  TSC Industries

v. Northway, Inc., 426 U.S. 438, 449 (1976).  See also SEC v. Universal Express, Inc., 475 F.

Supp.2d 412, 423 (S.D.N.Y. 2007), quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 518 (2d

Cir. 1994) (misrepresentation or omission is material if "there is a substantial likelihood that a

reasonable person would consider it important in deciding whether to buy or sell shares").

To violate Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act

and Rule 10b-5, a person must act with scienter.  Scienter is "a mental state embracing intent to

deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976).  A

showing of negligence is sufficient to establish a violation of Sections 17(a)(2) and 17(a)(3) of

the Securities Act.  See Aaron v. SEC, 446 U.S. 680, 701-02 (1980).  In the Second Circuit,

reckless conduct satisfies the scienter requirement.  In re Complete Management, Inc., 2001 WL

314631, at *8 (S.D.N.Y. 2001); Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38, 44-48

(2d Cir. 1978).

---

[9]     Both Section 17 of the Securities Act and Section 10(b) of the Exchange Act require the
"use of any means or instruments of transportation or communication in interstate
commerce or by use of the mails."  The defendants use of interstate telephone and the
mails to communicate with investors and potential investors satisfies that requirement, as
does their use of Federal Express.  SEC v. Save the World Air, Inc., No. 01 Civ.
11586(GBD), 2005 WL 3077514 at *10 (S.D.N.Y. Nov. 15, 2005).

Reckless conduct is defined as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000) (quoting Rolf, 570 F.2d at 47). "Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." SEC v. Universal Express, Inc., 475 F.Supp.2d 412, 424 (S.D.N.Y. 2007), citing Rolf, 570 F.2d at 48. Herman & MacLean v. Huddleston, 459 U.S. 375, 390-91 n.30 (1983).

Moreover, as a securities salesman, Lovaglio had a duty to investigate the securities he was offering and selling to the public before recommending the securities to prospective investors. The Second Circuit has held that "brokers and salesman are under a duty to investigate . . . . Thus a salesman cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant." Hanly v. SEC, 15 F.2d 589, 595-96 (2d Cir.1969). See also SEC v. Hasho, 784 F.Supp. 1059 (S.D.N.Y. 1992). Salesmen selling securities through a boiler room, which involves recommending "speculative securities to mostly unsophisticated investors using high pressure and fraudulent sales pitches via long distance telephone solicitations" are held to an even higher standard. Hasho at 1107-08, citing Berko v. SEC, 316 F.2d 137, 142 (2d Cir. 1964). "Salesmen in a boiler room are held to a high duty of truthfulness which is not met by a claim of lack of knowledge." Hanly at 597, n. 14. Moreover, "securities issued by smaller companies of recent origin obviously require thorough investigation." Id. at 597.

Lovaglio knowingly made numerous misrepresentations and omissions to induce the purchase of interests in the Fund, which are securities.[10] Lovaglio repeatedly represented to investors and prospective investors that the Fund was profitable when in fact the fund had lost money every quarter of its existence. Lovaglio failed to disclose to investors and prospective investors that Rabinovich had been barred by the NASD from association with any broker or dealer, and that there was a pending FINRA proceeding against Lovaglio. Moreover, as the firm's "managing director" and second in command, as well as the head of its sales operations, Lovaglio is responsible for the material misrepresentations on the firm's website, in its account statements, as well as those made by salesmen working under his direction. See SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1471 (2d Cir. 1996) ("primary liability "may be imposed not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration.").

Lovaglio either knew that the performance claims he was making were false and misleading or, by failing to investigate those performance claims, failed to comply with his duty to investigate, and thus was, at a minimum, reckless. Similarly, he undoubtedly knew that Rabinovich & Associates was not a member of the NASD or NYSE and that its accounts were not insured by SIPC, that Alex Rabinovich had been barred by the NASD, and that he himself was subject to an NASD proceeding based on his failure to provide information to the NASD or at a minimum failed to investigate the firm's regulatory status and Rabinovich's background. Clearly, he knew that the firm was not located on Wall Street but rather operated out of a

---

[10]    Interests in the Fund – Rabinovich & Associates limited partnership interests – are clearly securities because the partnership agreement gave Rabinovich, the general partner, the "exclusive right and power to manage, conduct and operate the business of the Partnership," Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 153 (3d Cir. 1997). See also Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977).

storefront in the Gravesend section of Brooklyn. And he undoubtedly knew that the misrepresentations about the Fund's performance, and the firm and its principals misled investors. Finally, in light of all the other evidence, the Commission has put forward, Lovaglio's invocation of his Fifth Amendment privilege entitles the Commission to an adverse inference that he acted knowingly.

