UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
SECURITIES AND EXCHANGE COMMISSION, :
:
Plaintiff, :
: 07 Civ. 10547 (GEL)
-v.- :
: **OPINION AND ORDER**
RABINOVICH & ASSOCIATES, LP, :
ALEX RABINOVICH, and JOSEPH LOVAGLIO, :
:
Defendants. :
:
------------------------------------------------------------x

Leslie Kazon (Andrew Calamari, James E. Burt IV,
Michael Paley, and Kristine Zaleskas, of Counsel),
New York, NY, for plaintiff.

Joseph Lovaglio, pro se.

GERARD E. LYNCH, District Judge:

The SEC moves for summary judgment against defendant Joseph Lovaglio in this civil enforcement action. The motion, to which defendant has not responded, will be granted.

## BACKGROUND

The record compiled by the SEC overwhelmingly establishes the following facts, which in any event must be deemed admitted by defendant Lovaglio's failure to respond to the SEC's statement of undisputed facts pursuant to Local Rule 56.1.[1]

---

[1] Although initially represented by counsel, Lovaglio is now pro se, following the granting of his attorney's motion to withdraw on the ground that Lovaglio had failed to pay agreed-upon attorney's fees and had dropped out of contact with counsel. The SEC fully complied with the requirements of Local Rule 56.2 for providing notice to pro se litigants regarding a summary judgment motion by providing an explanation of the nature of a summary judgment motion, the need to respond with evidence, and the possibility that the plaintiff's statement of uncontested facts would be deemed admitted by the Court in the absence of

From at least August 2005 through November 2007, Lovaglio and co-defendant Alex Rabinovich operated Rabinovich & Associates, LP ("the firm" or "R&A"), an unregistered investment company and broker-dealer operating out of a storefront boiler room in Brooklyn. During this period, Rabinovich, Lovaglio, and a team of salesmen raised approximately $2,250,000 from more than 150 investors by making fraudulent statements about the firm's investment performance and other material facts. The defendants offered and sold unregistered securities, operated as an unregistered broker-dealer, and failed to disclose, among other things, that Rabinovich had been barred by the National Association of Securities Dealers ("NASD") from associating with any NASD member broker or dealer, and that a disciplinary action seeking a similar bar against Lovaglio was pending.[2]

Although the firm represented itself as a member of the New York Stock Exchange, the NASD, and the Securities Investor Protection Corporation ("SIPC"), and listed an address on Wall Street, it was in fact a member of none of these organizations, its investor accounts were not (as the allusion to SIPC implicitly represented) insured, and its Wall Street address was a cover for its Brooklyn boiler room. There, a handful of salesmen, supervised by Rabinovich as general partner and "portfolio manager" and Lovaglio as managing director and head of sales, engaged in a typical high-pressure telephone sales operation. R&A was promoted as an investment fund offering shares in the gains and losses of the partnership. Although over $2,750,000 was raised from investors during the operation of the fund, only about $450,000 was distributed to investors; thus, the firm took in net proceeds of over $2,300,000.

---

opposition.

    [2] These actions were based on allegations unrelated to the operation of R&A.

2

Under Lovaglio's direction and with his knowledge, false and misleading statements about the firm's investment performance were made by salesmen over the phone and on the firm's website, as well as by Lovaglio personally in conversations with potential and actual investors. R&A's website claimed that its "moderate growth fund" had earned 127.3% and its "aggressive growth fund" 422.9% since their inception, and that the firm as a whole had achieved a return of at least 11.8% in every quarter but its worst, when it earned 6.1%. In fact, as demonstrated by the records of the firm's own brokerage account, its trading consistently lost money. (Indeed, the documentary evidence establishes beyond a doubt that R&A lost money every quarter of its existence.) Account statements sent to investors repeated the misrepresentations about the firm's performance, location, and status as a regulated, insured broker-dealer. The statements also included the investor's purported balance and earnings, none of which bore any relation to reality.

Lovaglio personally solicited investments by making these sorts of misrepresentations through at least October 2007. He induced one victim to invest $25,000 by representing that the firm returned profits of 15% to 18%. He called another R&A investor repeatedly, touting the firm's purported positive returns, until the investor deposited an additional $25,000. Lovaglio personally received nearly $100,000 in proceeds from R&A.