These misrepresentations were material. The Fund's true performance, as information concerning the financial condition of a company, is presumptively important to an investor or prospective investor. See Elkind v. Liggett & Myers, Inc., 635 F.2d 156, 167 (2d Cir. 1980). See also SEC v. Blavin, 557 F. Supp. 1304, 1313 (E.D. Mich. 1983), aff'd, 760 F.2d 706 (6th Cir. 1985); and SEC v. Haligiannis, 470 F. Supp.2d 373 (S.D.N.Y. 2007) (false performance returns included on accountant statements and newsletters constitute material misrepresentation). The truth about the firm's location and regulated status would also have been important to a reasonable investor, as would the disciplinary history of its principals, SEC v. Householder, No. 02 C 4128, 2002 WL 31207292, at *7 (N.D. Ill. Oct. 1, 2002) (the omission of a salesman's disciplinary action barring him from offering and selling of securities and giving investment advice "alters the 'total mix' of information an investor would rely upon in making a financial investment.")

Accordingly, Lovaglio violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## III. Lovaglio Aided and Abetted Rabinovich's Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder

Section 206(4) of the Advisers Act prohibits investment advisers from, by the use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, engaging in any act, practice, or course of business which is fraudulent, deceptive or manipulative, and

14

authorizes the Commission to adopt rules defining such prohibited conduct. Advisers Act Rule 206(4)-8 provides that it is an illegal practice for investment advisers to: (1) make any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle;[11] or (2) otherwise defraud those investors or prospective investors. The rule prohibits investment advisers from, among other things, making false or misleading statements in account statements sent to existing investors, Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Advisers Act Release No. 2628 (August 3, 2007)("Adopting Release") at 6, and misleading investors or potential investors concerning the credentials or experience of the adviser, Adopting Release at 10. No showing of scienter is required to establish a violation of Rule 206(4)-8. See Adopting Release at 13. The rule applies to both registered and unregistered advisers. See Adopting Release at 7. The rule became effective on September 10, 2007, at least two months before the Rabinovich & Associates fraud ended.

Rabinovich violated Advisers Act Section 206(4) and Rule 206(4)-8 thereunder by, among other things, after the rule took effect on September 10, 2007, making false performance claims to prospective Fund investors, falsely representing the Fund's track record, that the firm was a member of the NASD and the NYSE, and that he would invest their funds in securities,

---

[11]   The rule defines "pooled investment vehicle" as "any investment company as defined in section 3(a) of the Investment Company Act of 1940 (15 U.S.C. 80a-3(a)) or any company that would be an investment company under section 3(a) of that Act but for the exclusion provided from that definition by either Section 3(c)(1) or Section 3(c)(7) of that Act (15 U.S.C. §§ 80a-3(c)(1) or (7))." Rabinovich & Associates is an unregistered investment company under Section 3(a) of the Investment Company Act because it is "an issuer which is or holds itself out as being engaged primarily . . . in the business of investing, reinvesting, or trading in securities[.]"

Exh. G, p. 9; Pl. R. 56.1 ¶¶ 17-18, and by failing to disclose his and Lovaglio's disciplinary history. Pl. R. 56.1 ¶¶ 6, 11, 30, 40.