The SEC filed a complaint on November 26, 2007, naming R&A, Rabinovich, and Lovaglio as defendants. On the SEC's motion, the Court issued a temporary restraining order, froze defendants' assets, and directed defendants, including Lovaglio, to file a verified accounting. On December 12, 2007, at the preliminary injunction hearing, Rabinovich and Lovaglio consented to the entry of a preliminary injunction that continued the interim relief. The

SEC proceeded to depose Rabinovich and Lovaglio, both of whom refused to answer any substantive questions by asserting their Fifth Amendment privilege against self-incrimination. Lovaglio also failed to provide the ordered accounting.

R&A failed to appear or respond to the complaint, and a default was entered against it on January 23, 2008. On March 14, 2008, Rabinovich pleaded guilty to one count of criminal securities fraud in connection with the same conduct described above, United States v. Rabinovich, No. 08 Cr. 220 (DC) (S.D.N.Y.), and on October 15, 2008, was sentenced to seventy-eight months imprisonment and ordered to pay over $2,300,000 in restitution. The SEC filed the present motion for summary judgment against Lovaglio on September 12, 2008. Lovaglio has not responded to the motion, or otherwise appeared or participated in this litigation, since his attorney's motion to withdraw was granted on April 1, 2008.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of supporting its motion with evidence, after which the burden shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e)(2); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Shade v. Housing Auth. of City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001). An issue is material if

it "might affect the outcome of the suit under the governing law." Id.  A court must draw all "justifiable inferences" in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Applying this standard, there is no genuine issue as to any of the facts set forth above. The SEC has presented substantial and undisputed evidence supporting its allegations, in the form of affidavits from SEC officials and victim investors, brokerage records, and other documents.  In contrast, Lovaglio asserted his Fifth Amendment privilege in response to all substantive questions at his deposition, declined to respond to the SEC's requests to admit pursuant to Fed. R. Civ. P. 36, and failed to respond to the SEC's motion.

## II.     Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 under the Exchange Act prohibit fraud in connection with the sale of securities where the means of interstate communication are used.  See 15 U.S.C. § 77q(a); id. § 78j(b); 17 C.F.R. § 240.10b-5.  To prove a violation of these regulations, the SEC must establish (1) a misrepresentation or omission regarding material facts; (2) made with scienter; (3) in connection with the sale of a security; (4) involving the use of means or instruments of interstate commerce.[3]  See SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999).

All of these elements have been established here.  As described above, Lovaglio repeatedly misrepresented to investors and prospects, both personally and through the salesmen that he supervised and the website and account statements for which he was responsible, that

---

[3] Section 10(b) and Rule 10b-5 also prohibit fraud in the purchase of securities, but that aspect of the statute and rule is not implicated in this case.

R&A was highly profitable, when in fact the firm had done nothing but lose money throughout its existence.  He failed to disclose to investors that Rabinovich had been barred from working for brokers or dealers by the NASD and that he himself faced similar sanctions.  His business card reflected the false Wall Street address, and the website and account statements falsely represented the firm's membership in the NYSE, NASD, and SIPC.  All of these statements were false, and all would be material to reasonable investors.[4]

Lovaglio made these false representations with scienter, defined as "a mental state embracing intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976).  Reckless conduct is sufficient to establish scienter.  Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 44-48 (2d Cir. 1978).  Recklessness is established where a defendant engages in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000).  Lovaglio manifestly knew that he was facing discipline by the NASD and that the firm was not located on Wall Street.  As managing director of R&A, he had access to the trading account records; thus, either he knew that his statements about the firm's profitability were false, or at a minimum he recklessly failed to investigate whether those

---

[4] A statement or omission is material if a reasonable investor would view it as significantly altering the "total mix" of information available about a security.  TSC Industries v. Northway, Inc., 426 U.S. 438, 449 (1976).  Without question, an investment fund's historical rate of return is a critically material fact for a potential investor; representing that an investment has been highly profitable in every quarter when in fact it had lost money in every quarter would materially mislead a reasonable investor.  See Elkind v. Liggett & Myers, Inc., 635 F.2d 156, 167 (2d Cir. 1980).  Such an investor would also be influenced by assertions that the promoter of the investment was regulated and insured, and by the existence of disciplinary actions against the principals of the selling firm.

representations were accurate. He had no reasonable ground for believing that the firm was a member of the NYSE, NASD, or SIPC, and he has not asserted at any point in this litigation that he had any basis for such a belief, or even that he did believe it. Failure to know or care whether the representations one is making are true is the very definition of recklessness.