To establish that a defendant aided and abetted a violation a violation of the Advisers Act and rules thereunder,[12] the Commission must show that the defendant had knowledge of wrongdoing, or a general awareness that his role was part of an overall activity that was improper. SEC v. Washington Inv. Network, 475 F.3d 392, 397 (D.C. Cir. 2007) (quotations omitted). See also Armstrong v. McAlpin, 699 F.2d 79, 91-92 (2d Cir.1983) (pre-Central Bank decision setting forth standard for aiding and abetting under the Exchange Act and noting that in the Second Circuit, "if the alleged aider and abettor owes a fiduciary duty to the [defrauded party], recklessness is enough" to satisfy the knowledge element of aiding and abetting liability.) By virtue of his conduct discussed above, which continued until at least November 2007, Lovaglio aided and abetted Rabinovich's violations of Advisers Act Section 206(4) and Rule 206(4)-8 thereunder.[13]

## IV. Lovaglio Violated Sections 5(a) and 5(c) of the Securities Act by Offering and Selling Securities in an Unregistered Offering

### A. Lovaglio Offered and Sold Securities in an Unregistered Offering

To state a cause of action under Section 5, one must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of

---

[12]  Section 202(11) of the Advisers Act defines "investment adviser," in part, as a "person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities[]." As the general partner of Rabinovich & Associates, who managed its investments, for compensation (in the form of a 50% performance fee), Rabinovich was an investment adviser. See, e.g., SEC v. Haligiannis, 470 F. Supp.2d 373, 383 (S.D.N.Y. 2007); SEC v. Berger, 244 F. Supp.2d 180, 192 (S.D.N.Y. 2001).

[13]  Section 209(d) of the Advisers Act expressly authorizes the Commission to assert aiding and abetting claims under the Advisers Act and rules thereunder.

interstate transportation or communication and the mails in connection with the offer or sale.'" SEC v. Cavanagh, 445 F.3d 105, 111 n. 13 (2d Cir. 2006), quoting European & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 124 n. 4 (2d Cir.1998). Lovaglio violated Sections 5(a) and 5(c) because: (1) Lovaglio, and others at his direction, offered and sold securities in the form of partnership interests in Rabinovich & Associates, (2) for which no registration statement had been filed, (3) by making phone calls and using the mails to contact investors throughout the United States.

**B.      No Exemption from Registration is Available to Lovaglio**

Once the Commission has made a prima facie showing of a violation of the registration requirements, the burden is on the defendant to establish that an exemption to these requirements applies. Cavanagh, 445 F.3d at 11 n.13, citing SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953). No such exemption applies in this case.

The offering of interests in Rabinovich & Associates did not meet the requirements for an exemption under Rules 504, 505 or 506 of Regulation D of the Securities Act, which provide exemptions from the requirements of Section 5 for limited offers and sales of securities. These exemptions are construed narrowly, and an exemption from the registration requirements is appropriate only "where the number of offerees is so limited that they may constitute a class of persons having such a privileged relationship with the issuer that their present knowledge and facilities for acquiring information about the issuer would make registration unnecessary for their protection[.]" SEC v. Continental Tobacco Co., 463 F.2d 137, 159 (5th Cir. 1972), quoting Hill York Corp. v. American Int'l Franchises, 448 F.2d 680, 690 (5th Cir. 1971).

The Rule 504 exemption is not available because the Fund is an investment company as to which the exemption is not available under Rule 504(a)(2). Nor can Lovaglio avail himself of the exemption under Rules 505 or 506, because Fund interests were offered and sold by means

17

of a general solicitation (e.g., cold calls to prospective investors and a website that was available to the general public), and required financial information was not furnished to investors and prospective investors. Rules 505 and 506 require that all offers and sales comply with the conditions of Rule 502, which precludes any form of general solicitation and requires that an issuer provide unaccredited investors with financial information, such as audited balance sheets or financial statements, which the defendants failed to do.

Similarly, general solicitation and promoting the Fund over a publicly available website renders unavailable the private offering exemption under Section 4(2) of the Securities Act; and the exemption under Section 4(6) of the Securities Act, which prohibits advertising or public solicitation.

Accordingly, no exemption to the Section 5 registration requirements for the offer and sale of interests in the Fund is applicable. Thus, Lovaglio's offer and sale of interests in the Fund violated Sections 5(a) and 5(c) of the Securities Act.