The representations were made in connection with sales of a security. Defendants were selling limited partnership interests in R&A. Such interests are clearly securities because the partnership agreement gave Rabinovich, as general partner, the exclusive right and power to manage, conduct, and operate R&A's business. See SEC v. W.J. Howey Co., 328 U.S. 293, 298-299 (1946). Finally, the interstate commerce requirement is satisfied because defendants used interstate telephone lines to communicate with investors and mailed fraudulent account statements. SEC v. Save the World Air, Inc., No. 01 Civ. 11586 (GBD), 2005 WL 3077514, at *10 (S.D.N.Y. Nov. 15, 2005).

Accordingly, any reasonable factfinder would be required to conclude that Lovaglio violated Section 17(a), Section 10(b), and Rule 10b-5.

### III.   Section 206(4) of the Investment Advisers Act

Section 206(4) of the Investment Advisers Act prohibits investment advisers from engaging in fraudulent, deceptive, or manipulative practices in interstate commerce; Rule 206(4)-8 thereunder prohibits investment advisers from making false statements of material fact to any investor or prospective investor in a pooled investment vehicle, or failing to state material facts necessary to make statements made to such investors not misleading. See 15 U.S.C. § 80b-6(4); C.F.R. § 275.206(4)-8. The Rule, which applies to both registered and unregistered advisers, see Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Advisers

Act Release No. 2628, at 7 (August 3, 2007), became effective on September 10, 2007, more than two months before this Court's temporary restraining order closed down R&A's operation.

Rabinovich was an investment adviser subject to these provisions.  Under Section 202 of the Advisers Act, a "person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities" is an investment adviser.  15 U.S.C. § 80b-2(a)(11).  As the general partner of R&A, who managed its investments in exchange for compensation in the form of fifty percent of the trading profits, Rabinovich comes within this definition.  See, e.g., SEC v. Haligiannis, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007).  The same misrepresentations set forth above, made by Rabinovich after the effective date of the Rule, constitute violations of Section 206(4) and of the Rule.

Lovaglio is also liable for these violations.  Section 209(d) of the Advisers Act expressly authorizes SEC actions against aiders and abettors of violations of the Act.  15 U.S.C. § 80b-9(d).  As Rabinovich's sales manager, who repeated these representatations on behalf of R&A with scienter as to their falsity, Lovaglio aided and abetted Rabinovich.

## IV.     Section 5 of the Securities Act

As demonstrated above, Lovaglio participated in the sale of partnership interests in R&A, which are securities within the meaning of the Securities Act, by means of interstate communications and the mails.  Section 5 of the Act prohibits such sales in the absence of a registration statement covering the securities.  15 U.S.C. § 77e; see SEC v. Cavanagh, 445 F.3d 105, 111 n.13 (2d Cir. 2006).

No registration statement was ever filed covering the securities sold by R&A. Once the SEC had demonstrated the sale of unregistered securities, the burden is on a defendant to demonstrate the applicability of an exception to the registration requirements. SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953). Lovaglio has not asserted, much less presented evidence, that any registration exception applied to R&A's activities, nor could he, as the general solicitation of purchases by means of cold calls to prospective investors and a website available to the general public precludes the applicability of the principal exceptions to the registration requirement.

V.      **Section 15(a) of the Exchange Act**

Section 15(a) of the Exchange Act make it illegal for a broker to attempt to induce the purchase of a security unless the broker is registered with the SEC or is associated with a registered broker or dealer. 15 U.S.C. § 78o(a)(1). Scienter is not required for a violation of this provision. SEC v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003). A broker is any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4).

Among the activities indicative of being a broker are soliciting investors, participating in the securities business with some degree of regularity, and receiving transaction-based compensation, as opposed to a salary. See Martino, 255 F. Supp. 2d at 283. Lovaglio solicited investors as part of an ongoing business operation that included trading in securities for compensation, and he received commissions based on his sale of interests in R&A. Needless to

say, neither he nor R&A was registered with the SEC.[5] Accordingly, the SEC has established that Lovaglio violated Section 15(a).

## VI. Remedies

### A. Injunctive Relief

Once the SEC establishes a violation of the federal securities laws, an injunction against future violations should be granted if the defendant's past conduct indicates "a reasonable likelihood of further violation in the future." SEC v. Commonwealth Chemical Secs., Inc., 574 F.2d 90, 99 (2d Cir. 1978). In evaluating that likelihood, a court may consider such factors as the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the recurrent or isolated nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; and the likelihood, given defendant's occupation, that future violations may occur. SEC v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976).