## V.    Lovaglio Violated Section 15(a) of the Exchange Act by Acting as an Unregistered Broker

Section 15(a)(1) of the Exchange Act makes it illegal for a "broker" to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless the broker is registered with the Commission or, in the case of a natural person, is associated with a registered broker or dealer. The Commission is not required to show scienter to establish a violation of Section 15(a)(1). See, e.g., SEC v. Martino, 255 F. Supp.2d 268, 283 (S.D.N.Y. 2003).

Section 3(a)(4) of the Exchange Act defines a broker as any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others." A person "effects transactions in securities" if he participates in such transactions "at key points in

the chain of distribution." <u>Massachusetts Fin. Servs., Inc. v. Security Investor Protection Corp.</u>,

411 F. Supp. 411, 415 (D. Mass.), <u>aff'd</u>, 545 F. 2d 754 (1st Cir. 1976). Among the activities that

may indicate a person is a broker are: (1) soliciting investors; (2) "participating in the securities

business with some degree of regularity[;]" and (3) receiving transaction-based compensation, as

opposed to a salary. <u>See</u>, <u>e.g.</u>, <u>Martino</u>, supra at 283; <u>Patrick Rooney and Adrian Antoniu</u>

<u>Alexander</u>, Exchange Act Release No. 44414, 2001 SEC LEXIS 1139 (June 13, 2001); <u>SEC v.</u>

<u>Hanson</u>, 726 F. Supp. 74 (S.D.N.Y. 1989); <u>SEC v. Kenton Capital, Ltd</u>, 69 F. Supp.2d 1, 12-13

(D.D.C. 1998). Lovaglio engaged in all three of these activities. He solicited investors as part of

an ongoing business operation which included trading in securities for compensation; he offered

for sale securities of Datawind, as well as interests in the Fund; and he received commissions

based on his sale of interests in the Fund. Accordingly, Lovaglio acted as an unregistered

broker.

Although there is an exemption from the broker-dealer registration requirements for

certain associated persons of an issuer, Lovaglio does not qualify for this exemption. Exchange

Act Rule 3a4-1 exempts associated persons of an issuer from the definition of "broker" provided

the associated person of the issuer is not "subject to a statutory disqualification" and does not

receive compensation for selling the issuer's securities. Lovaglio received compensation for

selling the Fund's securities. Moreover, the safe harbor is not available to associated persons of

issuers who, at the time of participation in the sale of securities of the issuer, are associated

persons of a broker-dealer. <u>See</u> Exchange Act Rule 3a4-1(a)(3). Lovaglio was an associated

person of the Rabinovich & Associates, which itself was acting as broker. Accordingly,

Lovaglio violated Section 15(a) of the Exchange Act.

**VI.     The Commission is Entitled to the Relief It Seeks Against Lovaglio**

**A.     Lovaglio Should be Permanently Enjoined from Violating the Securities Laws**

The Commission is not an ordinary litigant but rather acts as the "statutory guardian charged with the safeguarding the public interest in enforcing the securities laws." SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975). Accordingly, once the Commission establishes a violation of the federal securities laws, a permanent injunction against future violations will be granted if the defendant's past conduct indicates "a reasonable likelihood of further violation[s] in the future." SEC v. Commonwealth Chemical Secs, Inc., 574 F.2d 90, 99 (2d Cir. 1978). In evaluating the likelihood of future violations, courts have a wide discretion and may consider factors such as (a) the degree of scienter involved; (b) the sincerity of the defendant's assurances against future violations; (c) the isolation or recurrent nature of the infraction; (d) the defendant's recognition of the wrongful nature of past conduct; and (e) the likelihood, given the defendant's occupation, that future violations may occur. SEC v. Universal Major Indus., 546 F.2d 1044, 1048 (2d Cir. 1976). A permanent injunction against future violations of the securities laws may be granted upon the Commission's motion for summary judgment. SEC v. Research Automation Corp., 585 F.2d 21, 36 (2d Cir. 1978).

Permanent injunctive relief against Lovaglio is warranted. Lovaglio's role in the fraud on Fund investors was significant and recurring, lasting for over two years. He acted with a high degree of scienter. He has yet to take any responsibility for his conduct. He is young – 26 – but has a long history in the securities industry. Thus, it is highly likely that unless enjoined he will again violate the securities laws. Accordingly, Lovaglio should be permanently enjoined from violating the applicable provisions of the securities laws.