Applying these standards, an injunction against Lovaglio is not only warranted, but required. He has shown no acceptance of responsibility, no recognition of the wrongfulness of his actions, and no remorse, and has given no assurances (sincere or otherwise) that he has reformed and will not violate the securities laws in the future. His violations were intentional and recurrent: for a period of over two years he engaged in repeated fraudulent conduct. Lovaglio did not commit an isolated violation while otherwise engaged in a legitimate brokerage

---

[5] Exchange Act Rule 3a4-1 exempts persons associated with an issuer from the definition of "broker," provided (inter alia) that the person does not receive compensation for selling the issuer's securities. 17 C.F.R. § 240.3a4-1(a). Although Lovaglio was associated with R&A, the issuer of the securities in question, he does not qualify for this exception, because he received compensation for selling the securities.

career; rather he was a leading participant in an entirely outlaw, fraudulent – indeed, criminal – enterprise. Although he is young (only 26 years old), he has been involved in the securities industry for his entire adult life (and had already attracted at least one complaint of fraudulent activity independent of the fraud in this case). Accordingly, it is highly likely that he will engage in future violations of the securities laws if not enjoined.

   B.  Disgorgement

"Disgorgement is an equitable remedy designed to deprive the wrongdoer of his unjust enrichment and to deter others from violating the securities laws." SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997). See also SEC v. Universal Express, Inc., 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007), aff'd, No. 07-2407-cv (2d Cir. Nov. 13, 2008). Disgorgement is a proper exercise of the district court's equity powers, Commonwealth Chemical, 574 F.2d at 96, and should presumptively be ordered to prevent violators of the securities laws from enjoying the fruits of their illegal acts. "The amount of disgorgement 'need only be a reasonable approximation of profits causally connected to the violation,' and 'any risk of uncertainty . . . should fall on the wrongdoer.'" Universal Express, 475 F. Supp. 2d at 428, quoting SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir. 1995).

The undisputed documentary evidence demonstrates that Lovaglio received at least $92,857.49 as his share of the illicit proceeds of R&A's fraud. He will be required to disgorge that amount, plus prejudgment interest. See SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1476 (2d Cir. 1996); Universal Express, 475 F. Supp. 2d at 428.

11

      C      <u>Civil Penalties</u>

Disgorgement alone, however, is plainly an insufficient remedy. To limit the penalty for fraud to disgorgement is to tell a violator that he may commit fraud with virtual impunity: if he gets away undetected, he can keep the proceeds, but if caught, he simply has to give back the profits of his wrong. Thus, both the Securities Act and the Exchange Act authorize civil penalties. 15 U.S.C. § 77t(d); <u>id</u>. § 78u(d)(3). In determining whether penalties should be imposed, and in what amount, courts consider such factors as the egregiousness of the defendant's conduct, the degree of his scienter, whether his conduct created substantial losses, whether the offense was isolated or recurrent, and whether the penalty should be reduced due to defendant's financial condition. <u>SEC v. Opulentica, LLC</u>, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007).

As already demonstrated, Lovaglio's conduct was egregious, intentional, and recurring over a substantial period. While Lovaglio was with the firm, R&A fraudulently obtained at least $2,250,000 from investors, and only about $550,000 has been recovered by the SEC. In light of these factors, a substantial penalty is necessary in order to deter him and others from future violations, at least absent some demonstration that the penalty should be mitigated in light of financial hardship. Having failed to provide an accounting as ordered by the Court, or to present any evidence whatsoever as to his financial circumstances, Lovaglio may not avail himself of this potential mitigator.

Under the circumstances, given that Lovaglio's conduct involved intentional fraud, a third-tier penalty of the greater of Lovaglio's pecuniary gain or $130,000, per violation, is called

for. Although Lovaglio engaged in repeated violations of the securities laws, they all arose from a single scheme or plan. A penalty of $130,000 is therefore appropriate in this case.

## CONCLUSION

For the foregoing reasons, the SEC's motion for summary judgment is granted. A permanent injunction will issue, and defendant Lovaglio will be ordered to disgorge the proceeds of his violations in the amount of $92,857.49, and to pay a civil penalty in the amount of $130,000. The SEC is directed to submit an appropriate proposed permanent injunction and form of judgment within 14 days of the entry of this Order.

SO ORDERED.

Dated: New York, New York
       November 17, 2008

_____
GERARD E. LYNCH
United States District Judge