**B.     Lovaglio Should Be Ordered To Disgorge His Ill-Gotten Gains and Pay Pre-Judgment Interest**

Lovaglio should be ordered to disgorge his ill-gotten gains. Disgorgement is a proper exercise of the district court's equity powers. SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 96 (2d Cir. 1978); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972). "Disgorgement is an equitable remedy designed to deprive the wrongdoer of his unjust enrichment and to deter others from violating securities laws." SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997), (quoting SEC v. First City Financial Corp., 890 F.2d 1215, 1230 (D.C. Cir. 1989)). See also Universal Express, 475 F.Supp.2d at 428.

The Court has broad discretion in determining whether to order disgorgement, and in calculating the amount of disgorgement. SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996). Once the Commission has shown the existence of fraud, the defendant "bears the burden of demonstrating he received less than the full amount allegedly misappropriated." SEC v. Benson, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987). "The amount of disgorgement 'need only be a reasonable approximation of profits causally connected to the violation,' and 'any risk of uncertainty [in calculating the amount] should fall on the wrongdoer.'" Universal Express, 475 F.Supp.2d at 428 (quoting SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir.1995)).

Lovaglio received at least $92,857.49 as a result of his illegal conduct, which he should be required to disgorge. Lovaglio should also be required to pay prejudgment interest on his ill-gotten gains, at the IRS underpayment rate. See First Jersey, 101 F.3d at 1476; Universal Express, 475 F.Supp.2d at 428.

### C.    The Court Should Impose A Third Tier Civil Penalty on Lovaglio

The Court should impose a civil penalty on Lovaglio, pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act. Factors that courts consider in determining whether penalties should be imposed, and the amount of the penalty, include (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses to other persons: (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. SEC v. Opulentica, LLC, 479 F. Supp.2d 319, 331 (S.D.N.Y. 2007).

Lovaglio's conduct was egregious. He acted with a high degree of scienter. His conduct created substantial losses – during his tenure at Rabinovich & Associates, the Fund obtained at least $ 2.2 million from investors, who will recoup far less than that, given the approximately $550,000 frozen. Paley Decl. ¶ 8. His conduct was repeated, and continued over a period of at least two years. Moreover, given the histories of some of the other firms with which he has been associated, the Rabinovch & Associates fraud may not have been his only instance of securities fraud. Moreover, Lovaglio should receive no reduction in penalty based on his financial condition, having failed to comply with the Court's order to provide an accounting. In light of Lovaglio's intentional misrepresentations and the extent of his fraudulent activities, a civil penalty is "necessary to persuade [the defendant] not to engage in this conduct again," SEC v. Drucker, 528 F. Supp.2d  450, 453 (S.D.N.Y. 2007), as well as "a deterrent to like-minded individuals." SEC v. Koenig, 532 F. Supp.2d 987, 995 (N.D. Ill. 2007).

Moreover, a "third tier" penalty is appropriate. Section 20(d) of the Securities Act and Section 21(d)(3)(B)(iii) of the Exchange Act provide for "third tier" penalties for securities

violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement" that also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Lovaglio's conduct clearly involved fraud, deceit, and deliberate or reckless disregard for regulatory requirements and clearly resulted in substantial losses to investors. Accordingly, a tied tier penalty is appropriate.

Under the statute, the Court may impose a third tier penalty of up to the greater of (a) Lovaglio's pecuniary gain; or (b) $130,000, per violation. 17 C.F.R. § 201.1002, Table II to Subpart E. The Commission respectfully requests that this Court impose the maximum penalty available under the law, in the amount that the Court considers appropriate in light of these circumstances.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion for summary judgment against Lovaglio and order the relief requested.

Dated: New York, NY
    September 12, 2008

Respectfully submitted,

LESLIE KAZON (LK-6777)
Assistant Regional Director
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281-1022
(212) 336-0107 (Kazon)

Of Counsel:
Andrew Calamari
James E. Burt IV
Michael Paley
Kristine Zaleskas